IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiffs oppose the City of Miami's Motion to Dismiss (ECF No. 34, "Mot.") their First Amended Complaint (ECF No. 23, "FAC"). Opting to ask rhetorical questions rather than engage with the merits of Plaintiffs' claim, the City confuses and ignores the racial gerrymandering claim Plaintiffs advance. Plaintiffs advance a single claim that the City Commission racially gerrymandered the five City Commission districts in Resolution 22-131 (the "Enacted Plan"), drawing the districts based predominantly on race during the 2021–22 redistricting process. Because Plaintiffs have more than plausibly alleged that race was a predominant factor in the Commission's redistricting process, and that the City cannot prove that this racial classification is narrowly tailored to serve a compelling government interest, Plaintiffs have stated a claim, and the City's Motion to Dismiss must be denied.

**MEMORANDUM**

**I.   Plaintiffs Have Standing**

Determining whether the court has jurisdiction is a fundamental prerequisite to the court evaluating the merits of a complaint. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare

1

the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 382 (1884)); *see also Haim v. Monroe Cnty.*, 479 F. Supp. 3d 1274, 1280 (S.D. Fla. 2020) (Moore, J.) (Whether plaintiffs have Article III standing is "[o]ne of the most important . . . constitutionally-based limits . . . [on] the power of a federal court."). Plaintiffs unquestionably have standing to assert their claim that the City Commission districts enacted in Resolution 22-131 are unconstitutional racial gerrymanders.

The Supreme Court has "set forth a bright-line standing rule for . . . cases alleging illegal racial gerrymandering with respect to voting districts: if the plaintiff lives in the racially gerrymandered district, she has standing[.]" *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1279 (11th Cir. 2000) (citing *United States v. Hays*, 515 U.S. 737, 744–45 (1995)). The City concedes that Individual Plaintiffs live in Districts 2, 3, 4, and 5. Mot. at 18; *see* FAC ¶¶ 25–29. Therefore, each Individual Plaintiff has standing to assert their claims. And Organizational Plaintiffs' members, collectively, include Miamians from all five districts.[1] FAC ¶¶ 19–23. So,

---

[1]  The City cites *Alabama Legislative Black Caucus v. Alabama* (*ALBC I*), 573 U.S. 254 (2015), to challenge Organizational Plaintiffs' associational standing. Mot. at 18–19. In that case, the Supreme Court reversed the district court's conclusion that the Alabama Democratic Conference lacked standing to challenge multiple districts as racial gerrymanders. *ALBC I*, 575 U.S. at 268–69. The Supreme Court held that when an "organization has members in all of the [challenged] districts," it "is sufficient to meet the [organization's] burden of establishing standing." *Id.* at 270. *ALBC I*'s holding is directly contrary to the City's argument that

Plaintiffs or Plaintiffs' members live in all five districts—the racially gerrymandered districts Plaintiffs challenge.

The City confuses the racial gerrymandering claim Plaintiffs advance, claiming that Plaintiffs "fail to identify how each Plaintiff is harmed." Mot. at 18. Instead, the City tries to rewrite Plaintiffs' Amended Complaint, suggesting that Plaintiffs allege a vote dilution claim under Section 2 of the Voting Rights Act (VRA).[2] This is a misreading of the Amended Complaint and a plain attempt to muddy the waters. Plaintiffs' sole claim, as discussed in greater detail below, is that the five City Commission districts are racial gerrymanders under the Fourteenth Amendment's Equal Protection Clause: that the Commission drew these districts with race as the predominant factor, and that the use of race was not narrowly tailored to a compelling interest. The constitutionally cognizable harm in a racial gerrymandering case is, itself, the use of race to draw the districts—the fact that Plaintiffs are classified based on their race. *See ALBC I*, 575 U.S. at 263) ("Those harms are personal. They include being personally . . . subjected to a racial classification, as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group.") (cleaned up). Accordingly, each Individual Plaintiff and each Organizational Plaintiff properly alleges a harm—the City of Miami subjected Individual Plaintiffs and Organizational Plaintiffs' members to a racial classification. The maps, figures, and

---

Organizational Plaintiffs lack standing. FAC ¶¶ 19–24, 30–32.

[2] The City also cites cases alleging partisan gerrymandering under the First Amendment and various other theories no fewer than four times in their 19–page motion. Mot. at 4, 16, 17 (citing *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) and *Gill v. Whitford*, 138 S. Ct. 1916 (2018)). These cases are irrelevant, as Plaintiffs, again, allege one claim of racial gerrymandering under the Equal Protection Clause.

direct quotes from the legislative record included in the Amended Complaint support that single racial classification claim.

The City does not argue that there is no causal connection between the City's unconstitutional racial classifications and the Plaintiffs' harm, and the City does not argue that Plaintiffs' injuries cannot be redressed by a favorable decision.³ *See* Mot. at 17–19. Accordingly, the City has waived these arguments. *See, e.g.*, *Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

Because the Individual Plaintiffs and Organizational Plaintiffs have standing, the Court should deny the City's Motion to Dismiss on standing grounds.

## II. Plaintiffs' Complaint Is Not Shotgun Pleading

The City's argument that Plaintiffs' Complaint constitutes shotgun pleading fails because Plaintiffs only plead one claim for relief and the City (despite its rhetorical questions suggesting

---

³ A favorable decision, of course, would quite easily redress the constitutional harm. What Plaintiffs seek is to vote and live in districts that either do not classify them based on their race, or otherwise do so in a way that is narrowly tailored to a compelling governmental interest. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1265 (11th Cir. 2020) ("[C]omplaints of racial gerrymandering can rightly ask 'for the elimination of a racial classification.'") (quoting *Rucho*, 139 S. Ct. at 2502); *Jacksonville Branch of NAACP v. City of Jacksonville* (*Jacksonville I*), --- F. Supp. 3d ---, 2022 WL 7089087, at *54 (M.D. Fla. Oct. 12, 2022) (granting preliminary injunction in racial gerrymandering case and ordering city to submit new map that does "not use race as a predominant factor in the design of any district unless that use of race is narrowly tailored to comply with a constitutionally permissible compelling government interest").

4

the contrary) has adequate notice of the claim against it.

"Shotgun pleading violates Rule 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by 'failing to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (cleaned up). The most common type of shotgun pleading "is a complaint containing multiple counts." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). "Such a shotgun pleading makes it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Plowright v. Miami-Dade Cnty.*, --- F. Supp. 3d ---, 2022 WL 18228314, at *5 (S.D. Fla. Dec. 5, 2022) (Moore, J.) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

Plaintiffs' Amended Complaint is not shotgun pleading because it asserts a single cause of action, to which all factual allegations flow. The City contends that "[t]he Amended Complaint should only assert allegations that support a cause of action for racial gerrymandering in the redistricting process." ECF No. 34 at 17. That is precisely what the Amended Complaint does— each factual allegation supports Plaintiffs' single cause of action that the City unconstitutionally racially gerrymandered the City Commission districts in the 2021–22 redistricting process. The City's apparent argument that each individual plaintiff is required to assert a separate claim for each individual district is both an incorrect statement of the law and irrelevant to the City's shotgun pleading argument. Plaintiffs challenge a single enactment—Resolution 22-131—as a racial classification. Although the legal analysis is district-by-district, *ALBC I*, 575 U.S. at 262, plaintiffs need not plead a separate count for each district. *Compare* Am. Compl. ¶¶ 52–55, *Ala. Legis. Black Caucus v. Alabama*, No. 2:12-cv-691 (M.D. Ala. Jan. 15, 2013), ECF No. 60 (single racial

gerrymandering count challenging 35 legislative districts across two separate redistricting maps) with *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026 (M.D. Ala. Jan. 20, 2017) (three-judge court) (William Pryor, J.) (order on the merits conducting district-by-district analysis of all 35 districts).

Moreover, each of the five districts in the Enacted Plan abut at least three, and in one case *all*, of the other districts. Facts relevant to one district-by-district analysis will necessarily overlap with the analysis for adjacent districts when the Court determines whether race was the predominant factor in the Commission's decision to place voters on one side of a line or the other. Further, the City is adequately on notice that Plaintiffs allege the City unconstitutionally racially gerrymandered the City Commission districts enacted in Resolution 22-131. Accordingly, the Amended Complaint does not constitute shotgun pleading.

### III. Plaintiffs State a Claim of Unconstitutional Racial Gerrymandering

The City, perhaps confused, waves its hands at Plaintiffs' use of the word "packing," suggests "before and after pleading" is required, and contends that Plaintiffs "do not allege that racial electoral outcomes were affected in any way by the redistricting except in the most conclusory terms." Mot. at 4, 10. These arguments demonstrate the City's fundamental misunderstanding of Plaintiffs' singular claim and Plaintiffs' burden at the pleading stage.

The seminal racial gerrymandering case is *Shaw v. Reno*, 509 U.S. 630 (1993). In *Shaw*, the Supreme Court concluded that voters state an Equal Protection Clause claim for racial gerrymandering where they alleged that the redistricting process "rationally can be viewed only as an effort to segregate the races for purposes of voting, without regard to traditional districting principles and without sufficiently compelling justification." *Id.* at 642. "Classifications of citizens solely on the basis of race 'are by their very nature odious to a free people whose institutions are

founded upon the doctrine of equality.'" *Id.* at 643 (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)). These racial classifications "threaten to stigmatize individuals by reason of their membership in a racial group[.]" *Id.* (citing *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)). Importantly, the Court noted that:

> A reapportionment plan that includes in one district individuals who belong to the same race, but who are otherwise widely separated by geographical and political boundaries, and who may have little in common with one another but the color of their skin, bears an uncomfortable resemblance to political apartheid. It reinforces the perception that members of the same racial group—regardless of their age, education, economic status, or the community in which they live—think alike, share the same political interests, and will prefer the same candidates at the polls.

*Id.* at 647.

The Supreme Court concluded that "a plaintiff challenging a reapportionment . . . under the Equal Protection Clause may state a claim by alleging that the legislation . . . rationally cannot be understood as anything other than an effort to separate voters into different districts on the basis of race, and that the separation lacks sufficient justification." *Id.* at 649.

This is precisely what Plaintiffs allege in the Amended Complaint. The City engaged in a practice resembling political apartheid when, for example, it separated the "sirloin" Hispanic voters from the "bone" Anglo and Black voters. FAC ¶ 335. The City reinforced the perception that members of the same racial group think alike, share the same political interests, and will prefer the same candidates at the polls when it ensured it would not "jeopardize the ethnic integrity of

7

our districts." FAC ¶ 95. Plaintiffs' Amended Complaint is indeed lengthy, as the City bemoans, Mot. at 34, because the evidence that the Enacted Plan was drawn to separate voters on the basis of race is extensive.

The City correctly notes that Plaintiffs bear the burden of establishing that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." Mot. at 10 (quoting *Cooper v. Harris*, 581 U.S. 285, 291 (2017)). But the City (again) misunderstands Plaintiffs' argument. Plaintiffs do not claim that only 114 Black voters moved from District 2 to District 4 constitutes a significant number of voters. *See id.* at 11. Rather, Plaintiffs allege that *every* voter in the City of Miami was placed within or without their City Commission district based on their race. Race was the predominant factor used to determine the overall shape of each district.[4] In any event, analyzing "the racial composition of

---

[4]   That is why the historical background of the Commission districts is relevant, and supports, rather than undermines, Plaintiffs' claim. *Cf.* Mot. at 2–4. To the extent past redistricting plans were also drawn predominantly based on race, if the current Commission sought to perpetuate that racial classification by maintaining the cores of the inherited districts, their effort is also race-based and must comport with strict scrutiny. Plaintiffs take no position on whether the Commission map was sufficiently narrowly tailored in 1997, 2003, or 2013. What they allege is that the districts are race-based *now*, and that they must be narrowly tailored to a compelling interest *now*. *See Jacksonville I*, 2022 WL 7089087, at *37 (finding that historical evidence showing districts had been race-based for at least thirty years supported a finding that current map perpetuated those race-based district cores); *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16573730, at *4 (M.D. Fla. Nov. 1, 2022) ("[T]he Enacted Plan inflicts a new harm on these Plaintiffs, and it is the actions of the current City Council in passing this Plan, the Enacted Plan,

populations moved into and out of disparate parts of [a] district"—looking at *the areas moved*—is exactly part of the "holistic analysis" a court conducts to determine whether race predominated in the line-drawing. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 192 (2017).

The City's next argument, that the Amended Complaint fails to sufficiently allege that the use of race in drawing District 5 was not narrowly tailored to a compelling interest, Mot. at 12–14, similarly misses the mark. ***First***, once strict scrutiny is triggered, it is *not* Plaintiffs' burden to show whether the challenged racial classification is narrowly tailored to a compelling government interest. That burden shifts to the government. *Cooper*, 581 U.S. at 292 ("The burden thus shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end."); *contra* Mot. at 12. Further, Plaintiffs are not required to rebut the City's defenses without the benefit of knowing what those defenses are or what compelling interests the City may raise to justify its race-based districts. Plaintiffs therefore adequately allege that the Commission's use of race is not narrowly tailored to a compelling interest. *See* FAC ¶¶ 12, 351–57.

***Second***, Plaintiffs do *not* concede that a "majority minority" district was required, Mot. at 13, and the City's assertion underscores its misapplication of the VRA (and lack of narrow tailoring) when crafting District 5. As Plaintiffs argue in their Motion for Preliminary Injunction, ECF No. 26 at 33–35, the VRA requires a district in which Black voters have an opportunity to elect candidates of their choice—not necessarily one with a majority of Black or "minority" voters.

---

which warrant injunctive relief.") (emphases in original); *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389, at *3 (11th Cir. Nov. 7, 2022) (praising district court's consideration of "relevant historical background" in determining enjoined districts were race-based).

*Caster v. Merrill*, 2022 WL 264819, at *83 (N.D. Ala. Jan. 24, 2022) (three-judge court), *cert. granted before judgment sub nom. Merrill v. Milligan*, 142 S. Ct. 879 (2022); s*ee Wright v. Sumter Cnty. Bd. of Elections*, 979 F.3d 1282, 1299 (11th Cir. 2020) (affirming district court's conclusion that "[t]he remedial plan should give[ ] African American voters a realistic opportunity to elect candidates of their choice").

In short, Plaintiffs properly plead that the City of Miami violated the Equal Protection Clause of the Fourteenth Amendment when it blatantly and grossly sorted Miamians based on their race. Accordingly, the court should deny the City's Motion to Dismiss.[5]

## CONCLUSION

For the reasons above, and the reasons stated in the First Amended Complaint, Plaintiffs respectfully ask the Court to deny the City of Miami's Motion to Dismiss.

---

[5] The City's Motion includes another section, titled "The Amended Complaint Creates a Conflict Between the Hispanic Population And the Black Population," which asks many rhetorical questions but does not appear to make an argument for dismissal. Mot. at 15. To the extent the City asserts that it is a legal conflict of interest for the undersigned to represent clients of different races, a motion to dismiss is not the appropriate vehicle to make such an assertion. Furthermore, the City's apparent belief that Hispanic and Black Miamians cannot share the same concerns about and suffer the same harms from racial gerrymandering demonstrates the City's commitment to dividing Miamians by race through the redistricting process.

Respectfully submitted this 10th day of March, 2023,

/s/ Nicholas L.V. Warren

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida, Inc**.
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida, Inc**.
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Neil A. Steiner*
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com

Christopher J. Merken*
Jocelyn Kirsch*
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2380
christopher.merken@dechert.com
jocelyn.kirsch@dechert.com

*Admitted pro hac vice*

*Counsel for Plaintiffs*