UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS,

        Plaintiffs,

v.

CITY OF MIAMI,

        Defendant.

_____/

## DEFENDANT'S REPLY IN SUPPORT OF OBJECTIONS TO REPORT AND RECOMMENDATION DE 52

Defendant, City of Miami (the "City"), files this reply in support of its objections ("Objections" DE 55) to the Report and Recommendation ("R&R" DE 52) on Plaintiffs, Grace, Inc. ("Grace"), Engage Miami, Inc. ("Engage Miami"), South Dade Branch Of The NAACP, Miami-Dade Branch Of The NAACP, Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras and Steven Miro (collectively, "Plaintiffs") Expedited Motion for Preliminary Injunction (the "Motion" DE 26), and in reply to the Response Memorandum of Law (the "Response" DE 57) filed by Plaintiffs.

The City filed a motion for leave to file a reply yesterday because the Local Rules do not provide for one. Because the Motion was unopposed, and the Reply was promised to be filed by today, the City is filing it now in so that it will be available to the Court if it grants the request.

This case is unique. Plaintiffs would have a court, for the first time, find that a majority-minority district required for compliance with Section 2 of the Voting Rights Act ("VRA") had to

be drawn at less than a majority—the threshold for obtaining review under the *Gingles* Section 2 analysis.  As stated in the Objections, this is unprecedented.  Plaintiffs attempt to make a strawman of the City's argument and state that the City asserted "it had trouble finding published cases where courts have approved maps with VRA-protected districts under 50% BVAP." DE 57 p.5.  That is inaccurate.  The City said it was unaware of any case that "found that an election district that needed to be created under the VRA nevertheless had to be created at less than 50%. DE 55 p.15. A plaintiff needs a sufficiently geographically compact majority to even bring a VRA challenge. *Negron v. City of Miami Beach*, 113 F.3d 1563, 1569 (11th Cir. 1997).  In Plaintiffs' view of the world, a plaintiff could bring a VRA challenge with less than 50% as long as they had a coalition, which flies in the face of *Gingles*.¹  Additionally, even where the *Gingles* test is met, Plaintiffs' interpretation would allow governments to refuse to create majority-minority districts.  It would invalidate the *Gingles* test and spell an end for majority-minority districts, even when they may be drawn in a compact manner.  Plaintiffs would make this a test case: how much must a potential majority-minority district be reduced below a majority before it no longer complies with the VRA? They mislead the Court with a string cite that does not support their position:

In *Jacksonville Branch of NAACP v. City of Jacksonville (Jacksonville III)*, 2022 WL 17751416 (M.D. Fla. Dec. 19, 2022), the Court was careful to state that it was not a VRA case and it did not find that less than 50% would satisfy the VRA. *Id* at * n.7.

In re Senate Joint Resol. 100, 334 So. 3d 1282, 1289 (Fla. 2022), the Court found there was no vote dilution in those minority districts under a state standard that blended standards set

---

¹ This is impermissible. *See Bartlett v. Strickland*, 556 U.S. 1, 15 (2009) ("Nothing in § 2 grants special protection to a minority group's right to form political coalitions.").

forth in Section 2 and section 5 of the VRA—which advance two different standards. *See In re Senate Joint Resol. of Legislative Apportionment 1176*, 83 So. 3d 597, 619-20 (Fla. 2012)(explaining the difference between Section 2's vote dilution analysis and Section 5's retrogression analysis). The Court, interpreting state constitutional standards, never concluded that the Section 2 of the VRA mandated majority-minority districts that were not majorities. In fact, it observed

> In voting rights parlance, a "majority-minority district" is one in which voters of a minority group constitute a majority of the district's voting-age population. The existence of a minority group "sufficiently large and geographically compact to constitute a majority in [a] reasonably configured legislative district" is one of "three threshold conditions for proving vote dilution under" section 2 of the Voting Rights Act. Cooper v. Harris, –– U.S. ––, 137 S. Ct. 1455, 1470, 197 L.Ed.2d 837 (2017) (explaining the threshold vote dilution criteria established in Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986)).

*Id*. at 1288 n.5.

In *In re Senate Joint Resol. 2G*, 601 So. 2d 543, 546 (Fla. 1992), the Court concluded that section 2 of the VRA did not mandate a majority-minority district to be created due to the extreme gerrymandering that would be needed; but the Department of Justice's plan that prevented the district from being drawn in a manner that avoided retrogression—that is a diminishment in the minority's ability to elect its candidate of choice—was appropriate.[2] The Plaintiffs seek to blur the distinction between Section 2 and Section 5—two very different standards. And of course, Section 5 is no longer enforceable. *See Shelby Cnty., Ala. v. Holder*, 570 U.S. 529 (2013) (invalidating the VRA's coverage formula and preclearance requirement that triggered the Department's review of certain voting changes under Section 5 of the VRA).

In *De Grandy v. Wetherell*, 794 F. Supp. 1076, 1088, 1089 n.5 (N.D. Fla. 1992), the Court

---

[2] The *Gingles* test requires sufficient compactness.

created two majority-minority districts, and created a third "influence district" that was less than 50%. The Court did not find that the majority-minority districts needed to be less than 50%.

Plaintiffs would have this Court strip District 5 of its VRA-protected status and convert it from a majority-minority district to an influence district, even though a majority-minority district meeting the *Gingles* test can be created. They invite this Court to commit error, end District 5 as a majority-minority district, and set up a VRA challenge.

Plaintiffs continue to insist that 50% of voting age population is arbitrary, even though it is the threshold for a VRA case. Given the precedent of *Gingles*, any number from 1-100% may be arbitrary except 50%. Plaintiffs also try to give a misleading impression that District 5's Black voter registration did not go down from 2022 to 2023 by stating that District 5's borders changed. DE 57 p.6-7. The border did change, but that is not why registered voters declined. There was a <u>citywide</u> decline in Black registered voters. Compare DE 24-92 p.75 to DE 24-93 p.76 (declining from 34,340 to 33,557). That's a 2.28% decline in one year. Plaintiffs are urging this Court to end District 5 as a VRA Black majority-minority district.

The R&R found fault with nearly every decision that the City made or did not make. That will make the map undrawable. Plaintiffs have withheld disclosing any specificity whatsoever because their map inevitably will contain the same sorts of decisions. They do dispute that any map will be nearly identical demographically unless it is intensively gerrymandered with race as the predominant factor to evenly distribute ethnicities, which is impermissible. Even then the maps will be nearly identical demographically. Plaintiffs' response hints for the first time that they are seeking a sweeping yet undisclosed change (DE 57 p.10), which inevitably will be constitutionally infirm based on the reasoning of the R&R, but they seek to delay this reveal as close to the deadline for submitting a map to the County as possible. This is not like a normal suit between two private

parties that can enter into a settlement agreement to accept anything. Any map the City implements still must pass constitutional muster. And if the reasoning of the R&R is applied, no map can. Plaintiffs have no response other than to say "don't worry about it now." Plaintiffs cannot play that game, and still say that they have not delayed or that *Purcell* does not apply. They took a year to prepare the motion for injunction, which was voluminous and contained two expert reports, yet they proposed no alternative map. That is more than suspect, it is telling. An alternative map may not be an absolute requirement for a constitutional challenge, but it is for a preliminary injunction this close to an election.

The deliberate delay of the process alone is grounds for denying a preliminary injunction. Plaintiffs, once more employing a strawman, claim the City is prognosticating that they will bring a challenge. The Response seems to settle that they will. No amount of "good faith" can overcome the impossible parameters that the City now faces under the R&R's rubric as detailed in the Objection. Nevertheless, the City's fears are not limited to just the Plaintiffs' challenges. Plaintiffs do not speak for every voter. Anyone who feels that their ox was gored by the new map will be able to bring a challenge and point to the R&R to show why their neighborhood should not have been split or why they are being racially gerrymandered.

As the City pointed out in the Objection, *Purcell* is applicable right now. The R&R conceded *Purcell* is relevant and may apply as we get closer. DE 52 p.99. Plaintiffs claim the *Purcell* principle was waived (DE 57 p.9), even though it was raised, but it is not waivable.[3]

---

[3] We are doubtful that the Purcell principle is subject to the ordinary rules of waiver (or perhaps more accurately here, forfeiture). As when considering jurisdictional limitations, we have an independent obligation to "weigh ... considerations specific to election cases.". When we are "[f]aced with an application to enjoin" voting laws close to an election—or, as here, a request to stay such an

Further, Plaintiffs lodged no objection to the R&R on this point.  *Purcell* must be considered.

WHEREFORE, the City respectfully objects to the Report and Recommendation (DE 52), and requests this Court deny Defendant Plaintiffs' Expedited Motion for Preliminary Injunction (DE 26).

Respectfully submitted,

By:   *s/ Christopher N. Johnson*
GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Florida Bar No. 991562
George T. Levesque
Florida Bar No. 55551
Andy Bardos
Florida Bar No. 822671
301 S. Bronough Street
Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile:  (850) 577-3311

GRAYROBINSON, P.A.
Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358
Email: Marlene.Quintana@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida  33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

---

injunction—we are "required to weigh" the injunction's impact for an upcoming election.

*League of Women Voters of Fla., Inc. v. Florida Sec. of State*, 32 F.4th 1363, 1371 n.4 (11th Cir. 2022)(citations omitted).

CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
Telephone: (305) 416-1800
Facsimile: (305) 416-1801
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Christopher N. Johnson*
Christopher N. Johnson