**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    Plaintiffs,
v.

CITY OF MIAMI,

    Defendant.
_____/

**ORDER**

THIS CAUSE came before the Court upon Defendant City of Miami's ("Defendant") Motion to Stay Injunction Order ("Motion" or "Mot.") (ECF No. 64). Therein, Defendant requests that this Court stay its Order granting a preliminary injunction, ("the prior Order") (ECF No. 60), pending appeal. Plaintiffs did not file a response.[1] For the following reasons, the Court DENIES Defendant's Motion.

**I.   BACKGROUND**

The Court assumes the Parties' familiarity with the background in this matter. Previously, the Court entered the prior Order enjoining Defendant from conducting the November election pursuant to the election districts set forth in City of Miami Resolution 22-131 ("Enacted Plan"). *See* (ECF No. 60). Thereafter, Defendant appealed. *See* (ECF No. 63). In the instant Motion,

---

[1] Plaintiffs in this Action are Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras Steven Miro, ("Individual Plaintiffs"), and GRACE, Inc., Engage Miami, Inc., South Dade Branch of the NAACP and Miami-Dade Branch of the NAACP ("Organizational Plaintiffs") (collectively, "Plaintiffs").

Defendant requests that the Court stay the prior Order pending a resolution of its appeal to the Eleventh Circuit. *See generally* Mot.

## II. LEGAL STANDARD

The issuance of a stay pending appeal is an "extraordinary remedy." *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1455 (11th Cir. 1986). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citing *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (quoting *Virginian Ry. Co.*, 272 U.S. at 672–73). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–44. Specifically, the movant must show: "(1) that the movant is likely to prevail on the merits on appeal; (2) that absent a stay the movant will suffer irreparable damage; (3) that the adverse party will suffer no substantial harm from the issuance of the stay; and (4) that the public interest will be served by issuing the stay." *Garcia-Mir*, 781 F.2d at 1453. "The first two factors are the most critical." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (citing *Nken* at 434–35). "To satisfy its burden as to those factors, the party seeking the stay must show more than the mere possibility of success on the merits or of irreparable injury." *Id.*

## III. DISCUSSION

In support of its Motion, Defendant advances two arguments: (1) the Court should not apply the traditional standard to analyze a stay because this case falls within the parameters of *Purcell v. Gonzalez*, 549 U.S. 1 (2006); and (2) even under the traditional standard, Defendant satisfies each element necessary for the Court to grant a stay. *See generally* Mot. Upon review, the Court reiterates that the circumstances of this case do not implicate *Purcell*, and therefore, the

Court need not consider Defendant's Motion under an alternative standard. *See* (ECF No. 60 at 26–28). Reviewing the Motion under the traditional legal standard, the Court finds that granting a stay is not warranted given that Defendant has failed to satisfy the necessary elements.

### A. The *Purcell* Principle

Defendant argues that *Purcell* applies to the instant Action. *See* Mot. at 9–11. According to the *Purcell* principle, Courts "ordinarily should not enjoin state election laws in the period close to an election." *See id.* at 1. Though the Court has already explained why *Purcell* does not apply, *see* (ECF No. 60 at 27–29), Defendant nonetheless invokes *Purcell* to implore the Court to apply a different standard when analyzing its Motion. *See* Mot. at 9–11.

Relying on cases where the Eleventh Circuit has applied *Purcell*, Defendant argues that the "the traditional test for a stay [] does not apply in the particular circumstance that this case presents—namely, when a lower court has issued an injunction of a state's election law in the period close to an election." *Id.* at 2 (internal quotations omitted). Defendant avers that when *Purcell* applies, the State's bar is lower to "obtain the stay it seeks." *Id.* Should *Purcell* apply, Defendant would not need to demonstrate a likelihood of success on the merits on appeal, but rather, must show Plaintiffs' position on the merits is not "entirely clearcut." *Id.* (citing *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 23 F. 4th 1363, 1370 (11th Cir. 2022)).

The Court rejects the argument that it should apply a different standard to analyze the requested stay because as it explained in the prior Order, *Purcell* does not apply to the instant Action. *See* (ECF No. 60 at 27–28). In the prior Order, the Court explained that while federal courts ordinarily should not enjoin state election laws in the period close to the election, applying *Purcell* to the instant Action nearly six months prior to an election would "extend the eve of an election' farther than the Eleventh Circuit has before." *Id.* at 28 (quoting *Jacksonville Branch of*

*NAACP v. City of Jacksonville* ("*Jacksonville II*"), No. 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022)). Further, the Court analogized to another case within the Eleventh Circuit to determine that ordering Defendant to draw a constitutionally conforming map by August 1, 2023 (*i.e.* the date the Miami-Dade County Elections Department said it would need a remedial map transmitted to it) would not implicate the *Purcell* principle.[2] *See id.* at 27 (citing *Jacksonville Branch of NAACP v. City of Jacksonville* ("*Jacksonville I*"), --- F. Supp. 3d ---, No. 3:22-CV-493-MMH-LLL, 2022 WL 7089087, at *41 (M.D. Fla. Oct 12, 2022)). The Court's analysis has not changed. After careful review of Eleventh Circuit precent, the Court is satisfied that *Purcell* does not apply to the instant Action, and thus reviews the Motion pursuant to the traditional factors considered when evaluating a motion to stay. *Cf. Jacksonville II*, 2022 WL 16754389 at *3 (refusing to apply an alternative standard under *Purcell* to the defendant's motion to stay).

**B. Stay Analysis**

A party requesting a stay must demonstrate (1) it is likely to succeed on the merits on appeal; (2) absent a stay, the party will suffer irreparable harm; (3) the adverse party will not suffer substantial harm from the issuance of a stay; and (4) the issuance of a stay will serve the public interest. *Garcia-Mir*, 781 F.2d at 1453. The Court addresses each factor in turn.

*i. Likelihood of Success on the Merits*

At the outset, the Court notes that Defendant seems to confuse its burden regarding what it must demonstrate to show a likelihood of success on the merits. When assessing the first element necessary for a stay, the Court must analyze whether Defendant "is likely to prevail on the merits

---

[2] In *Jacksonville I*, the Court granted an injunction against the City of Jacksonville on October 12, 2022, and the City was ordered to file a remedial map by December 16, 2022 to prepare for the March election. *See id.* at *54–55. Under those circumstances, the Court did not "find it appropriate to apply the *Purcell* principle to [that] case." *See id.* at *4.

*on appeal*." *Id.* at 1453 (emphasis added).  However, Defendant argues throughout its motion that "*at trial*, the [Defendant] has a likelihood of success." *See* Mot. at 8 (emphasis added). By incorrectly framing its burden in such a manner, Defendant essentially relitigates the issue of whether a preliminary injunction should have been granted, not whether its appeal is likely to succeed. *See generally id.*  This is not the standard for a motion to stay pending appeal.

Generously construing Defendant's arguments under the proper standard, the Court interprets the Motion as arguing that Defendant is likely to succeed on the merits of the appeal because the Court improperly concluded that (1) District 5 was not narrowly tailored; (2) Districts 1 and 2 were drawn unconstitutionally since those districts border District 5; and (3) Districts 3 and 4 were drawn unconstitutionally because the residents of those districts were not actually racially sorted and the map could not have been drawn any other way. *See id.* at 5–8.  For the reasons discussed below, the Court finds that Defendant fails to demonstrate a likelihood of success on appeal for any of these three arguments.

Regarding District 5, Defendant was required to demonstrate that the racial considerations it used to design District 5 served a compelling governmental interest, and such racial considerations were narrowly tailored to that interest, thereby satisfying strict scrutiny. *See* (ECF No. 60 at 8) (citing *Cooper v. Harris*, 581 U.S. 285, 291 (2017)).  Defendant argued and the Court agreed that Defendant's goal of complying with the Voting Rights Act ("VRA") constituted a compelling governmental interest. *See id.* at 19–20.  Then, to show that Defendant's consideration of race was narrowly tailored to VRA compliance, Defendant was required to show that it had "good reason" to believe the Black Voting Age Population ("BVAP") figure it selected was necessary to avoid violating the VRA.  *See Abbott v. Perez*, 138 S. Ct. 2305, 2315 (2018); *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 182 (2017).  If Defendant could demonstrate it

had "good reason" for selecting its BVAP figure, then Defendant's method of VRA compliance would be narrowly tailored, thereby satisfying strict scrutiny. *See Bethune-Hill*, 580 U.S. at 182. However, as the Court explained in the prior Order, "Defendant [] failed to provide 'good reason' for its belief that a 50% BVAP figure was required." (ECF No. 60 at 20).

In the instant Motion, Defendant argues that "[t]he Court, instead of looking at whether the district was actually narrowly tailored, [] framed the issue in evidentiary terms." Mot. at 4. Not so. The Court expressly found that district was not narrowly tailored by explaining: (1) Defendant "failed to offer sufficient pre-enactment analysis" explaining why it selected the 50% BVAP figure; and (2) various commissioners and their redistricting consultant stated their belief that a BVAP figure would be VRA compliant with a figure below 50%. (ECF No. 60 at 21–22). As such, the Court found that Defendant failed to explain how it had "good reason" to believe selection of the 50% BVAP figure was necessary to comply with the VRA. *See id.*

In the instant Motion, Defendant does not assert that the Court's analysis was erroneous, but rather, states that proving the 50% BVAP figure was narrowly tailored is "an easily met trial burden." Mot. at 5. Because Defendant still fails to explain how it had "good reason" to select the 50% BVAP figure to ensure VRA compliance, the Court finds that Defendant has failed to demonstrate a likelihood of success on appeal regarding its argument that the Court improperly concluded that District 5 did not withstand strict scrutiny. *See id.*

Next, Defendant argues that the Court improperly found that Districts 1 and 2 were unconstitutional because "[i]f the drawing of District 5 meets strict scrutiny, then its border [abutting Districts 1 and 2] meets strict scrutiny," and a "border cannot be constitutional on one side and unconstitutional on the other." *Id.* at 6. Based on this assertion, Defendant appears to argue that because the Court erroneously concluded District 5 was drawn unconstitutionally, and

6

because District 5 borders these two districts, the Court's conclusion regarding Districts 1 and 2 was improper. *See id.*

Defendant's argument is unavailing for multiple reasons. As described above and extensively in the prior Order, the design of District 5 does not withstand strict scrutiny. *See* (ECF No. 60 at 19–22). Moreover, the Court properly analyzed the constitutionality of Districts 1 and 2. Regarding both Districts 1 and 2, the Court found that Defendant never proffered an explanation for how its use of race in the design of these districts withstands strict scrutiny. *See id.* at 18. Defendant's argument about how District 5 shares borders with Districts 1 and 2 does not impact the Court's finding that each of those districts was drawn unconstitutionally. Therefore, the Court finds that Defendant is not likely to prevail on the merits of this argument on appeal.

Lastly, Defendant argues that the Court improperly concluded that Districts 3 and 4 were drawn unconstitutionally, because, according to Defendant, these residents were not racially sorted, and no alternative map could be drawn. *See* Mot at 6–8. In the prior Order, the Court found that the record evidence was replete with statements from multiple commissioners expressing "their desire that Districts 1, 3, and 4 remain 'Hispanic districts.'" (ECF No. 60 at 10) (citations omitted). Defendant failed to explain how the use of racial considerations in these districts withstood strict scrutiny. *See id.* at 18–22. Consequently, the Court is satisfied that the design of these districts impermissibly used race as the predominate factor in violation of the Fourteenth Amendment.

Furthermore, Defendant's repeated assertion that "the map could not be drawn any other way" does not impact the analysis of whether these districts were impermissibly racially gerrymandered. *See* Mot. at 7. Defendant's assertion entirely fails to state why it was permissible to design Districts 3 and 4 (or any of the districts) with race as the predominate factor, and how

such designs would withstand strict scrutiny. *See id.* at 7–8. Accordingly, the Court is satisfied that its conclusion regarding Districts 3 and 4 was proper and finds that Defendant is not likely to prevail on the merits on appeal.

### ii. Irreparable Harm

Defendant argues that absent a stay, it will suffer irreparable harm because of the uncertainty resulting from the preliminary injunction and the subsequent harm that Commissioners seeking reelection may suffer. *See* Mot at 7. Specifically, Defendant argues that the prior Order affects "candidates, campaign organizations, independent groups, political parties, and voters, among others." *Id.* at 8 (citations omitted). Defendant also identifies that due to Miami residency requirements, candidates must have resided within the district they wish to represent for at least one year prior to qualifying and shall maintain residence in that district for the duration of that term. *See id.* (citing City of Miami, Code of Ordinances § 16-6(b)(3)). Based on these two considerations, Defendant avers that it will suffer irreparable harm should the Court deny the instant Motion and the election were to occur in November. *See id.*

Defendant's arguments do not constitute irreparable harm. As the Court found in *Jacksonville II*, the fact that "voters and candidates potentially hav[e] to readjust to new districts, [Defendant] will hav[e] to quickly develop a new map," and that there is a shorter time to prepare for the upcoming election does not constitute irreparable harm. *Id.* at *4. In *Jacksonville II*, the district court found the Enacted Plan was substantially likely to be unconstitutional, and accordingly, the Eleventh Circuit explained that the City of Jacksonville would not be irreparably harmed by using a remedial, constitutionally conforming map in the upcoming election. *See id.* The same logic and considerations apply here. Accordingly, the Court finds that Defendant does not stand to suffer irreparable harm absent the stay of the prior Order.

*iii. Risk of Substantially Injury to Opposing Party and Public Interest*

In the racial gerrymandering context, the risk of harm to Plaintiffs and the public interest are intertwined. Thus, the Court analyzes both elements together.

As to the harm Plaintiffs stand to suffer, Defendant makes no argument, nor could it. *See generally* Mot. Well-settled precedent establishes that Plaintiffs stand to suffer serious harm when the legislature racially sorts its citizens, and subsequently, when those citizens vote in racially gerrymandered districts. *See* (ECF No. 60, at 27); *see also Bethune-Hill,* 580 U.S. at 187; *Miller v. Johnson*, 515 U.S. 900, 911–12 (1995). As the Court found in the prior Order, Plaintiffs are substantially likely to prevail in their claim that each of the districts are unconstitutionally racially gerrymandered. *See generally* (ECF No. 60). Therefore, the Court is satisfied that Plaintiffs stand to suffer grave and irreparable harm.

Instead of arguing that Plaintiffs are unlikely to suffer harm, Defendant argues that the public interest will be disserved absent a stay because (1) a remedial map will necessarily dilute Black citizens' voting power and create risk of a VRA challenge; and (2) the injunction "will throw the upcoming election into chaos." Mot. at 11.

Addressing the first argument, Defendant does not explain why it concludes that a remedial map must dilute the voting power of Black citizens. *See id.* As Defendant correctly identifies, the Court found that "Defendant did not meet its burden of establishing that it had [good reason] for selecting 50% [BVAP]." *Id.* However, Defendant offers no further explanation why a remedial map could not be drawn where the selected BVAP figure is narrowly tailored to VRA compliance. *See id.* at 11–12. As discussed above and in the prior Order, Defendant must be able to explain why it had "good reason" to believe a remedial map complied with the VRA. *See Abbott*, 138 S. Ct. at 2315; *see also* (ECF No. 60 at 20). The Court is not aware of any reason, nor does Defendant

offer one, why a map that has not yet been drawn could not meet this standard. *See* Mot. at 8. Accordingly, the Court does not find that public interest considerations weigh in favor of staying the preliminary injunction.

Moreover, Defendant's argument that the injunction will cause chaos in the upcoming election is unavailing. The "public has no interest in enforcing unconstitutional redistricting plans." *Jacksonville II*, 2022 WL 16754389 at *5. In the prior Order, the Court found that Plaintiffs are likely to prevail on their claim alleging each district in the City of Miami was racially gerrymandered in violation of the Fourteenth Amendment. *See generally* (ECF No. 60). Like in *Jacksonville II*, the Court refuses to require the citizens of Miami to vote in districts "defined by a map that is substantially likely to be unconstitutional." *Jacksonville II,* 2022 WL 16754389 at *5.

Upon review of each of the elements required to grant a stay, the Court finds that each weigh against the stay Defendant proposes. Accordingly, the Court denies Defendant's Motion.

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the Court finds that a stay is not warranted. For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Stay Injunction Order (ECF No. 64) IS DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this __6th___ day of June, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record