IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

## DECLARATION OF NICHOLAS WARREN

I, Nicholas Warren, pursuant to 28 U.S.C. § 1746, declare the following:

1. I am one of the attorneys representing the plaintiffs in this matter. I make this declaration based on my personal knowledge.

2. I attended the Miami City Commission meeting on June 14, 2023 along with multiple plaintiffs. One of these plaintiffs was Yanelis Valdes, the Director of Organizing and Advocacy for Engage Miami, which is also an organizational plaintiff. Ms. Valdes spoke at the beginning of the meeting to present Plaintiffs' Map 3 to the Commission. She wore an Engage Miami t-shirt.

3. Toward the end of the Commission's long lunch recess, Ms. Valdes and one or both of Plaintiff Alexandra Contreras and Engage Miami's Deputy Executive Director Nora Viñas went to Commissioner Christine King's office in City Hall to try to speak with her.

4. At 3:18 P.M., Ms. Valdes texted a group chat with me, Ms. Contreras, and Ms. Viñas: "Christine King said she can't speak to us bc [(because)] we're plaintiffs but she can speak to our attorney".

5. I replied at 3:19 P.M.: "tell her I'll come and can speak to her w/ city atty present".

6. By 3:27 P.M., I was walking back to City Hall from where I had been (a little more

1

than ten minutes' walk away). I met Ms. Valdes in the Commission chamber, and went with her to Commissioner King's office at approximately 3:35–38 P.M.

7. When we walked in, nobody was at the front desk of the office.

8. Behind the front desk was a door to a conference room, less than about seven paces from where I stood in the entry area. The door was open the entire time I was in the office.

9. Inside the conference room I could see, and made eye contact with, Commissioner King, who sat facing the open door.

10. Commissioner King was speaking with others inside the room.

11. Ms. Valdes and I waited until one of Commissioner King's staff came out and greeted us. Ms. Valdes said she was a plaintiff in the case, had come earlier, had been told Commissioner King would speak to her attorney, and that her attorney was here.

12. The staff member said she would let the commissioner know and left the entry area.

13. As Ms. Valdes and I waited, we intermittently chatted. When there were lulls in our chatting, I could hear the conversation happening through the open door in the conference room.

14. During one of those lulls, I heard Commissioner King state that she was "looking out for the minorities" or "I have to look out for the minorities" and did not want a "white affluent" area or areas in her district.

15. Shortly after, a staff member came out and told us that Commissioner King was not available to speak with us.

16. Ms. Valdes and I returned to the Commission chamber and waited for commissioners to return to the dais and for the Commission meeting to resume with Ms. Viñas, Ms. Contreras, and others.

17. While we waited, I asked Ms. Valdes if she had heard what Commissioner King

2

said when we were in her office. She told me she had not. I did not tell Ms. Valdes or any other plaintiffs what I overheard.

18. Based on the video recording of the meeting, Commissioner King returned to the dais by 3:45 P.M., and the Commission resumed its meeting at 3:56 P.M.

19. At 4:01 P.M., I messaged Daniel Tilley, also an attorney for the plaintiffs and my supervisor at the ACLU of Florida: "I overheard King talking about minorities."

20. I further messaged him after he responded "What do you mean?" at 4:07 P.M.:

> "I'm looking out for hte [sic] minorities"
> she said she didn't want some white affluent areas
> I was waiting outside her office

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.

Dated: July 6, 2023

Nicholas Warren

3