IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI,

    Defendant.

_____/

## DECLARATION OF JOE ARRIOLA

I, Joe Arriola, pursuant to 28 U.S.C. § 1746, declare the following:

1. I served as City Manager for the City of Miami ("City") from 2003 to 2006.

2. Because of my previous role as City Manager, I am familiar with the rules and laws governing the Miami City Commission ("Commission"), its meetings, and its enactments.

3. This familiarity and expertise includes the City Code and Florida statutes.

4. The Commission has a responsibility to notify the public of a special meeting. City Code § 2-33(l).

5. This notice must include the business to be considered at the special meeting. *Id.*

6. The Commission is only able to conduct business and take votes on items that were included in the notice. "No business shall be conducted or a vote taken at a special city commission meeting on business other than the subject(s) for which the special meeting is called unless the city commission by a majority vote deems such resolution or ordinance to be of an emergency nature and such resolution or ordinance has been reviewed by the office of management and budget for any fiscal impact." *Id.*

7. This rule for special meetings mirrors a rule for regularly scheduled meetings,

whereby, "A copy of each agenda item including each resolution and ordinance and all attachments and back-up material shall be furnished to the mayor and members of the city commission at least five full business days before each regular city commission meeting with the exception of veto items... Nonscheduled ("pocket") items may be introduced for consideration at a city commission meeting by the mayor, a commissioner, the city manager, or the city attorney provided that the city commission by a majority vote deems such resolution or ordinance to be of an emergency nature." City Code § 2-33(f).

8. I reviewed the materials from the City Commission's June 14, 2023 special meeting, including the meeting notice, agenda, marked (post-meeting) agenda and the video recording.

9. The meeting agenda (printed June 12, two days prior to the meeting) only included a discussion item concerning redistricting and the city commission district boundaries. There were no other items – resolutions, ordinances or otherwise – on the agenda. (Agenda, June 14 Comm'n Special Meeting, printed June 12, 2023.)

10. The marked agenda (printed June 23, nine days after the meeting) included a resolution, R-23-271, which purported to provide for new district boundaries, including an attached map. (Marked Agenda, June 14 Comm'n Special Meeting, printed June 23, 2023.)

11. R-23-271 was not included in the meeting agenda noticed in advance of the June 14 special meeting.

12. Therefore, R-23-271 was passed in violation of the City Code and is ultra vires.

13. A discussion item on a topic cannot immediately result in a resolution to be voted on at a special meeting, as attempted here, because there was no finalized resolution noticed in the agenda in advance of the meeting.

14. A discussion item must come back as an actual resolution at a different meeting, noticed in advance of that meeting.

15. In this case, the Commission erred by attempting to pass new district boundaries as a resolution that was not noticed as part of the special meeting.

16. The only way the Commission could have passed this resolution without notice would be by having a majority of the Commission take a separate, first vote to deem the resolution to be of an emergency nature. City Code § 2-33(f).

17. The Commission did not take a vote to deem R-23-271 to be of an emergency nature, nor did any City Commissioners or staff describe the Resolution as being of such nature.

18. Similar municipal and county governments pass their district maps after well-noticed redistricting processes conducted in conformance with state law and local code requirements.

19. One such government is Miami-Dade County. (Miami-Dade Cnty., Legislative Hist., Ord. 212844, https://www.miamidade.gov/govaction/matter.asp?matter=212844&file=false&fileAnalysis=false&yearFolder=Y2022.)

20. The Miami-Dade County Commission noticed Ordinance 212844 in advance of its November 16, 2021 redistricting meeting, and passed it on first reading during that meeting. (Miami-Dade Cnty. Bd. of Cnty. Comm'rs, Nov. 16, 2021 Meeting Agenda, https://www.miamidade.gov/govaction/commagenda.asp?cmbmeetdate=4695&file=true&changes=true&auditor=true.)

21. The County Commission then brought back the resolution, amended it and passed it on second reading during their December 1, 2021 redistricting meeting. (Miami-Dade Cnty.

3

Comm'rs, Dec. 1, 2021 Meeting Agenda,

https://www.miamidade.gov/govaction/commminute.asp?cmbmeetdate=4696&file=true.)

22. The City of North Miami also passed its redistricting map after first and second readings. (*Redistricting NoMi 2022*, City of North Miami,

https://www.northmiamifl.gov/1034/Redistricting-NoMi-2022.)

23. The North Miami City Council meeting on March 8, 2022 included the first reading of the ordinance to amend the boundaries of council districts as Tab H. (North Miami City Council, Mar. 8, 2022 Meeting Agenda,

https://play.champds.com/northmiamifl/agendapdf/323.)

24. Their March 22, 2022 meeting included the second reading of the same ordinance as Tab F. (North Miami City Council, Mar. 22, 2022 Meeting Agenda,

https://play.champds.com/northmiamifl/agendapdf/327.)

25. The agenda packets for both meetings included the district map ultimately adopted, under "Exhibit A." (North Miami City Council, Mar. 8 & Mar. 22, 2022 Meeting Agenda Packets, https://play.champds.com/northmiamifl/agendapacketpdf/327.)

26. The City of Jacksonville also passed its redistricting map after multiple votes, following a preliminary injunction in a racial gerrymandering case similar to the City of Miami's. (City of Jacksonville, Legislative Hist., Ord. 2022-0800,

https://jaxcityc.legistar.com/LegislationDetail.aspx?ID=5896569&GUID=70F37F15-FC47-4695-8F0A-71BED188FE85.)

27. Jacksonville Ordinance 2022-800 to amend district boundaries was introduced during the October 25, 2022 city council meeting. (Jacksonville City Council, Oct. 25, 2022 Meeting Marked Agenda,

https://jaxcityc.legistar.com/MeetingDetail.aspx?ID=988063&GUID=C57650E0-0405-48B1-BDDA-C648EAB0C2C3&Options=&Search=.)

28. The ordinance was amended and passed during the November 3, 2022 meeting of the Special Committee on Redistricting. (Jacksonville Special Comm. on Redistricting, Nov. 3, 2022 Meeting Agenda, jaxcityc.legistar1.com%2Fjaxcityc%2Fmeetings%2F2022%2F11%2F2727_A_Special_Committee_on_Redistricting_22-11-03_Agenda.pdf&embedded=true.)

29. It was passed by the full city council during their November 4, 2022 meeting, including a separate vote to take up the ordinance as an emergency. (Jacksonville City Council, Nov. 4, 2022 Special Council Meeting Marked Agenda, https://docs.google.com/gview?url=https%3A%2F%2Fjaxcityc.granicus.com%2FDocumentViewer.php%3Ffile%3Djaxcityc_bd0542d265258550a0c2474b7c1d51c4.pdf%26view%3D1&embedded=true).

30. In addition to invalidly passing a new redistricting resolution during a special meeting which did not include the voted-on resolution as part of its noticed agenda, the Miami City Commission's procedure for R-23-271 violated the City Code in multiple other ways.

31. These include failing to have the Office of Management and Budget review R-23-271's fiscal impact; failing to publicly post the proposed map online in advance of the special meeting; and falsely stating in the notice of the special meeting that the public would not be able to address the City Commission.

32. R-23-271 was required to be assessed for fiscal impact prior to passage. "All resolutions and ordinances except land use changes, zoning changes, board and committee appointments, and election results shall be reviewed by the office of management and budget for

any fiscal impact prior to placement on any agenda." City Code § 2-33(e).

33. The City provided no evidence of a fiscal impact assessment of their proposed redistricting resolution and map.

34. Redistricting is not included in the listed four exceptions to the fiscal impact requirement, which otherwise applies to all resolutions and ordinances. *Id.*

35. Therefore, the City Commission also violated the City Code in failing to have the Office of Management and Budget review their redistricting resolution for fiscal impact prior to passing R-23-271.

36. The City is also required to post "the supplemental agenda and any information related to the upcoming agenda simultaneous with its distribution." City Code § 2-33(g)(2).

37. "Any information related to the upcoming agenda" includes the proposed map passed as part of R-23-271.

38. The City did not post any proposed map online in advance of the special meeting. They did not post the map they voted on until June 23, 2023 at the earliest – nine days after the vote. Plaintiffs' counsel has represented to me that the resolution and supporting materials were not actually posted online until June 30.

39. Failing to post online the map the City voted on in advance joins failing to include the actual redistricting resolution in the agenda for the special meeting as violations of public notice as required by the City Code.

40. In the public notice the City did provide, they failed to notify the public that the special meeting would include public comment and the opportunity to address the Commission.

41. In fact, the special meeting agenda printed two days prior to the meeting stated that "It is anticipated that no input from anyone other than the City personnel is needed or

6

expected while the City Commission is considering any matter in this portion of the Agenda; accordingly, no member of the public may address the City Commission during this time." (June 14 Comm'n Special Meeting Agenda.)

42. However, the Commission did in fact take public comment during the June 14 special meeting.

43. Ultimately, the failures to notice the redistricting resolution voted on in advance of the June 14 special meeting, to assess the fiscal impact of that redistricting resolution, to post online the map passed as part of that redistricting resolution, and to correctly notify the public of the opportunity for public comment on redistricting violate the Florida Sunshine Law requirement of "reasonable notice." *See* Fla. Stat. § 286.011(1); *Hough v. Stembridge*, 278 So. 2d 288, 291 (Fla. 3d DCA 1973); *Yarbrough v. Young*, 462 So. 2d 515, 517 (Fla. 1st DCA 1985).

44. "Reasonable notice" is a fact-specific inquiry, but in each case, an agency must give the general public enough notice to attend the meeting. Fla. Att'y Gen. Ops. 00-08, 04-44, 80-78, and 73-170. This includes enough information for the public to be informed of how matters may affect their rights and "afford them the opportunity to appear and present their views." *Rhea v. City of Gainesville*, 574 So. 2d 221, 222 (Fla. 1st DCA 1991).

45. The failure to notice the redistricting resolution and post online the redistricting map in advance of the special meeting deprived the public of the opportunity to understand how the redistricting resolution and map would impact them and thus voice their views on the resolution and map during the special meeting.

46. The failure to have the Office of Management and Budget review the proposed resolution for fiscal impact prior to the meeting also contributed to depriving the public of the opportunity to fully understand the impacts of the resolution and proposed map.

7

47. The false statement in the special meeting agenda that public comment would not be heard further deprived the public of the opportunity to voice their views at the special meeting, as it presumably led to some members of the public relying on the false information and, as a result, not attending the meeting or not preparing to speak.

48. Therefore, based on my knowledge of the applicable laws and rules, it is my opinion that the City Commission did not follow the proper procedures required by the City Code as well as Florida statutes, and that its action in passing R-23-271 was in violation of the City Code as well as Florida statutes, and was ultra vires.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.

Dated: 07/06/23         _____
                        **Joe Arriola**