IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
THE CITY'S MOTION TO DISMISS AS MOOT**

The City's latest motion to dismiss (ECF 80) asks the Court to buck more than sixty years of caselaw to evade judicial scrutiny of its continued race-based separation of Miamians in a system that "bears an uncomfortable resemblance to political apartheid." *Shaw v. Reno*, 509 U.S. 630, 647 (1993). The Court should deny the motion.

As described fully in Plaintiffs' objections to the City's proposed remedy (ECF 83), the City's newly enacted redistricting plan—Resolution 23-271—does not pass constitutional muster and this Court should reject that proposed remedy to the City's unconstitutional sorting of Miamians based on race.[1] The City cannot escape judicial review of its proposed remedial plan simply by arguing that the act of passing a new map in response to a court order strips the Court of jurisdiction. This is not a jaywalking law the City has repealed, or a sugary drink tax the City has replaced. The City's Enjoined Plan and Res. 23-271 are unlawful racial gerrymanders that concern the very fabric of democracy in Miami. A back-of-the-napkin attempt to remedy its unconstitutional conduct does not strip the Court of its own responsibility to assess the plan's

---

[1] Plaintiffs incorporate by reference, as if fully set out herein, the facts and arguments presented in their objection to the City's new plan (ECF 83).

1

lawfulness. And in its slapdash effort to dodge the preliminary injunction, the City has failed to grapple with the core constitutional problem of the Enjoined Plan: "Outright racial balancing is patently unconstitutional." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, No. 20-1199, 2023 WL 4239254, at *20 (U.S. June 29, 2023) (cleaned up).

Because this Court has "its own duty to cure illegally gerrymandered districts," it must review—and cannot accept—Res. 23-271. *North Carolina v. Covington*, 138 S. Ct. 2548, 2553 (2018) (*Covington III*). And because it cannot accept (and, indeed, has not accepted) Res. 23-271, the Court cannot dismiss as moot Plaintiffs' First Amended Complaint. Accordingly, the Court should deny the City's legally baseless motion to dismiss and continue with its duty to both cure the City's illegally racially gerrymandered City Commission districts and try Plaintiffs' damages claims.

## LEGAL STANDARD

### I. Mootness Generally[2]

"The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Elections Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citing *Davis v. Fed. Elections Comm'n*, 554 U.S. 724, 733 (2008)).

"[T]he doctrine of mootness considers whether [the plaintiffs' interests] exist[] throughout

---

[2] Plaintiffs address mootness here only to acknowledge the City's confused framing, not to suggest the doctrine is in fact implicated. As Plaintiffs outline below, this case's procedural posture does not bear on mootness doctrine at all.

the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). "Mootness can occur due to a change . . . in the law." *West Virginia ex rel. Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1138 (11th Cir. 2023) (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004)). "A case is moot '**only when it is impossible for a court to grant any effectual relief whatever to the prevailing party**.'" *Id.* at 1139 (quoting *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 307 (2012)) (emphasis added); *see also Uzuegbunam*, 141 S. Ct. at 796 ("[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with **any effectual relief**, the case generally is moot.") (emphasis added).

"[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Accordingly, the Supreme Court has "explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Further, the "Court's precedents recognize an exception to the mootness doctrine for a controversy that is 'capable of repetition, yet evading review.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

## II. The Redistricting Context

"Relief in redistricting cases is 'fashioned in the light of well-known principles of equity,' . . . taking account of 'what is necessary, what is fair, and what is workable.'" *North Carolina v. Covington* (*Covington I*), 581 U.S. 486, 488 (2017) (first quoting *Reynolds v. Sims*, 377 U.S. 533,

585 (1964), then *New York v. Cathedral Acad.*, 434 U.S. 125, 129 (1977)). After a challenged redistricting scheme is enjoined, the judiciary "has a 'duty' to ensure that [the] remedy 'so far as possible eliminate[s] the discriminatory effects of the past as well as bar[s] like discrimination in the future.'" *Covington v. North Carolina* (*Covington II*), 283 F. Supp. 3d 410, 424 (M.D.N.C.) (quoting *Louisiana v. United States*, 380 U.S. 145, 154 (1965)), *aff'd in relevant part*, 138 S. Ct. 2548 (2018). While federalism and separation-of-powers considerations mean the legislative body is given an opportunity to correct the enjoined plan's deficiencies, *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978), the court must review any new enactment to "consider whether the proffered remedial plan is legally unacceptable because it violates anew constitutional or statutory rights—that is, whether it fails to meet the same standards applicable to an original challenge of a legislative plan in place." *McGhee v. Granville Cnty.*, 860 F.2d 110, 115 (4th Cir. 1988).

This review is part of the court's "inherent power to enforce its own orders." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 90509, at *2 (N.D. Fla. Jan. 11, 2021) (citing *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) and *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983)). That power ensures the government is complying with its initial injunction and makes sense given "courts['] . . . broad equitable powers to remedy violations and make victims of discrimination whole" "in cases involving federal anti-discrimination statutes." *Monohon v. BNSF Ry. Co.*, 623 F. Supp. 3d 990, 1001 (S.D. Iowa 2022) (citation omitted); *see also United States v. Virginia*, 518 U.S. 515, 547, (1996) ("A remedial decree . . . must be shaped to place persons unconstitutionally denied an opportunity or advantage in 'the position they would have occupied in the absence of [discrimination].'" (quoting *Milliken v. Bradley*, 433 U.S. 267, 280 (1977))); *Green v. Cnty. Sch. Bd. of New Kent Cnty.*, 391 U.S. 430, 437 (1968) (explaining that once a court finds an official act purposefully discriminates, the "racial discrimination [must] be

eliminated root and branch"); *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 239 (4th Cir. 2016) ("As to the appropriate remedy for the challenged provisions, 'once a plaintiff has established the violation of a constitutional or statutory right in the civil rights area, . . . court[s] ha[ve] broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs.'" (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1068 (4th Cir. 1982))).

## ARGUMENT

The City's argument that its passage of Res. 23-271 moots Plaintiffs' claim for relief is wrong as a matter of law. To that end, the City's characterization of Res. 23-271 as "not an 'interim' plan, but a plan that wholly replaces the Enjoined Plan," ECF 80 at 6, is irrelevant. "[W]hen, as here, a state enacts a redistricting plan in an effort to remedy a constitutional violation, a district court must 'consider whether the proffered remedial plan is legally unacceptable because it violates anew constitutional . . . voting rights—that is, whether it fails to meet the same standards applicable to an original challenge of a legislative plan in place.'" *Covington II*, 283 F. Supp. 3d at 424 (quoting *McGhee*, 860 F.2d at 115). Whether the City proffered Res. 23-271 as an "interim plan" or a "replacement plan," the new plan was the City's "effort to remedy a constitutional violation," and therefore this Court must consider whether Res. 23-271 is legally acceptable. For that reason alone, the Court should deny the City's motion because Res. 23-271 is simply part of the City's response to Plaintiffs' First Amended Complaint and this Court's injunction.

This makes sense considering the Court's obligations when evaluating a proposed remedy to a constitutional deficiency. In assessing Res. 23-271, the Court "has a 'duty' to ensure that any remedy 'so far as possible elimate[s] the discriminatory effects of the past as well as bar[s] like discrimination in the future.'" *Covington II*, 283 F. Supp. 3d at 424 (quoting *Louisiana*, 380 U.S. at 154); *see also Jacksonville Branch of NAACP v. City of Jacksonville* (*Jacksonville II*), 2022 WL

17751416, at *11 (M.D. Fla. Dec. 19, 2022), *stay denied*, 2023 WL 119425 (11th Cir. Jan. 6, 2023), *and appeal dismissed*, Doc. 37, No. 22-14260 (11th Cir. June 6, 2023). The Court may approve Res. 23-271 only if it provides a "full and adequate remedy" to the race-based sorting of voters. *United States v. Osceola Cnty.*, 474 F. Supp. 2d 1254, 1256 (M.D. Fla. 2006).

Also irrelevant is the City's suggestion that "[t]here is no indication that lines were drawn to separate residents on the basis of race" in Res. 23-271.³ ECF 80 at 7. Res. 23-271 was "offered as a replacement for one invalidated by the [C]ourt," so Plaintiffs no longer bear the burden they "[o]rdinarily" would in asserting a racial gerrymandering claim. *Wilson v. Jones*, 130 F. Supp. 2d 1315, 1322 (S.D. Ala. 2000), *aff'd sub nom. Wilson v. Minor*, 220 F.3d 1297 (11th Cir. 2000). Instead, the Court has an "independent duty to assess its constitutionality." *Id.*; *see also Jacksonville Branch of NAACP v. City of Jacksonville* (*Jacksonville III*), 2023 WL 119425, at *3 (11th Cir. Jan. 6, 2023) (noting district court's "independent obligation to decide whether [proposed] plan was constitutional and corrected the defects which rendered the initial plan unlawful").

The City relies on inapposite authority suggesting an entitlement to the benefit of the doubt and an insulation from judicial review. *See* ECF 80 at 5–6. Unsurprisingly, none of the cases the City cites concern remedial map-drawing to remedy an unconstitutional redistricting plan. *See id.* (citing *Flanigan's Enter., Inc. v. City of Sandy Springs*, 868 F.3d 1248 (11th Cir. 2017) (action regarding sale of sexual devices at adult bookstore), *abrogated by Uzuegbunam*, 141 S. Ct. 792; *United States v. W. T. Grant Co.*, 345 U.S. 629, 635 (1953) (finding Clayton Act suit *not* mooted by defendant's resignation from corporate boards); *Health Freedom Def. Fund v. President of U.S.*,

---

³ As Plaintiffs' objections and evidence in support make clear, there is in fact every indication that the City's new lines were drawn to separate residents based on race. *See generally* ECF 83.

6

2023 WL 4115990, at *2 (11th Cir. June 22, 2023) (finding challenge to CDC's travel mask mandate moot because mandate "has expired on its own terms"); *Schultz v. Alabama*, 42 F.4th 1298, 1320 (11th Cir. 2022) (finding challenge to county bail practices *not* moot), *cert. denied sub nom. Hester v. Gentry*, No. 22-835 (U.S. June 12, 2023)); *Coral Springs*, 371 F.3d at 1328 (finding challenge to repealed sign ordinance "moot because [the city] amended the Sign Code soon after the plaintiff complained about its constitutionality, and, notably, before any lawsuit was filed")).

It is unsurprising that none of those cases concern redistricting because those cases—and the doctrinal framework that undergirds them—concern matters where the government body's new action resolves the wrongful conduct. Here, that is the very question currently being litigated. The City asks the Court to assume the result of the very item being briefed for the Court's decision—whether the proposed remedy is adequate. It thus makes no sense to cite caselaw, for example, about presumptions of good faith for government actors in the context of whether "wrongful behavior could not reasonably be expected to recur," ECF 80 at 5 (quotations omitted), because the wrongfulness question is what this Court must still resolve. As Plaintiffs outline in detail, the wrongfulness never stopped. *See* ECF 83. The inappositeness of the mootness caselaw in general to this dispute—and the confusion wrought by the City in raising it—is made all the more clear by the implications of the doctrine itself. Once a case is moot, the dispute is over entirely—there is no amending, because there is no dispute left. The City's brief—by conceding that it thinks Plaintiffs should be required to amend rather than the Court being required to dismiss the suit with prejudice—demonstrates the fallacy of discussing mootness here at all.

The vast body of gerrymandering caselaw—whether in the equal protection or Voting Rights Act context—confirms that simply passing a new map does not moot the case, and instead puts the ball squarely in the Court's court for constitutional evaluation. *See, e.g.*, *Whitest v. Crisp*

7

*Cnty. Sch. Dist.*, 601 F. Supp. 3d 1338 (M.D. Ga. 2022) (reviewing government's proposed map enacted to be permanent map); *Covington II*, 283 F. Supp. 3d 410 (M.D.N.C.) (same and sustaining all of the plaintiffs' objections), *aff'd in part, rev'd in part*, 138 S. Ct. 2548 (2018) (reversing only the rejection of districts challenged on state-law, rather than federal, grounds); *Harris v. McCrory*, 2016 WL 3129213 (M.D.N.C. June 2, 2016) (reviewing government's proposed map enacted to be permanent map), *aff'd sub nom. Harris v. Cooper*, 138 S. Ct. 2711 (2018); *Johnson v. Mortham*, 1996 WL 297280 (N.D. Fla. May 31, 1996) (same); *James v. City of Sarasota*, 611 F. Supp. 25 (M.D. Fla. 1985) (same); *Lipscomb v. Wise*, 399 F. Supp. 782, 792 (N.D. Tex. 1975) (same and approving map), *rev'd*, 551 F.2d 1043 (5th Cir. 1977) (rejecting map), *rev'd*, 437 U.S. 535 (1978) (approving map)*; Sobel v. Adams*, 214 F. Supp. 811 (S.D. Fla. 1963) (same and approving map), *rev'd sub nom. Swann v. Adams*, 378 U.S. 553 (1964) (rejecting map); *see also Thomas v. Bryant*, 919 F.3d 298, 316 (5th Cir. 2019) (giving "the legislature and Governor an opportunity to remedy the Section 2 violation" and noting "[t]he district court has jurisdiction to consider any challenges to the adequacy of a legislative remedy.");[4] *cf. Tallahassee Branch of NAACP v. Leon Cnty.*, 827 F.2d 1436, 1438–40 (11th Cir. 1987) (holding that courts must give deference to government's proposed remedial plan as "legislatively enacted" even when state law did not give the government the power to enact the proposed plan).

A closer look at just three of these cases is instructive. In *Harris v. McCrory*, a three-judge district court enjoined North Carolina's 2011 congressional map as an unconstitutional racial gerrymander. 159 F. Supp. 3d 600 (M.D.N.C. 2016), *aff'd sub nom. Cooper v. Harris*, 581 U.S. 285 (2017). The court gave the legislature two weeks "to create a constitutional redistricting plan."

---

[4] The Mississippi Legislature enacted a new plan, which the plaintiffs accepted. *Thomas v. Bryant*, No. 3:18-cv-441 (S.D. Miss. Apr. 4, 2019), ECF 99.

*Id.* at 627. The legislature redrew the congressional districts by enacting Senate Bill 2, a regular bill amending Section 163-201(a) of North Carolina's statutes, effective immediately.[5] N.C. Sess. Law 2016-1. The state promptly notified the court of the new plan, the court set a briefing schedule, and plaintiffs filed objections. *Harris v. McCrory*, No. 1:13-cv-949 (M.D.N.C.), ECF 149, 153, 157. The Court noted that it retained jurisdiction over "the remedial phase of this case," noted "we have a responsibility to review the plan as a whole," and asserted "it must determine whether the legislative remedy enacted at its behest is in fact a lawful substitute for the original unconstitutional plan. Accordingly, the Court can, and will, consider the plaintiffs' objections to the entire Contingent Congressional Plan." *Harris v. McCrory*, No. 1:13-cv-949, 2016 WL 3129213, at *2 (M.D.N.C. June 2, 2016). The court denied the plaintiffs' objections, and the plaintiffs appealed. Crucially, the Supreme Court affirmed—it did not reverse; it did not vacate; it did not suggest in any way that the district court lacked jurisdiction to "review the plan as a whole" and "determine whether the legislative remedy enacted at its behest is in fact a lawful substitute for the original unconstitutional plan." *Harris v. Cooper*, 138 S. Ct. 2711 (2018).

A different case, the same process: *Johnson v. Mortham*. A three-judge district court enjoined Florida's 1992 congressional map as an unconstitutional racial gerrymander. 926 F. Supp. 1460, 1495 (N.D. Fla. 1996). The court "directed" the legislature "to adopt a new congressional redistricting plan that remedies the constitutional infirmities" and "submit such plan" to the Court within 35 days. *Id.* The legislature enacted House Bill 2745 as an ordinary piece of legislation,

---

[5] The bill provided that the new plan would sunset if the Supreme Court stayed or reversed the district court's injunction of the original 2011 plan. N.C. Sess. Law 2016-1 § 2. Similarly, the City of Miami maintains its current appeal of this Court's initial preliminary injunction, and would be free to reenact the 2022 Enjoined Plan if the Court of Appeals reverses this Court's injunction.

establishing the state's congressional districts and fully replacing the enjoined 1992 plan. Laws of Fla. ch. 96-193. After Governor Chiles signed the plan, the state submitted it to the court, which "heard comments from both the plaintiffs and defendants and defendant-intervenors" and approved the plan. *Johnson*, 1996 WL 297280, at *1.

Take another case: in *James v. City of Sarasota*, Black voters challenged the at-large election system for the Sarasota City Commission. 611 F. Supp. at 26. The city admitted liability on the eve of trial, and the court gave the city an opportunity to submit a proposed remedy. *Id.* at 27. The city held a referendum on its proposed remedy, and the voters approved it as an amendment to the city charter, purporting to permanently change their city's election system pursuant to Florida's Municipal Home Rule Powers Act. *Id.* & n.2. The court, acknowledging that it "must now determine whether that plan violates section 2 of the Voting Rights [A]ct," held a two-day evidentiary hearing, and approved the plan. *Id.*

One final case, from this Court: in *Sobel v. Adams*, a three-judge panel found the apportionment of the Florida House and Senate invidiously discriminatory in violation of the Fourteenth Amendment's one person, one vote principle. 208 F. Supp. 316, 317 (S.D. Fla. 1962). The Legislature passed Senate Bill 10-X and the governor signed it, exercising state constitutional authority recognized by the Florida Supreme Court. *Sobel v. Adams*, 214 F. Supp. 811, 812 (S.D. Fla. 1963) (citing *In re Advisory Op. to Governor*, 150 So. 2d 721 (Fla. 1963)). This Court approved the Legislature's submission, but the U.S. Supreme Court reversed, rejecting the Legislature's new plan in light of *Reynolds v. Sims*, 377 U.S. 533 (1964). *Swann v. Adams*, 378 U.S. 553 (1964). On remand, this Court ordered its own apportionment plan. *Swann v. Adams*, 263 F. Supp. 225 (S.D. Fla. 1967).

Because the Court must evaluate Res. 23-271 as a remedial map, Plaintiffs' First Amended

Complaint remains operative, and the Court should deny the City's motion to dismiss it as moot.

\* \* \*

There is another, independent reason the Court should deny the City's motion to dismiss: Plaintiffs plead damages. *See* ECF 23 at 55, ¶ D (requesting nominal damages). Plaintiffs also request an award of attorneys' fees and costs. *See id.* ¶¶ E, F.

Nominal damages redress violations of constitutional rights. *Uzuegbunam*, 141 S. Ct. at 796. Even were the Court to approve Res. 23-271, Plaintiffs would still be entitled to a full trial on the merits of their damages claim. Further, Plaintiffs' victory at trial (in addition to their already consummated victory at the preliminary injunction stage) would entitle Plaintiffs to have their claim for attorneys' fees fully adjudicated. *Common Cause Ga. v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009).

Thus, as a final basis to deny the City's motion to dismiss, there are still pending claims for relief. Accordingly, it is not "impossible for [the] court to grant any effectual relief whatever to the prevailing party." *Morrisey*, 59 F.4th at 1139.

## CONCLUSION

Over the past sixty years, the federal judiciary has charted a well-trod path in redistricting cases such as this one. That course ensures voters' rights are protected, court orders are followed, and justice is done. This Court should not accept the City's invitation to stray from that path. For the reasons explained above, and for the reasons explained in Plaintiffs' opposition to the City's proposed interim remedial plan (ECF 83), the Court should deny the City's latest motion to dismiss.

Respectfully submitted this 10th day of July, 2023,

 /s/ *Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Neil A. Steiner*
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com

Christopher J. Merken*
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2380
christopher.merken@dechert.com

*\* Admitted pro hac vice*

*Counsel for Plaintiffs*