UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS,

        Plaintiffs,

v.

CITY OF MIAMI,

        Defendant.

_____/

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AS MOOT

Pursuant to S.D. Local Rule 7.1 and this Court's Order Fed. R. Civ. P. 12(b)(1) and (6), Defendant, City of Miami (the "City"), submits the Reply in Support of Defendant's Motion to Dismiss the First Amended Complaint as Moot [DE 80] and in reply to Plaintiffs' Response Memorandum of Law [DE 84].

Defendant does not argue "that simply passing a new map" moots this case or that this Court lacks the authority to entertain challenges to Resolution 23-271; however, Defendant emphatically disagrees with Plaintiffs' apparent contentions that the City's new redistricting plan does not come before the Court cloaked with a presumption of good faith, that it requires any court approval before it may be given effect, or that Plaintiffs' claims may not be dismissed.

Plaintiffs' response wholly ignores the framework for analyzing mootness involving constitutional challenges to government actions as well as *Abbott v. Perez*, 138 S. Ct. 2305

(2018), cited in Defendant's Motion to Dismiss.  That case is notable for one simple reason: the Supreme Court unequivocally held that legislative enactments are still cloaked with the presumption of good faith *even after a finding of past discrimination*.  *Abbott*, 138 S.Ct at 2324. Yet, Plaintiffs scoff at the idea that the City should be afforded any good faith.  DE 84, p. 7 ("It thus makes no sense to cite caselaw, for example, about presumptions of good faith for government actors . . . .").  But *Abbott* is also notable for the procedural history.  Following the enactment of a new plan enacted in 2013 after judgment was entered against the State of Texas, the Texas trial court refused to dismiss the case as moot, *but permitted Plaintiffs to amend their complaint to challenge the new plan*.  *Abbot*, 138 S.Ct at 2317.  *Abbott* expressly rejects the notion that any burden is shifted to the City to demonstrate that its new redistricting plan is constitutional.  *Id*. at 2324.  "Whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the State."  Id.  Findings of past discrimination do not change that, even after a map is preliminarily enjoined.

The Court's issuance of a preliminary injunction is not a judicial finding on par with a judgment because it is merely based upon a *likelihood* of success on the merits.  *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270-71 (11th Cir. 2020) (discussing the standard for granting a preliminary injunction).  Moreover, preliminary injunctions may be based on evidence that is otherwise inadmissible at trial.  *See State of Fla. v. Dep't of Health & Hum. Servs*., 19 F.4th 1271, 1313 (11th Cir. 2021); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc*., 51 F.3d 982, 985 (11th Cir. 1995).  And in fact, the Report and Recommendations relied on such inadmissible hearsay evidence such as Plaintiffs' expert reports and affidavits in granting the injunction.  *See* DE 52.  None of those witnesses testified live or have ever been deposed.  The nature of a preliminary injunction is fundamentally different than a judgment, whether in summary form or

after a trial. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 396 (1981) ("where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy"). The notion that Plaintiffs no longer bear the burden of proving every aspect of their claims after the issuance of a preliminary injunction flies in the face of *Abbott*, which counsels the good faith presumption and burden of proof are not shifted, even after judgments with evidentiary findings based upon admissible evidence that demonstrate invidious intent.

While Plaintiffs reference their Objections, DE 83, they have failed to amend their complaint which serves as the basis for the present action.[1] Their complaints—both initial and amended—rested exclusively not just on allegations specific to Resolution 22-131, but also to the proceedings involved in enacting that very plan. Both the Complaint (DE 1), the First Amended Complaint (DE 23), the Report and Recommendations (DE 52), and this Court's Order adopting the Report and Recommendations (DE 60) prominently quoted statements of several commissioners made in public commission meetings about their intention to maintain three Hispanic districts, one Black district, and one Anglo district. These statements of intent on the legislative record were the core of Plaintiffs' claims and the primary reason the Court granted the preliminary injunction based upon the Commission's "present legislative intent." DE 60, p. 16. (emphasis in original). Plaintiffs fail to point to any such legislative statements now.

Instead, Plaintiffs essentially argue intent pointing to effect: there are three Hispanic districts and a black district in the City's new plan. This should be a surprise to no one, especially Plaintiffs, since every single one of their exemplar plans has three Hispanic districts

---

[1] Likewise, Defendant incorporates its response to Plaintiffs' Objections as part of its Reply.

and a Black district, a district that no one disputes is required by the VRA.  DE 82-12 p.16 (Abott report showing demographics of Plaintiffs' plans).  But Plaintiffs have not plead the City's new redistricting plan has a discriminatory effect.  Nor could they given their own map drawing results.

Plaintiffs assert "the vast body of gerrymandering case law" demands this Court must review the City's map for constitutional compliance. Defendant does not question this Court's authority to pass on constitutional questions placed before it, but the "vast majority" of cases cited by Plaintiffs wherein trial courts conducted reviews of remedial plans predate *Abbott.* The three-judge panel in *Covington v. North Carolina*, 283 F. Supp. 3d 410 (M.D.N.C.), *aff'd in part, rev'd in part,* 201 L. Ed. 2d 993, 138 S. Ct. 2548 (2018), issued their order on January 21, 2018, almost five months before *Abbot* was issued.  *See also Harris v. McCrory,* 2016 WL 3129213 (M.D.N.C. June 2, 2016) *aff'd sub nom. Harris v. Cooper,* 138 S. Ct. 2711 (2018); *Johnson v. Mortham,* 1996 WL 297280 (N.D. Fla. May 31, 1996); *James v. City of Sarasota,* 611 F. Supp. 25 (M.D. Fla. 1985); *Lipscomb v. Wise,* 399 F. Supp. 782, 792 (N.D. Tex. 1975) *rev'd*, 551 F.2d 1043 (5th Cir. 1977) *rev'd*, 437 U.S. 535 (1978); *Sobel v. Adams,* 214 F. Supp. 811 (S.D. Fla. 1963), *rev'd sub nom. Swann v. Adams,* 378 U.S. 553 (1964) (rejecting map).

Only two cases cited by Plaintiffs for this proposition post-date the issuance of *Abbott*.  In *Whitest v. Crisp Cnty. Sch. Dist.,* 601 F. Supp. 3d 1338 (M.D. Ga. 2022), following the school district's confession of liability, the trial court adopted a new plan that had been proposed by the school district and adopted by the state legislature.  An important qualification, however, was that passage of the new plan would not become fully effective until a 1956 local amendment to the Georgia Constitution was rescinded.  *Id*., at 1342. To give full effect, it was necessary for the court to issue an injunction requiring the use of the plan until the 1956 amendment was

rescinded, and the plan became fully effective.  *Id.*, at 1348.  In stark contrast, the City's new plan is fully effective now.

The other case cited by Plaintiffs, *Thomas v. Bryant,* 919 F.3d 298 (5th Cir. 2019), also does not support Plaintiffs' position. In issuing a stay of the trial court's order directing the use of a plaintiff's expert's map, the Fifth Circuit justified their action "based on the need to give the legislature and Governor an opportunity to remedy the Section 2 violation" and acknowledged what was essentially a truism: the lower court "has jurisdiction to consider any challenges to the adequacy of a legislative remedy."  Nothing more.  And none of the cases stand for the proposition the legislative body was somehow impotent to pass new laws absent federal approval before the laws were given effect.  If Plaintiffs wish to challenge the new redistricting plan that was passed with a new record, they are free to do so, but they should have to re-plead such challenges based upon the new law and new claims against the law.   For example, with the new plan, it is unclear whether the individual Plaintiffs reside in all challenged districts.   At this juncture, fundamental issues of standing and jurisdiction are vague, ambiguous, and lack the definition that an amended pleading would provide.

Finally, Plaintiffs also claim that this Court should deny the Motion to Dismiss because they seek nominal damages and attorney fees.  Neither presents a legitimate basis for continuing this case.  Plaintiffs' claim that "[n]ominal damages redress violations of constitutional rights" is incomplete.   To be more precise, "nominal damages provide the necessary redress *for a completed violation of a legal right*." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (emphasis added) ("Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury.").  But Plaintiffs have not been subjected to a "past, completed violation."  They are not being subjected to elections under Resolution 22-

131—which their Amended Complaint seek redress against—because that plan was fully replaced with Resolution 23-271[2]. And *Uzuegbunam* makes clear: attorney fees are not damages for redress, but merely a byproduct of a suit that succeeded. *See* 141 S. Ct. at 801. Plaintiffs' claim for attorney fees cannot serve as a basis for continuing litigation.

WHEREFORE, Defendant respectfully requests that the Court dismiss Plaintiffs' Amended Complaint as moot.

Respectfully submitted,

GRAYROBINSON, P.A.
301 S. Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile:  (850) 577-3311

By:  */s/ George T. Levesque*
GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Email: Jason.Unger@gray-robinson.com
Florida Bar No. 991562
George T. Levesque
Florida Bar No. 555541
Email: George.Levesque@gray-robinson
Andy Bardos
Florida Bar No. 822671
Email: Andy.Bardos@gray-robinson.com

Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358

---

[2] Plaintiffs suggest that Defendant maintains some ability to revert to the prior plan because it has maintained its appeal.  Defendant has sought dismissal of their appeal.  *See* Motion to Voluntarily Dismiss Appeal, DE 14, *GRACE, Inc., et al v. City of Miami*, case no. 23-11854-D, United States Circuit Court, Eleventh Circuit.

Email: Marlene.Quintana@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida  33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887

CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
Telephone: (305) 416-1800
Facsimile:  (305) 416-1801
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: ___*/s/ George T. Levesque*_____
George T. Levesque