**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court upon Defendant City of Miami's ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint as Moot. ("Mot.") (ECF No. 80). Plaintiffs filed a response ("Resp.") (ECF No. 84), and Defendant filed a reply.[1] ("Reply") (ECF No. 85). The Motion is now ripe for review.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The Court presumes the Parties' familiarity with the circumstances giving rise to the instant Action, and thus, only recites the relevant factual background.

On March 24, 2022, Defendant adopted Resolution 22-131 (the "Enacted Plan") which separated Miami into five separate commission districts. Plaintiffs subsequently filed the instant Action alleging that the Enacted Plan improperly considered race in the design of each of the five commission districts in violation of the Equal Protection Clause of the United States Constitution. Then, Plaintiffs filed an Expedited Motion for Preliminary Injunction to enjoin Defendant from

---

[1] Plaintiffs in this Action are Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras Steven Miro, GRACE, Inc., Engage Miami, Inc., South Dade Branch of the NAACP and Miami-Dade Branch of the NAACP (collectively, "Plaintiffs").

using the Enacted Plan in the upcoming election cycle. *See* (ECF No. 26). United States Magistrate Judge Lauren F. Louis issued a Report and Recommendations ("R&R") recommending that the Court grant the preliminary injunction. *See* (ECF No. 52). In turn, the Court adopted the R&R in full, thereby enjoining Defendant's use of the Enacted Plan. *See* (ECF No. 60).

Following the issuance of the preliminary injunction, the Court issued a Scheduling Order directing the Parties to attend mediation and establishing a procedure for how the Parties were to proceed if mediation proved unsuccessful. *See* (ECF No. 69). According to the Scheduling Order, should the Parties fail to reach an agreement during mediation, Defendant was required to enact and file its own proposed interim remedial map by June 30, 2023, and Plaintiffs would be entitled to file objections. *See id.*

Though mediation was unsuccessful, Defendant timely notified the Court that it had passed a new redistricting plan, Resolution 23-271 (the "Remedial Plan"), to replace the Enacted Plan. *See* (ECF No. 77). Plaintiffs filed Objections to the Remedial Plan shortly thereafter, *see* (ECF No. 83), and the Court has yet to rule on whether the new map redresses the unconstitutional racial gerrymandering that Plaintiffs proved was substantially likely to exist in the Enacted Plan. Nevertheless, Defendant subsequently filed the instant Motion arguing that the passage of the Remedial Plan renders the instant Action moot, and consequently, that the Court has no power to evaluate the Remedial Plan. *See generally* Mot. The Court addresses the mootness argument below.

### II. LEGAL STANDARD

"The Constitution limits federal courts to deciding 'cases' and 'controversies.'" *Fed. Elections Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022) (citation omitted). "Among other things, that limitation requires a plaintiff to have standing." *Id.* To establish Article III standing, a plaintiff

must show (1) an injury in fact; (2) the injury must be fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by the requested relief. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Further, because Article III of the United States Constitution limits a federal court's jurisdiction to actual cases and controversies, claims must remain "live" throughout their tenure in litigation to avoid being dismissed as moot. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974); *see also U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) ("In addition, the controversy must be 'live' throughout the case; federal jurisdiction is not created by a previously existing dispute."). A claim is mooted "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372 (11th Cir. 2012) (quotations omitted). There is no live controversy "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 307 (2012).

### III.  DISCUSSION

Defendant argues that because it passed the Remedial Plan as a wholesale replacement of the Enacted Plan, the instant Action is no longer justiciable and there is no longer any dispute. *See generally* Mot. Plaintiffs respond that in the redistricting context, the Court has a continuing responsibility to ensure that a remedial map does not retain the unconstitutional aspects of the prior enjoined map. *See generally* Resp. According to Plaintiffs, the Court's obligation to engage in this continuing review stems from the Court's power to fashion an appropriate remedy. *See id.* at 4–5. For the reasons discussed below, the Court agrees with Plaintiffs.

   i.   *The Action is not Moot*

To determine whether the instant Action is moot, the Court need not look much further than well-established Supreme Court precedent. "The Supreme Court long has held that when a federal court concludes that a state districting plan violates the Constitution, the appropriate state redistricting body should have the first opportunity to enact a plan remedying the constitutional violation." *Covington v. N.C.* (*Covington II*), 283 F. Supp. 3d 410, 424 (M.D. Fla. 2018) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)) *aff'd in relevant part*, 138 S. Ct. 2548 (2018). Crucially, however, after a court has found a substantial likelihood of unconstitutional race-based discrimination, the district court must ensure that any remedial plan "so far as possible eliminate[s] the discriminatory effects of the past as well as bar[s] like discrimination in the future." *La v. United States*, 380 U.S. 145, 154 (1965). If the legislature fails to "enact a constitutionally acceptable" remedial plan, then "the responsibility falls on the District Court." *Chapman v. Meier*, 420 U.S. 1, 27 (1975); *see also Covington II*, 283 F. Supp. 3d at 424.

But, according to Defendant, not only has the Court been stripped of its power to ensure that the Remedial Plan is constitutionally acceptable ahead of the upcoming election cycle, but also, the passage of the Remedial Plan moots the instant Action entirely. *See generally* Mot. Simply put, Defendant argues that the Court is foreclosed from evaluating the constitutionality of the Remedial Plan because it "wholly replaces the [Enacted] Plan," and Plaintiffs' Amended Complaint focuses solely on alleged unconstitutional defects of the Enacted Plan. Resp. at 6

Defendant's argument is unavailing. In fact, the Supreme Court has addressed and rejected a mootness argument that is almost identical to Defendant's. *See N.C. v. Covington* (*Covington III*), 138 S. Ct. 2548 (2018) (*per curiam*). As is the case here, the defendants in *Covington III* argued that "plaintiffs' racial gerrymandering claims ceased to exist when the [legislature] enacted

4

remedial plans for the State House and State Senate and repealed the old plans." *Id.* at 2552. The Court flatly rejected the argument. According to the Court, "the plaintiffs' claims that they were organized into legislative districts on the basis of their race did not become moot simply because the General Assembly drew new district lines around them. To the contrary, [the plaintiffs] argued in the District Court that some of the new districts were mere continuations of the old, gerrymandered districts." *Id.* at 2553. The Court further elaborated, "[b]ecause the plaintiffs asserted that they remained segregated on the basis of race, their claims remained the subject of a live dispute, and the District Court properly retained jurisdiction."[2] *Id.*

Equally as illustrative is the Middle District of Florida's consideration of how to approach the evaluation of a remedial map when a court has found the original map substantially likely to be unconstitutional. *Jacksonville Branch of NAACP v. City of Jacksonville* (*Jacksonville II*), 2022 WL 17751416, at *11 (M.D. Fla. Dec. 19, 2022). There, the court explained that when "the legislative body enacts a new redistricting plan in an effort to remedy the constitutional violation, this plan 'will then be the governing law unless it, too, is challenged and found to violate the constitution.'" *See id.* (quoting *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978)). However, in concluding that a court has a continuing obligation to ensure the new map passed constitutional muster, the *Jacksonville II* Court explained that it had the "duty to ensure that any remedy 'so far as possible eliminate[s] the discriminatory effects of the past as well as bar[s] like discrimination in the future.'" *See id.* (quoting *Covington II*, 283 F. Supp. 3d at 424). With this in mind, the *Jacksonville II* Court undertook an analysis of whether the remedial plan, which was passed by the

---

[2] Plaintiffs assert that under the Remedial Plan, they remain segregated on the basis of race. *See* (ECF No. 83 at 22) ("A district-by-district analysis reveals that the Commission perpetuated, rather than remedied, the [Enacted Plan's] racial gerrymandering.").

Jacksonville City Council and signed by the Mayor, was constitutionally adequate. *See id.* at *1, *17. Ultimately, the court concluded that it was not. *See id.* at *17.

Relying on Supreme Court precedent and informed by the examples of *Covington III* and *Jacksonville II*, the Court is satisfied that the passage of the Remedial Map has not mooted the instant Action. As in *Covington III* and *Jacksonville II*, Plaintiffs still maintain that they are subject to unconstitutional racial gerrymandering under the Remedial Plan, and thus, the constitutionality of the Remedial Plan is still a live dispute. *See generally* (ECF No. 83). Therefore, in accord with nearly sixty years of Supreme Court precedent, the Court finds that it has a continuing duty to ensure the Remedial Plan does not suffer from the same constitutional defects that the Court found were substantially likely to exist in the Enacted Plan.

ii. *Abbott v. Perez Does Not Alter the Framework for Analyzing Mootness*

Though the Supreme Court and other cases within the Eleventh Circuit undermine Defendant's mootness argument, Defendant argues that *Abbott v. Perez*, 138 S. Ct. 2305 (2018) alters the framework by which a court must analyze mootness in the redistricting context. *See generally* Reply. Specifically, Defendant argues that in *Abbott*, the Supreme Court explicitly held that "legislative enactments are still cloaked with the presumption of good faith *even after a finding of past discrimination*." *See id.* at 2 (emphasis in original). According to Defendant, "the burden of proof lies with [Plaintiffs], not the State" to demonstrate that the Remedial Plan is unconstitutional, despite the Court's prior finding that the Enacted Plan was substantially likely to be racially gerrymandered in violation of the Fourteenth Amendment. *Id.* Thus, in Defendant's view, the Court does not have a continuing duty to ensure the Remedial Plan is constitutional or that it remedies the probable defects in the Enacted Plan. *See id.* Rather, Defendant asserts that *Abbott* mandates that the Remedial Plan enjoys a presumption of good faith that cannot be

challenged unless Plaintiffs once again amend their Complaint, and because Plaintiffs have not, the instant Action is moot. *See id.*

In essence, Defendant reads *Abbott* to uproot decades of well-established precedent regarding how a court must analyze mootness in the redistricting context. The Court finds that it does not. In support of this finding, some discussion of *Abbott* is warranted.

In *Abbott*, the Texas legislature adopted a new congressional districting plan and new districting maps for the two houses of the state legislature in 2011 ("2011 Plan"). *Id.* at 2314. Upon the passage of the new districting plans, several plaintiff groups sued Texas in the United States District Court for the Western District of Texas ("Texas Court"), arguing the maps were unconstitutional racial gerrymanders. *Id.* at 2315. Finding itself tied up in litigation, Texas needed usable plans for rapidly approaching primaries, and thus, the district court drew interim plans for that purpose. *Id.* While drawing the maps, the "majority of the Texas court thought that it was not 'required to give any deference to the Legislature's enacted plan,'" and instead, "based its plans on what it called 'neutral principles that advance the interest of the collective public good.'" *Id.* at 2316 (quoting *Perez v. Perry*, 835 F. Supp. 2d 209, 212 (W.D. Tex. 2011)). Texas challenged the court-ordered plans and the Supreme Court reversed, holding the "Texas Court should have respected the legislative judgments in the 2011 plans to the extent allowed by the Constitution and the VRA." *Id.* (quoting *Perry v. Perez*, 565 U.S. 388, 392–99 (2012) (*per curiam*)).

On remand, the Texas Court was instructed to review the 2011 Plan, but only to change the plan with proof "that those changes were actually required by either the Constitution or the VRA." *Id.* Following an additional briefing period and two days of argument, the Texas Court found multiple districts required changing, and ultimately, drew a new plan that "departed significantly from the State's 2011 plan." *Id.* Shortly thereafter, the Texas legislature formally repealed the

7

2011 Plan and "enacted the Texas court's interim plans with just a few minor changes. The federal congressional plan was not altered at all, and only small modifications were made to the plan for the Texas House" ("2013 Plan"). *Id.* Ultimately, the Texas Court ruled on the constitutionality of both the 2011 Plan and 2013 Plan, finding portions of each to be unconstitutional gerrymanders. *Id.* at 2318.

Specifically, the Texas Court found that the 2013 Plan suffered from the same problematic intent to racially gerrymander as was present in the 2011 Plan. *Perez v. Abbott*, 274 F. Supp. 3d 645, 652 (W.D. Tex. 2017). The Texas Court explained that the 2013 Legislature failed to "engage in a deliberative process to ensure the 2013 plans cured any taint from the 2011 plan," and that there was "no indication that the Legislature looked to see whether any discriminatory taint remained in the [2013 Plan]" from the 2011 Plan. *Perez v. Abbott*, 267 F. Supp. 3d 750, 757 (W.D. Tex. 2017); *see also Perez*, 274 F. Supp. 3d at 649. Consequently, the Texas Court ordered the parties to proceed with a hearing where the Parties would need to discuss potential remedial plans, which the Supreme Court then stayed. *Abbott*, 138 S. Ct. at 2318–19.

The Supreme Court thus addressed the question of whether the Texas Court improperly required the State to demonstrate that the 2013 Legislature "purged the 'taint' that the [Texas] court attributed to the defunct and never-used plans enacted by a prior legislature in 2011." *Id.* at 2324. Ultimately, the Supreme Court held that "when a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the state." *Id.* In so holding, the Supreme Court found that "even a finding of past discrimination" would not shift the burden to the State to prove that the challenged plan was not unconstitutional. *See id.* at 2324–25. What matters, according to the Supreme Court, was "the intent of the 2013 Legislature. And it was the plaintiffs' burden to overcome the presumption of legislative good faith." *Id.* Thus,

*Abbott* makes clear that when challenging a redistricting map, a court must presume the good faith of the enacting legislature.

In the instant Action, Defendant interprets the holding in *Abbott* to upend the mootness doctrine as applied to redistricting cases. Defendant argues that in light of *Abbott*, Defendant is entitled to the legislative presumption of good faith, and as such, "[i]f Plaintiffs wish to challenge the new redistricting plan that was passed with a new record, they are free to do so, but they should have to re-plead such challenges." Reply at 5. Put differently, Defendant makes an unwarranted logical leap—because legislatures are entitled to good faith when enacting maps, necessarily then, the Court is unable to evaluate the constitutionality of the Remedial Plan following the injunction of the Enacted Plan. *See id.* At no point does the Defendant explain, however, why the presumption of legislative good faith means that courts must now shirk their duty to ensure remedial plans do not violate the constitution.

For that reason, *Abbott* is also important for what it does not hold. Nowhere in the decision does *Abbott* hold that a court does not have "its own duty to cure illegally gerrymandered districts through an orderly process in advance of elections." *Covington III*, 138 S. Ct. at 2554. Nor does *Abbott* hold that the legislative presumption of good faith mandates a finding that the passage of a remedial map renders the controversy moot. *See Abbott*, 138 S. Ct. at 2326–27 (addressing whether the 2013 Plan was constitutional rather than discussing whether the passage of the 2013 Plan results in the mootness of the 2011 Plan). Instead, *Abbott's* holding is rather simple: when assessing the constitutionality of an enacted redistricting plan, the court must presume the good faith of the legislature. *See id.* at 2324

Therefore, rather than reading *Abbott* as fundamentally altering the mootness doctrine, the Court will read *Abbott* in tandem with the decades of mootness precedent in redistricting cases.

Because Plaintiffs contest the constitutionality of the Remedial Plan, the Court will ensure that the Remedial Plan does not suffer from the same constitutional infirmities as the Enacted Plan. In doing so, the Court will, as it is required to, afford a presumption of good faith to the enacting legislature. That presumption of good faith does not render the controversy moot. Accordingly, the Court's evaluation of the Remedial Plan is forthcoming.

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion (ECF No. 80) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this  18th   day of July 2023.

                                    K. MICHAEL MOORE
                                    UNITED STATES DISTRICT JUDGE

c: All counsel of record