# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12472

_____

GRACE, INC.,
ENGAGE MIAMI, INC.,
SOUTH DADE BRANCH OF THE NAACP,
MIAMI-DADE BRANCH OF THE NAACP,
CLARICE COOPER, et al.,

                                          Plaintiffs-Appellees,

*versus*

CITY OF MIAMI,

                                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                  Order of the Court                  23-12472

D.C. Docket No. 1:22-cv-24066-KMM

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

BY THE COURT:

       A little more than three months before City of Miami voters go to the polls to elect commissioners, the district court adopted the plaintiffs' remedial plan to redraw the borders for the City's five single-member districts and ordered the City to implement the remedial plan in lieu of the City's redistricting legislation. Yet the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020); *see also League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) ("[F]ederal district courts ordinarily should not enjoin state election laws in the period close to an election." (quotation omitted)); *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020) ("The Supreme Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." (quotation omitted)). This is "called the *Purcell* principle," *League of Women Voters*, 32 F.4th at 1370, which comes from the Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006).[1]

---

[1] In *Purcell*, the Supreme Court considered "an application to enjoin operation of voter identification procedures just weeks before an election" in Arizona and held that the court of appeals "was required to weigh, in addition to the

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 3 of 17
USCA11 Case: 23-12472   Document: 25   Date Filed: 08/04/2023   Page: 3 of 17

23-12472               Order of the Court                3

"That important principle of judicial restraint not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the [local] interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. "When an election is close at hand, the rules of the road should be clear and settled." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanugh, J., concurring). That's because running an election "is a complicated endeavor." *Id*. "Lawmakers initially must make a host of difficult decisions about how best to structure and conduct the election." *Id*. "[V]olunteers must participate in a massive coordinated effort to implement the lawmakers' policy choices on the ground before and during the election, and again in counting the votes afterwards." *Id*. "And at every step, state and local officials must communicate to voters how, when, and where they may cast their ballots through in-person voting on election day, absentee voting, or early voting." *Id*.

"[E]ven seemingly innocuous late-in-the-day judicial alterations to [local] election laws can interfere with administration of an

---

harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." 549 U.S. at 4.

Case 1:22-cv-24066-KMM Document 104-1 Entered on FLSD Docket 08/25/2023 Page 4 of 17
USCA11 Case: 23-12472 Document: 25 Date Filed: 08/04/2023 Page: 4 of 17

4                       Order of the Court                       23-12472

election and cause unanticipated consequences." *League of Women Voters*, 32 F.4th at 1371 (quotation omitted). "If a court alters election laws near an election, election administrators must first understand the court's injunction, then devise plans to implement that late-breaking injunction, and then determine as necessary how best to inform voters, as well as state and local election officials and volunteers, about those last-minute changes." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring). "Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). The *Purcell* "principle also discourages last-minute litigation and instead encourages litigants to bring any substantial challenges to election rules ahead of time, in the ordinary litigation process." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring).

For these reasons, and others, "when a lower court intervenes and alters the election rules so close to the election date, our precedents indicate that this [c]ourt, as appropriate, should correct that error." *Republican Nat'l Comm.*, 140 S. Ct. at 1207; *see also League of Women Voters*, 32 F.4th at 1371 ("[I]f a district court violates that principle, the appellate court should stay the injunction, often (as it could not do under the traditional test) while expressing no opinion on the merits." (cleaned up)). "[I]t would be preferable if federal district courts did not contravene the *Purcell* principle by rewriting [local] election laws close to an election. But when they

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 5 of 17
USCA11 Case: 23-12472   Document: 25   Date Filed: 08/04/2023   Page: 5 of 17

23-12472                Order of the Court                 5

do, appellate courts must step in." *Democratic Nat'l Comm.*, 141 S. Ct. at 32 (Kavanaugh, J., concurring). So we do.

Still, the plaintiffs may "overcome" the *Purcell* principle, "even with respect to an injunction issued close to an election," if they "establish[] at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff[s]; (ii) the plaintiff[s] would suffer irreparable harm absent the injunction; (iii) the plaintiff[s] have not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring); *accord League of Women Voters*, 32 F.4th at 1372–73 (applying Justice Kavanaugh's framework from *Merrill*). Here, the plaintiffs have not made that showing.

First, it is not clearcut that the remedial plan the district court adopted remediates the alleged racial sorting in the City's redistricting legislation. Comparing the maps, the district court's remedial plan looks a lot like the City's March 2022 redistricting plan the district court enjoined. And, comparing the population data, the racial makeup of the district court's remedial plan is close to the racial makeup of the City's June 2023 redistricting plan.

Second, as to undue delay, the City adopted its redistricting legislation in March 2022. The plaintiffs waited nine months—December 2022—to file their lawsuit. And then they waited two more months—February 2023—to move for a preliminary injunction. In their response to the stay motion, the plaintiffs do not explain the eleven month delay.

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 6 of 17
USCA11 Case: 23-12472   Document: 25   Date Filed: 08/04/2023   Page: 6 of 17

6                    Order of the Court                    23-12472

Finally, the plaintiffs argue that, under *Purcell*, the City did not submit any evidence to show the cost, confusion, or hardship of the district court's remedial plan. But the plaintiffs are confused about their burden under *Purcell*. Under the *Purcell* principle, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *New Ga. Project*, 976 F.3d at 1284 (quotation omitted). But *Purcell* is not "absolute." *League of Women Voters*, 32 F.4th at 1372. Instead, it "simply heightens the showing necessary for [the] plaintiff[s] to overcome the [s]tate's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring); *accord League of Women Voters*, 32 F.4th at 1372 ("[W]e agree with Justice Kavanaugh that *Purcell* only (but significantly) heightens the standard that a plaintiff must meet to obtain injunctive relief that will upset a state's interest in running its elections without judicial interference." (footnote and quotation omitted)).

To "overcome" the *Purcell* principle "with respect to an injunction issued close to an election," the "plaintiff[s] [must] establish[] . . . the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Because of the City's "extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws," the plaintiffs must make the showing that the remedial plan is feasible without significant costs, confusion, or hardship.

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 7 of 17
USCA11 Case: 23-12472    Document: 25    Date Filed: 08/04/2023    Page: 7 of 17

23-12472                Order of the Court                                7

They have not made that showing. At best, the plaintiffs argue that there will be no chaos in election administration because the elections' supervisor said she could implement the new map by August 1, 2023. But the absence of chaos is hardly acceptable under *Purcell*. This says nothing about the significant costs, confusion, and hardships on candidates, voters, and the public. Even if the elections' supervisor can pull off the election (although the plaintiffs never mention the significant cost of pulling it off), the district court's remedial plan still imposes significant costs on candidates, voters, and the public. The district court's remedial plan, for example, splits some existing precincts between districts that are up for election (not all the districts are up for election in November) and between one district that is up for election and one that is not. The result, therefore, of implementing the district court's remedial plan could very likely be voter confusion: voters who were under the impression that they would be casting their ballots in November for seats in their district will no longer be doing so, and vice versa. Because "the plaintiffs have not established that the changes are feasible without significant cost, confusion, or hardship," they "cannot overcome even a more relaxed version of the *Purcell* principle." *Id.* at 881–82.

The plaintiffs push back that *Purcell* is inapplicable for two reasons. First, they contend that the City cannot rely on the *Purcell* principle "in light of [its] previous representations to the district court that the schedule on which the district court proceeded was sufficient to enable effectual relief." *See Rose v. Raffensperger*, 143 S. Ct. 58, 59 (2022). But the City never made that representation

Case 1:22-cv-24066-KMM Document 104-1 Entered on FLSD Docket 08/25/2023 Page 8 of 17
USCA11 Case: 23-12472 Document: 25 Date Filed: 08/04/2023 Page: 8 of 17

8                        Order of the Court                        23-12472

to the district court. Here are the two parts of the record that the plaintiffs cite in support. In its response to the plaintiffs' motion for a preliminary injunction, the City wrote:

> Plaintiffs' Motion seeking an injunction is either a year too late or 25 years too late. The redistricting occurred in March of 2022. This case was filed nine months later, in December. Plaintiffs then waited two more months before filing the Motion. A special election has already occurred last month, and another election is coming in November. Plaintiff[s] admit that the new districts would have to be set by August 1. Even if there is a ruling on the Motion, new districts would have to be drawn, face inevitable challenges by Plaintiffs, and be ruled on by this Court, and this does not even factor in any appellate remedies. Plaintiffs make no excuse and give no explanation for their delay.

(citations omitted). This is not a representation that the district court's schedule was sufficient to enable effectual relief. On the contrary, the City argued that, because of the plaintiffs' delay in bringing their complaint to court, there was not enough time to get full review of any remedial plan.

The other part of the record is more of the same. At the hearing on the preliminary injunction motion, the City told the magistrate judge:

> But the question then becomes, without any alternative math, and given that we are down to the wire, and that by August 1st, according to the Division of

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 9 of 17
USCA11 Case: 23-12472   Document: 25   Date Filed: 08/04/2023   Page: 9 of 17

23-12472                Order of the Court                9

> Elections, according to the e-mail they put in, there needs to be a final, non-appealable map that's gonna happen by November, and we would be in a situation—and they did wait; they waited nearly a year for the preliminary injunction to bring it. You would be in a situation where we would essentially be drawing the same maps and they would be rejecting them conceivably and then coming back here to have rulings upon them.

The City was clear that the August 1, 2023 deadline worked only if the district court's remedial plan was "a final, non-appealable map." But the district court didn't adopt a "final, non-appealable map." It adopted a temporary remedial plan while it considered the merits of the plaintiffs' claim that the City's redistricting legislation violated the Fourteenth Amendment. And, now, the temporary remedial plan is on appeal. Again, the City did not represent that the district court's schedule was sufficient to enable effectual review in time for the November election.

Even the district court acknowledged that the City raised the *Purcell* problem throughout the litigation. As the district court explained in its order denying the City's stay motion:

> In the Motion, Defendant again raises the argument that *Purcell* applies to the instant Action. In fact, Defendant copies its argument regarding how *Purcell* should alter the standard by which the Court considers the instant Motion verbatim from its prior motion to stay. The Court has already addressed whether *Purcell* applies, not just once, but twice. It will not

Case 1:22-cv-24066-KMM   Document 104-1   Entered on FLSD Docket 08/25/2023   Page 10 of 17
USCA11 Case: 23-12472   Document: 25   Date Filed: 08/04/2023   Page: 10 of 17

10            Order of the Court            23-12472

>    evaluate the argument a third time. Therefore, finding *Purcell* inapplicable to the instant Action, the Court reviews the Motion under the traditional framework.

(footnotes and citations omitted). The district court understood that the City did not waive its *Purcell* argument.

Second, the plaintiffs contend that the *Purcell* principle doesn't apply because the district court's order adopting the remedial plan is the status quo and granting a stay (as the City asks us to do) would be tinkering with the election laws in violation of *Purcell*. But "[c]orrecting an erroneous lower court injunction of a [local] election law does not itself constitute a *Purcell* problem. Otherwise, appellate courts could never correct late-breaking lower court injunctions of a [local] election law. That would be absurd and is not the law." *Merrill*, 142 S. Ct. at 882 n.3 (Kavanaugh, J., concurring); *see also Democratic Nat'l Comm.*, 141 S. Ct. at 31–32 (Kavanaugh, J., concurring) ("Applicants retort that the *Purcell* principle precludes an appellate court . . . from overturning a district court's injunction of a state election rule in the period close to an election. That argument defies common sense and would turn *Purcell* on its head. Correcting an erroneous lower court injunction of a state election rule cannot itself constitute a *Purcell* problem. Otherwise, appellate courts could never correct a late-breaking lower court injunction of a state election rule. That obviously is not the law.").

The dissenting opinion gives its own reasons for why the *Purcell* principle does not apply. First, it says, the City isn't entitled

23-12472                Order of the Court                11

to a stay because it delayed seeking review of the district court's preliminary injunction. But the dissenting opinion misunderstands what the City is appealing. The City isn't seeking review of the preliminary injunction. The City is seeking review of the order, issued months later, adopting the plaintiffs' remedial plan. The remedial plan didn't exist before July 31, 2023. The district court adopted one that day. And, that same day, the City appealed and sought a stay pending appeal. There was no remedial plan for the City to appeal before July 31; the preliminary injunction didn't impose one. The City was the opposite of dilatory.

Second, the dissenting opinion contends that applying *Purcell* is perverse because it incentivizes the City to submit a constitutionally problematic map close to election time. But there's nothing perverse about what the City did here. The City approved its redistricting legislation in March 2022. The plaintiffs waited eleven months to seek an injunction. We're rubbing up against the election because of the plaintiffs' delay. The City, in contrast, approved its redistricting twenty months before voters are set to go to the polls in November 2023.

Third, the dissenting opinion relies on an unpublished, non-precedential order in *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-14260, 2023 WL 119425 (11th Cir. Jan. 6, 2023). Of course, that order is not binding on anyone, including us. But, to the extent it was, the *Jacksonville Branch* order didn't discuss or analyze the *Purcell* principle. Not one word about the application of

12                         Order of the Court                      23-12472

*Purcell* to these facts. It says nothing about the issues we address in this order.

★   ★   ★   ★

"[P]ractical considerations sometimes require courts to allow elections to proceed despite pending legal challenges." *Riley v. Kennedy*, 553 U.S. 406, 426 (2008). As in *Merrill*, this is one of those times. While we "express[] no opinion on the merits" of the plaintiffs' claims, *League of Women Voters*, 32 F.4th at 1371 (quotation omitted), the "*Purcell* principle requires that we stay" the district court's order adopting the remedial plan and ordering the City to implement it. *See Merrill*, 142 S. Ct. at 882 (Kavanaugh, J., concurring). We therefore grant the City's emergency motion to stay.

23-12472            WILSON, J., Dissenting            1

WILSON, Circuit Judge, Dissenting:

Today, the majority allows the City of Miami's November 2023 municipal elections to proceed under a map that the district court found "perpetuates the impact of the Enjoined Plan's unconstitutional racial gerrymandering." The majority faults the Plaintiffs for dilatory litigation and applies the *Purcell* principle[1] to stay the implementation of the district court's interim plan. Because any urgency in this appeal is attributable to the City's delay, I would not reward them with a stay. Accordingly, I respectfully dissent.

As the majority describes, in February of this year, the Plaintiffs sued the City of Miami to enjoin newly drawn district maps. In May, the district court preliminarily enjoined the City's use of those maps (the Enjoined Plan) and, in consultation with the parties, set a schedule for the creation of remedial maps. The City's officials stated that they needed new maps by no later than August 1, 2023. The City appealed the preliminary injunction and sought a stay pending appeal from the district court, which was denied. The City could have then petitioned this court for a stay, but it did not. Ultimately, it voluntarily dismissed that appeal.

Around the same time, the City adopted a new map (the Remedial Plan) and submitted it to the district court. Because of the preliminary injunction, the district court had to review the Remedial Plan before it could be used and had to ensure that it corrected

---

[1] *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam).

| 2 | W<small>ILSON</small>, J., Dissenting | 23-12472 |

the constitutional defects found in the Enjoined Plan. The district court compared the Enjoined Plan and the Remedial Plan, analyzing shifts in populations and geographic boundaries. Ultimately, as the factfinder, the district court concluded that there was both direct and circumstantial evidence that the Commissioners intended for the Remedial Plan to preserve the prior racial breakdown of the Enjoined Plan. Thus, the district court found that rather than remedying unconstitutional gerrymandering, the Remedial Plan perpetuated it. Because neither the Enjoined Plan nor the Remedial Plan passed constitutional muster, the district court ordered that an interim plan submitted by the Plaintiffs be used. The district court chose this plan because it respected the City's legitimate, non-race-based policy goals; complied with traditional redistricting criteria; and adhered to state and federal law.

In asking us to invoke *Purcell* to stay the district court's interim plan, the City is in effect asking us to overturn not just the district court's order denying approval of the Remedial Plan, but because the district court found the Remedial and Enjoined Plans to be substantially similar in constitutional inadequacies, the City essentially requests that we reverse the merits of the preliminary injunction entered in May of this year. Yet, the time for challenging that order has long since passed. The City was fully entitled to appeal that order—in fact, it did appeal initially, but then opted to voluntarily dismiss its case.

Thus, the emergency, time-constrained position in which we find ourselves is not the result of the "undue delay," Maj. Op.

Case 1:22-cv-24066-KMM Document 104-1 Entered on FLSD Docket 08/25/2023 Page 15 of 17
USCA11 Case: 23-12472 Document: 25 Date Filed: 08/04/2023 Page: 15 of 17

23-12472                WILSON, J., Dissenting                3

at 6, of the Plaintiffs in bringing this suit, but rather the City's choice to not pursue a stay at the preliminary injunction stage. The City seeks the extraordinary equitable remedy of a stay pending appeal. But, "a party's inequitable conduct can make equitable relief inappropriate." *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022). Such is the case here. *See Wreal, LLC v. Amazon.com Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm."); *see also Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) ("The self-inflicted nature of the [movant's] asserted harm "severely undermines" its claim for equitable relief." (cleaned up)). Just as a stay applicant may not delay, and self-inflict the imminent harm it seeks relief from, in my view the City may not delay in seeking a stay to justify invocation of the *Purcell* principle. Because of the City's dilatory actions in this litigation, I would not grant them a stay.

Before I conclude, I would like to make two further points. First, the majority focuses on the fact that *Purcell* does not prevent this court from correcting the district court's *erroneous* injunction. But again, if the City believed the preliminary injunction was erroneous, it abandoned that position by dismissing its prior appeal. What the City now asks this court to do is stop an *interim* and (what the district court concluded is a) constitutionally sound map from being used in favor of the Remedial Plan that was found to perpetuate the same racial gerrymandering that plagued the Enjoined Plan. Allowing the *Purcell* principle to be invoked in situations like this creates a perverse incentive. Loose application of the *Purcell*

4                    WILSON, J., Dissenting                    23-12472

principle incentives litigants like the City to submit constitutionally problematic maps to the district court close in time to the election, with the knowledge that, if the district court disapproves the map the City will receive a stay from this court. Respectfully, I would not incentive such behavior.

Second, we have addressed a similar situation in a recent case from the City of Jacksonville. *Branch of NACCP v. City of Jacksonville*, No. 22-14260, 2023 WL 119425 (11th Cir. Jan. 6, 2023). There, the City of Jacksonville asked us to allow the City's approved remedial plan to go into effect despite the district court finding that the remedial plan perpetuated the constitutional violations of the original enjoined plan. *Id.* at *2. We declined to do so because this request in effect required us to rule on the constitutionality of the remedial plan. *Id.* at *3. "[A]nd an order on a motion for stay pending appeal is not a resolution of the appeal itself." *Id.* Here, the City is asking us to do the exact same thing. Staying the district court's interim plan in effect casts our approval on the constitutionality of the Remedial Plan.

Finally, because I would find that the *Purcell* principle does not apply, I would consider the typical stay factors[2] and find that the City has not met its burden.

---

[2] In determining whether to grant a stay, the court considers the following: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

23-12472               W ILSON , J., Dissenting                5

I respectfully dissent.

---

parties interested in the proceeding; and (4) where the public interest lies."
*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted).