UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS,

        Plaintiffs,

v.

CITY OF MIAMI,

        Defendant.

_____/

**DEFENDANT'S AMENDED REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S SUPPLEMENTAL COMPLAINT FOR
LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

Pursuant to Local Rule 7.1(c)(1), Defendant, City of Miami (the "City"), respectfully files its Reply in support of its Motion to Dismiss (DE 117, the "Motion") Plaintiffs' Supplemental Complaint (DE 109).

**I.**    **Summary of the Argument**

In its Motion to Dismiss, the City identified "two threshold legal questions that go to the core of Plaintiffs' case[:]" (1) whether "narrowly tailoring" with respect to drawing a Voting Rights Act ("VRA") district is a purely subjective test, or an objective test with a subjective safe harbor (i.e., whether a plaintiff may still challenge a district that is objectively narrowly tailored so as not to be overly inclusive on the grounds that the legislative body did not subjectively have a good enough reason to believe it was narrowly tailored); and (2) whether Plaintiffs have alleged *actual* racial gerrymandering, instead of an alleged *intent* to racial gerrymander.  In their Response

(DE 119, the "Response"), Plaintiffs fail to address the first point, thereby conceding the City's position that Plaintiffs fail to state a claim for racial gerrymandering because their claim concerning District 5 is based entirely on the contention that the legislative body did not subjectively have a good enough reason to believe it was narrowly tailored, which is contrary to applicable U.S. Supreme Court precedent.

As to the second point, Plaintiffs fail to identify any legal authority that undermines the City's position. Instead, Plaintiffs ask the Court to construe their Amended Complaint and Supplemental Complaint together, arguing that "the Supplemental Complaint was clearly intended to complement, rather than replace, the First Amended Complaint[.]" *Id*.

Yet, Plaintiffs entirely ignore the crux of the City's argument: Plaintiffs' Amended Compliant and Supplemental Complaint *cannot* be read together because they are contradictory and inconsistent in their allegations and the documents they incorporate. Plaintiffs ask this Court to suspend reality, ignore the inconsistencies between the Amended Complaint and the Supplemental Complaint, and provide them with unwarranted deductions of fact that: (1) disregard that the publicly available documents to which Plaintiffs cite (including those *that Plaintiffs filed*, such as Plaintiffs' proposed plans), which contradict the allegations in the Supplemental Complaint; (2) ignore the legal requirements of the VRA; and (3) ignore the realities of the City's racial and ethnic demographics, which are proved up by Plaintiffs' own plans, which have substantially the same racial and ethnic statistics as the New Plan. Plaintiffs reference their alternative plans in the Supplemental Complaint as alternatives the City rejected. (DE 109, ¶¶ 93). Plaintiffs cannot now hide behind the veil of their Complaints when their plans, which are critical to the allegations in their Supplemental Complaint, are scrutinized on a motion to dismiss. This

Court may, and should, consider the documents Plaintiffs reference for purposes of determining whether they state a cause of action. In this case, they do not.

Plaintiffs' expansion of the allegations in their Complaints when they believe it serves them, while simultaneously attempting to thwart the City's efforts to point the Court to the content of those very documents is, in essence, a request that their claims be allowed to proceed despite not being properly pled. Likewise, Plaintiffs' glossing over the law and citations to the record in order to avoid addressing the incompatibility between their Amended and Supplemental Complaints should not be rewarded. The City therefore respectfully requests that the Court dismiss Plaintiffs' Amended and Supplemental Complaint for failure to state a claim.

## II.   MEMORANDUM IN SUPPORT OF REPLY

### a. The Court Can Properly Consider The Publicly Filed Documents Cited In The City's Motion To Dismiss.

Though they do not explain why, Plaintiffs claim that their plans are constitutional, while the City's New Plan is not. (DE 109, ¶¶34, 35, 97, 98, 167). While the City admittedly references Plaintiffs' publicly filed plans in its Motion to Dismiss, it does so because Plaintiffs' inability to harmonize how the New Plan is supposedly unconstitutional with how their plans are *constitutional* exemplifies Plaintiffs' failure to state a claim. The elements that comprise Plaintiffs' plans, which Plaintiffs believe are constitutional, require Plaintiffs to plead facts that explain *why* those same elements are not constitutional when found in the New Plan. For example, Plaintiffs rest solely upon the conclusory allegation that the BVAP in District 5 is not "narrowly tailored," without alleging any facts to support any dilution of influence anywhere else. (DE 119 at 9). Plaintiffs fail to allege why the one to two percent (1% to 2%) difference between the New Plan and their Plan would be sufficiently significant to run afoul of the acceptable range of

accuracy noted in *Bethune-Hill v. Va. State Bd. of Elections (Bethune-Hill I)*, 580 U.S. 178, 187 (2017).

In citing to record documents in its Motion to Dismiss, the City is not asking the Court to *weigh* competing evidence when ruling on the Motion. Instead, the City is asking the Court to treat the documents Plaintiffs reference in their Supplemental Complaint as part of that Complaint because those documents are central to Plaintiffs' claim. Plaintiffs' contention that the Court cannot consider anything outside of the four corners of a complaint when deciding a motion to dismiss is inaccurate and contrary to well settled law. (DE 119 at 4-5). The Eleventh Circuit has expressly held that, in instances such as this, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, [ ] the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). This Court may therefore consider the documents Plaintiffs reference "to be part of the pleadings for purposes of a Rule 12(b)(6) motion to dismiss." *Kelly Auto., Inc. v. Wells Fargo Bank, N.A.*, No. 11-60910-CIV, 2011 WL 13217400, at *1 (S.D. Fla. Aug. 18, 2011), report and recommendation adopted, No. 11-60910-CIV, 2011 WL 13217401 (S.D. Fla. Nov. 4, 2011).

i. <u>Plaintiffs' plans are central to their Supplemental Complaint.</u>

Plaintiffs contend that this Court should not consider their plans on a motion to dismiss because their plans "will not be on trial." (DE 119 at 7, n.2). Yet, in pleading their claim, Plaintiffs invoke their proposed plans 1, 2, and 3 as foils against the New Plan. S*ee e.g.*, DE 109, ¶¶ 34-37, 64-94. Thus, contrary to their assertions, their claims expressly rely on their plans.

4

This is particularly true because Plaintiffs allege no facts which, when accepted as true, establish in what way the demographic make-up of the City's districts reflect anything other than the actual demographics of the City of Miami. The New Plan and Plaintiffs' plans 3 and 4 have the same elements: (i) a Black VRA-protected District 5 that is within 1.6 points of 50%; (ii) three supermajority Hispanic districts exceeding 85%; and (iii) a coastal district with a Hispanic-leaning plurality. In that regard, Plaintiffs' plans are no different than the City's because, given the minimal statistical differences and substantially similarly racial makeup, their plans demonstrate that the City did not racially gerrymander any districts. Just as alternative plans that satisfy non-racial criteria can be probative of racial predominance, alternative plans like Plaintiffs' proffered plans may demonstrate the lack of racial predominance in the City's map drawing. *See Easley v. Cromartie*, 532 U.S. 234, 249 (2001). Plaintiffs should not be permitted to plead their plans as exemplars of constitutionality, then escape the logical consequences of what those plans demonstrate. (DE 119 at 7, n.2).

The similarities between the racial makeup of Plaintiffs' plans and the New Plan raises the question of what remedy the Court could provide in striking the City's plan for racial gerrymandering and requiring a plan with substantially the same racial makeup, regardless of who draws the remedial plan. This issue is neither trivial nor frivolous. Plaintiffs have already made their intentions clear: "should [they] prevail at trial, the City will have another opportunity to submit a new plan to the Court, Plaintiffs will have an opportunity to challenge that plan and submit new ones of their own for the Court's consideration, and the Court will have the duty to ensure a constitutionally permissible plan is in place[.]" (*Id.*) In other words, Plaintiffs are not shying away from the fact that they have moved and will continue to move the goalposts if this Court does not scrutinize their position at this stage of the litigation. *Cf. Democratic Nat'l Comm.*

*v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring) (explaining that a "principle of judicial restraint" which counsels against "late-in-the-day judicial alterations to state election laws," (1) "protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election," and (2) "discourages last-minute litigation and instead encourages litigants to bring any substantial challenges to election rules ahead of time, in the ordinary litigation process"). Because such a result would be incompatible with the goal of achieving a constitutionally compliant voting map, the Court should reject it.

### b. Plaintiffs' Amended Complaint Fails To Address The New Plan.

Instead of seeking leave to amend their Amended Complaint challenging the 2022 Plan, Plaintiffs elected to "supplement" their original complaint as a challenge to the New Plan. But under Eleventh Circuit precedent, after the City adopted a new redistricting plan and repealed the Enjoined Plan, Plaintiffs' original action was mooted. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004) ("the challenge to the Sign Code is moot, because the original Sign Code has been repealed, and there is no reasonable likelihood the City will reenact the old Sign Code"). Plaintiffs continue to claim that the "only question relevant to the City's motion to dismiss is whether Plaintiffs plead facts sufficient to state a plausible claim that the City Commission districts were racially gerrymandered in the 2022 Plan and continue to be racially gerrymandered in the 2023 Plan." (DE 119 at 6). That is simply incorrect.

After the City passed the New Plan, there was no longer a case or controversy with respect to the 2022 Plan, and Plaintiffs' dispute in that regard ceased to be justiciable. *See Health Freedom Defense Fund v. President of United States*, 2023 WL 4115990 (11th Cir. June 22, 2023) ("Rarely will challenges to a law's validity survive a mootness analysis when that law is no longer

6

effective."). Plaintiffs' attempt to rely on the stale allegations in the Amended Complaint, in which they allege only the events leading up to the enactment of the *Enjoined Plan*, plainly cannot support their current allegations directed at an entirely different map. If Plaintiffs wanted to maintain their challenge against the Enjoined Plan, along with the New Plan, they needed to plead sufficient facts to establish the existence of "a substantial likelihood that the challenged statutory language will be reenacted." *Coral Springs*, 371 F.3d at 1329. They pled no such language.

Plaintiffs seemingly acknowledge that the allegations in the Amended Complaint are moot by labeling the Supplemental Complaint as "complement[ary]" to those in the Amended Complaint. (DE 119 at 3). Regardless of how Plaintiffs frame it, to survive dismissal, their Supplemental Complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Instead of giving the City fair notice by clarifying their purported district-by-district claims in their Supplemental Complaint, Plaintiffs used the Supplemental Complaint to create more inconsistencies in their pleadings, further muddying the waters and obscuring what their claims actually are.

### c. Plaintiffs' Competing Complaints Allege Both Packing And Balancing With Respect To The Same Districts.

"[A] 'packed' district is one in which a party's supporters are highly concentrated, so they win that district by a large margin, 'wasting' many votes that would improve their chances in others." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2492 (2019) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (U.S. 2018)). As the City addressed in its Motion to Dismiss, while the Amended Complaint accuses the City of "packing" Black voters into District 5 and Hispanic residents into Districts 1, 3, and 4, the Supplemental Complaint accuses the City of exactly the opposite: "Avoiding 'Packing' Hispanics." (DE 117 at 2, 5). Plaintiffs do not address this fundamental

7

inconsistency in their pleadings. Is the City defending against claims of *packing* or against claims of *avoiding packing*?

With respect to District 5, Plaintiffs focus on the process, not the result: they claim that the City failed to consider an appropriate functional analysis, but do not challenge the result reached by that purportedly improper process. This purely subjective test is improper. (DE 117 at 5).

With respect to Districts 1, 3, and 4, Plaintiffs attempt to substitute their "packing" accusation in favor of a "balancing" accusation and, with respect to District 5, they swap their "packing" accusation for another subjective test. These are fundamental inconsistencies that Plaintiffs should be required to address. These inconsistencies are only exacerbated by Plaintiffs' allegation that the Enjoined Plan and the New Plan are "nearly identical" because 97.8% of Miamians remain in the same district. (DE 109, ¶¶64, 65). If a 2.2% difference is statistically insignificant to make the two plans the same, the spread between new plan Plaintiffs' Plan 4 at 48.4% BVAP is only 1.9% lower than the New plan's BVAP. Plaintiffs also fail to address how, if the Enjoined plan and the New Plan are fundamentally the same, the City can simultaneously be "packing" a significant number of Hispanics and balancing a significant number to "avoid packing." Thus if, as Plaintiff urges, this Court accepts "the core allegations" from the Amended Complaint, it should dismiss the Complaint because Plaintiffs fail to harmonize these inconsistent allegations.

### d. Plaintiffs Conflicting Allegations Fail To Allege Any Racial Gerrymandering.

Plaintiffs' request for the Court to ignore their plans is simply a request for this Court to accept the otherwise conclusory allegations that the City racially gerrymandered the districts, and that it used race as a predominant factor, when the more specific allegations (i.e., the documents

8

Plaintiffs reference in their Supplemental Complaint) have nearly the same racial makeup as the Enjoined and the New Plan and therefore contradict Plaintiffs' allegations. (DE 119 at 7, n.2).

### i. Plaintiffs fail to allege the City moved people because of their race.

The City's districts have had substantially the same shape and racial demographic make-up since they were first created in 1997. (DE 117 at 1-2). Since 1997, the City's five districts have always been: (i) a Black VRA-protected District 5; (ii) three (3) supermajority Hispanic districts; and (iii) a coastal district with a plurality. (*Id*.) Following the 2020 census, the City needed to redistrict, and it moved people from District 2 to the other districts. (*Id*. at 2).

Not only does no Plaintiff allege that the racial demographic make-up of any district within City has changed since 1997, Plaintiffs do not allege that it is even *possible* to have districts that would reflect a different demographic make-up or result in a significantly different shape than the one that the City has consistently achieved since 1997, including the New Plan. Given the statistical similarities between Plaintiffs' Plans and the New Plan, it remains unclear how the Complaints credibly present that "race was the predominant factor motivating the [City's] decision to place a significant number of voters within or without a particular district." *Cooper*, 581 U.S. 285, 291 (quoting *Miller*, 515 U.S. 900, 916 (1995)). The test for racial gerrymandering is not merely whether race was discussed, but whether it actually resulted in a racial gerrymander of a significant number of voters. *Id.* Plaintiffs allegations do not demonstrate that a significant number of voters were moved into, or out of, a particular district because of race.

Plaintiffs not only fail to plead that, they admit to not doing so: "Plaintiffs **are not claiming that the City moved a 'significant number of voters'** between the 2022 Plan and the 2023 Plan." (DE 119 at 8) (emphasis added). Plaintiffs incorrectly believe that they are not required to allege this because, as they see it, "every Miamian was placed within or without their City Commission

9

district based on their race." (*Id.*). Yet, the Supreme Court in *Alabama Legis. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015) ("*ALBC I*") expressly rejected this exact type of "undifferentiated whole" map racial gerrymandering claim.

Accordingly, the City respectfully requests that the Court dismiss Plaintiffs' Supplemental Complaint for failure to state a claim.

### e. Plaintiffs Lack Standing Because They Fail To Allege Individualized Personal Harm.

The U.S. Supreme Court has unequivocally identified "[t]he harms that underlie a racial gerrymandering claim . . . [as being] . . . personal." *(ALBC I)*, 575 U.S. at 263. A claim for racial gerrymandering is one in which an individual claims he or she has been "personally . . . subjected to [a] racial classification," and is "being represented by an elected official who believes his or her primary obligation is to represent only the members of a particular racial group." *Id*. (internal quotations omitted). While such actions "directly threaten a voter who lives in the district attacked[,] they do not so keenly threaten a voter who lives elsewhere [.]" *Id.* Therefore, "the latter voter normally lacks standing to pursue a racial gerrymandering claim." *Id.* (citing *United States v. Hays*, 515 U.S. 737, 744–745 (1995).

Because the alleged harms can only be personal, a racial gerrymandering claim only "applies to the boundaries of individual districts." *(ALBC I)*, 575 U.S. at 262. The U.S. Supreme Court has "consistently described a claim of racial gerrymandering as a claim that race was improperly used in the drawing of the boundaries of one or more specific electoral districts[,]" and has "described the plaintiff's evidentiary burden similarly." *Id*. (citing *Miller v. Johnson*, 515 U.S. 900, 916, (1995) (holding that a plaintiff must show that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without *a particular district*" (emphasis added)).

In their Amended and Supplemental Complaints, it is impossible to decipher which *individual* Plaintiff is claiming that a particular redistricting action resulted in racial gerrymandering with respect to a particular district. As drafted, all Plaintiffs challenge all five of the City's districts, and combine all of those tangled challenges into one cause of action. This is exactly the type of "undifferentiated whole" map challenge that the Supreme Court rejected in *(ALBC I)*.

Since a Plaintiff only has standing to allege a personal claim for racial gerrymandering with respect to an individual district, and since Plaintiffs have failed to allege any facts to support the existence of such personal claims, the Court should dismiss the Amended and Supplemental Complaints for lack of standing.

### III.     Conclusion

WHEREFORE, the City respectfully requests that the Court dismiss Plaintiffs' Amended and Supplemental Complaints.

Respectfully submitted,

GRAYROBINSON, P.A.

By: *s/ George T. Levesque*
Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358
Email: Marlene.Quintana@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Florida Bar No. 991562
George T. Levesque

Florida Bar No. 55551
Andy Bardos
Florida Bar No. 822671
301 S. Bronough Street
Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile: (850) 577-3311

CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
Telephone: (305) 416-1800
Facsimile: (305) 416-1801
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                          */s/* George T. Levesque  
                                                                          Counsel for City of Miami