UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS, and STEVEN MIRO,

       Plaintiffs,

v.

CITY OF MIAMI,

       Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT AND SUPPLEMENTAL COMPLAINT

Defendant, City of Miami (the "City") answer Plaintiff's First Amended Complaint (DE 23) and the Supplemental Complaint (DE 109) as follows.

### FIRST AMENDED COMPLAINT

1.    Denied.

2.    Denied.

3.    Denied.

4.    Denied.

### INTRODUCTION

5.    Admitted that the City, the Miami City Commission passed Resolution 22-131 (the 2022 Enacted Plan) on March 24, 2022, which redrew the City Commission districts for the next

decade; admitted that Mayor Francis X. Suarez declined to veto it; and the 2022 Enacted Plan went into effect for subsequent elections; otherwise denied.

6.    Denied.

7.    Paragraph 7 sets forth a conclusion of law to which no response is required. Otherwise, denied.

8.    Paragraph 8 sets forth a conclusion of law to which no response is required. Otherwise, denied.

9.    Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Admitted that the City's consultant had a presentation that included a slide titled "Allegations of Racism are False and Inflammatory"; otherwise, denied.

18.    Without knowledge, therefore denied.

## PARTIES

19.    Without knowledge, therefore denied.

20.    Without knowledge, therefore denied.

21.    Without knowledge, therefore denied.

22.    Without knowledge, therefore denied.

23.     Without knowledge, therefore denied.

24.     Denied.

25.     Without knowledge, therefore denied.

26.     Without knowledge, therefore denied.

27.     Without knowledge, therefore denied.

28.     Without knowledge, therefore denied.

29.     Without knowledge, therefore denied.

30.     Denied.

31.     Denied.

32.     Denied

33.     Admitted that the City is a Florida municipality. The remaining portions of
Paragraph 33 sets forth a conclusion of law to which no response is required; otherwise, denied.

## JURISDICTION AND VENUE

34.     Admitted for jurisdictional purposes only; otherwise, denied.

35.     Admitted for jurisdictional purposes only; otherwise, denied.

36.     Admitted for jurisdictional purposes only; otherwise, denied.

## FACTS
### I. Overview of the City Commission and Its Elections

37.     Paragraph 37 sets forth a conclusion of law to which no response is required.

38.     Paragraph 38 sets forth a conclusion of law to which no response is required.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted that Joe Carollo, Manolo Reyes, and Christine King are the Commissioners for Districts 3, 4, and 5, respectively, and Ken Russell was the Commissioner for District 2 commissioner during the 2021–22 redistricting process; otherwise, denied.

51.     Admitted.

52.     Admitted.

53.     Admitted

54.     Admitted

55.     Admitted

56.     Admitted.

57.     Admitted.

58.     Admitted.

**II. Miami Redistricting History**

59.     Admitted.

60.     Admitted that Carollo served as Mayor during 1996 and 1997, and in 1997, he appointed a blue-ribbon panel to recommend a single-member district map for the Commission.

61.     Admitted.

62.     Admitted.

63.     Admitted.

64.     Admitted.

65.     Admitted.

66.     Admitted.

### III. The 2021–22 Redistricting Process

67.     Admitted.

68.     Admitted.

69.     Admitted.

70.     Admitted.

#### A. The November 18, 2021 Meeting

71.     Admitted.

72.     Admitted.

73.     Denied.

74.     Admitted.

75.     Admitted.

76.     Admitted.

77.     Admitted.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

### B. The December 9, 2021 Meeting

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

### C. The February 7, 2022 Meeting

102.    Admitted.

103.    Denied.

104.    Denied.

105.    Admitted the February 7 Draft Plan proposed moving areas of the West Grove from District 2 into District 4; otherwise, denied.

106.    Admitted that the individuals identified in paragraph 106 spoke at the February 7 meeting; otherwise, denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

### D. The February 25, 2022 Meeting

119.    Admitted.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Admitted.

130. Admitted.

131. Admitted.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Admitted.

139. Denied.

140. Admitted.

### *E. The March 11, 2022 Meeting*

141. Admitted.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Admitted that Commissioner Russell proposed moving portions of Districts 3 and 4 back into District 2; otherwise, denied.

150.    Denied.

151.    Admitted that De Grandy spoke about "allegations of racism"; otherwise, denied.

152.    Admitted that De Grandy made the following statement:

Now, surprisingly, neither the Miami Herald Editorial Board nor any of those alleging that the plan is racist has noted any of these statistics as an issue. Now, some would say that the statistics I've just presented on the record are indicative of more desegregated and diverse living patterns that continue to develop in Miami, which I believe is a good thing. But, as I stated a minute ago, in the four public hearings and the five community meetings you have had, the only allegation of racism results from the proposed movement of 114 Black residents who are currently represented by a commissioner who is not Black to a district that is represented by a commissioner who is not Black.

153.    Admitted that that De Grandy made the following statement:

Now, in the last 30 years, I've been involved in redistricting and reapportionment of congressional, state senate and state house plans as well as school board and municipal plans. In the 1990 redistricting cycle, I successfully sued the Florida Legislature for violation of the Voting Rights Act, in the case of De Grandy versus Wetherell. As a result of that lawsuit, for the first time in a hundred years since Reconstruction, there were three African American members elected to Congress in Florida where for a hundred years, there had been none. I've also successfully litigated in defense of congressional and state legislative plans that complied with the Constitution and the Voting Rights Act. But in light of the statistics I've just put on the record, I would respectfully submit that you do not have to be a redistricting expert to conclude that the allegation of this plan is somehow racist is simply false and inflammatory.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Admitted that Commissioner Russell's proposal was not adopted.

158.    Admitted that Dwight Bullard spoke at the hearing; otherwise, denied.

159.    Denied.

160.    Denied.

161.    Admitted.

### F. The March 24, 2022 Meeting and Enacted Plan Adoption

162.    Admitted that the Commission convened on March 24; otherwise, denied.

163.    Admitted.

164.    Admitted.

165.    Admitted.

166.    Admitted.

167.    Admitted.

168.    Admitted that proposed a plan that restored portions of the West Grove to District 2 and moved an area between Alatka Avenue and 13th Streets from District 2 to District 3; otherwise, denied.

169.    Admitted.

170.    Admitted.

171.    Admitted.

172.    Admitted that the individuals identified in paragraph 106 spoke at the February 7 meeting; otherwise, denied.

173.    Admitted.

174.    Admitted.

175.    Admitted

176.    Admitted that Russell advocated for his plan keeping what he identified as Coconut Grove whole in District 2; otherwise, denied.

177.    Admitted.

178.    Admitted.

179.    Admitted.

180.    Admitted.

181.    Admitted.

182.    Admitted.

183.    Admitted that Commissioner Reyes voted against the Base Plan with the Wharf change; to the extent that the allegations of paragraph 183 assert reasons that were different than those publicly expressed by Commissioner Reyes, those allegations are denied. Otherwise, denied.

184.    Admitted that Commissioner Russell voted against the Base Plan with the Wharf change; to the extent that the allegations of paragraph 184 assert reasons that were different than those publicly expressed by Commissioner Russell, those allegations are denied. Otherwise, denied.

185.    Admitted.

186.    Admitted that interested groups and individuals urged Mayor Suarez to veto the 2022 Enacted Plan; to the extent that the allegations of paragraph 186 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

187.    Admitted that Mayor Suarez let the 2022 Enacted Plan become law without his signature; otherwise, denied.

**IV. Racial Considerations Predominated in the Line-Drawing Process**

188.    Denied.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Denied.

193.    The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 193 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

194.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 194 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

195.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 195 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

196.    Denied.

197.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 197 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

198.    Denied.

199.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 199 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

200.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 200 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

201.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 201 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

202.    Denied.

### A. Creating an "Anglo Access District" in District 2

203.    Denied.

204.    The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 204 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

205.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 204 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

206.    Denied.

207.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 206 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

208.    Denied. The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 208 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

209.    Denied. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 208 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

210.    Denied.

211.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 211 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

212.    The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 212 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

213.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 213 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

214.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 214 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

215.    Denied. The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 215 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

216.    The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 216 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

***B. Maintaining an Arbitrary BVAP Quota for District 5***

217.    Denied.

218.    Admitted.

219.    Denied.

220.    Denied.

221.    Denied.

222.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 222 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

223.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 223 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

224.    Denied.

225.    Denied.

226.    Admitted.

227.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 227 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

228.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 228 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

229.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 229 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

230.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 230 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

231.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 223 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

232.    Denied.

233.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 233 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

234.    The public statements of Commissioner King in commission meetings speak for themselves; to the extent that the allegations of paragraph 234 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

235.    Denied.

236.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 236 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

237.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 238 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

238. The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 238 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

239. The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 239 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

240. Admitted that areas were moved between Districts 2 and 5; the population statistics for those areas speak for themselves; to the extent that the allegations of paragraph 240 assert otherwise, those allegations are denied. Otherwise, denied.

241. Admitted that areas were moved between Districts 2 and 5; the population and racial statistics for those areas speak for themselves; to the extent that the allegations of paragraph 241 assert otherwise, those allegations are denied. Otherwise, denied.

242. Denied.

243. Denied.

244. Denied.

245. Admitted that the ACLU sent a letter to the City; that letter speak for themselves; to the extent that the allegations of paragraph 245 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

246. Admitted that the ACLU sent a letter to the City; that letter speak for themselves; to the extent that the allegations of paragraph 246 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

247.    The population and racial statistics for District 5 speak for themselves; to the extent that the allegations of paragraph 247 assert otherwise, those allegations are denied. Otherwise, denied.

248.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 248 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

249.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 236 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

250.    Denied.

251.    The public statements of Commissioners Russell and King in commission meetings speak for themselves; to the extent that the allegations of paragraph 251 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

252.    The public discussions of Commissioner King and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 252 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

253.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 253 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

254.    The public statements of Commissioners Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 254 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

255.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 255 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

256.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 256 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

257.    Admitted that Mr. De Grandy returned with Base Plan that moved several unpopulated riverfront blocks from District 1 into District 5; otherwise denied.

258.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 258 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

259.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 259 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

260.    Admitted that the City adopted the Base Plan with the minor Wharf alteration; otherwise, denied.

261.    Denied.

262.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 262 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

263.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 263 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

264.    Admitted.

265.    Denied. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 265 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

266.    Denied.

267.    The public statements of Commissioners Reyes, Russell, and King and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 267 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

268.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 268 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

269.    Admitted that District 5 in the plan enacted in 2022 had a BVAP of 50.3%; otherwise denied.

### C. Packing Hispanic Residents into Districts 1, 3, and 4

270.    Denied.

271.    Denied.

272.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 272 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

273.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 273 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

274.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 274 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

275.    Denied; The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 275 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

276.    Denied.

*1. District 1/5 Border*

277.    Denied.

278.    Admitted.

279.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 279 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

280.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 280 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

281.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 281 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

282.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 282 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

283.    Admitted.

284.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 284 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

285.     Denied.

286.     The population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 286 assert otherwise, those allegations are denied. Otherwise, denied.

287.     Admitted that District 1 needed to gain population; otherwise, denied.

288.     The population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 288 assert otherwise, those allegations are denied. Otherwise, denied.

289.     The population and racial statistics for District 1 speak for themselves; to the extent that the allegations of paragraph 288 assert otherwise, those allegations are denied. Otherwise, denied.

### 2. District 2/3 Border

290.     Denied.

291.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 291 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

292.     Admitted that portions of District 2 were moved into District 3, stretching from SW 15th Road in the north to SW 17th Avenue in the south, over to South Miami Avenue, including Bay Heights; otherwise denied.

293.     The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 293 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

294.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 294 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

295.     Admitted that the City commission considered but did not adopt keeping areas identified as Coconut Grove whole; otherwise denied.

296.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 296 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

297.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 297 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

298.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 298 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

299.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 299 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

300.     Admitted.

301.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 301 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

302.    Denied. The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 302 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

303.    The public discussions of Commissioner Russell and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 303 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

304.    The public discussions of Commissioner Russell and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 304 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

305.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 305 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

306.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 306 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

307.    The public statements of Commissioner Russell in commission meetings speak for themselves; to the extent that the allegations of paragraph 307 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

308.    Denied.

309.     The public statements of Commissioner Russell in commission meetings speak for themselves; to the extent that the allegations of paragraph 309 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

310.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 310 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

311.     The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 311 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

312.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 312 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

313.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 313 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

314.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 314 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

315.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 315 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

316.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 316 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

317.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 317 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

318.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 318 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

319.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 319 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

320.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 320 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

321.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 321 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

322.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 322 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

323.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 323 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

324.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 324 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

325.    The population and racial statistics for District 3 in the Revised Russel Plan speak for themselves; to the extent that the allegations of paragraph 325 assert otherwise, those allegations are denied. Otherwise, denied.

326.    The population and racial statistics for District 3 in the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 326 assert otherwise, those allegations are denied. Otherwise, denied.

*3. District 2/4 Border*

327.    Denied.

328.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 328 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

329.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 329 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

330.    The population and racial statistics for area bounded by SW 25th Street, SW 27th Avenue, and US 1 speak for themselves; to the extent that the allegations of paragraph 330 assert otherwise, those allegations are denied. Otherwise, denied.

331.    Denied.

332.    Denied.

333.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 333 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

334.    The public statements of Commissioners Carollo and Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 328 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

335.    Denied.

336.    Denied.

337.    The public statements of Commissioner Diaz de la Portilla in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 337 assert otherwise, those allegations are denied. Otherwise, denied.

338.    Denied.

339.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 339 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

340.    The population and racial statistics for District 4 in the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 340 assert otherwise, those allegations are denied. Otherwise, denied.

### 4. Internal Borders of Districts 1, 3, and 4

341.    Denied.

342.    Denied.

28

343.    The public statements of Commissioners in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 343 assert otherwise, those allegations are denied. Otherwise, denied.

344.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 344 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

345.    The public statements of Commissioner Carollo in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 345 assert otherwise, those allegations are denied. Otherwise, denied.

346.    The public statements of Commissioners Carollo and Reyes in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 346 assert otherwise, those allegations are denied. Otherwise, denied.

347.    The public statements of Commissioner Carollo in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 347 assert otherwise, those allegations are denied. Otherwise, denied.

348.    The public statements of Commissioner Reyes in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 348 assert otherwise, those allegations are denied. Otherwise, denied.

349.    Admitted that an area bounded by SW 27th and 32nd Avenues, NW 7th Street, and SW 8th Street was moved from District 4 to District 3; the population and racial statistics for subject area speak for themselves; otherwise denied.

350.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 350 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

### V. Lack of Narrow Tailoring to Achieve a Compelling Interest in Racial Predominance

351.    Denied.

352.    Denied.

353.    Denied.

354.    Denied.

355.    Denied.

356.    Denied.

357.    Denied.

### CLAIM FOR RELIEF
### Racial Gerrymandering
### in Violation of the Fourteenth Amendment to the U.S. Constitution
### (42 U.S.C. § 1983)

358.    Defendant incorporates its responses to paragraphs 1 through 357.

359.    Paragraph 359 sets forth a conclusion of law to which no response is required.

360.    Paragraph 360 sets forth a conclusion of law to which no response is required.

361.    Denied.

362.    Denied.

363.    Denied.

364.    Denied.

### PRAYER FOR RELIEF

Defendant denies the allegations and demands set forth in the Prayer for Relief and deny that they are liable to Plaintiffs for any sum whatsoever.

### SUPPLEMENTAL COMPLAINT

1.      Denied.

2.      Denied.

3.      Admitted that the 2022 Enacted Plan went into effect for elections held after its adoption in 2022, and was used in the February 27, 2023 special election for District 2.

4.      Admitted that the City redrew the Commission districts by enacting Res. 23-271 ("2023 Enacted Plan") in response to the Court's preliminary injunction; otherwise denied.

### PARTIES

5.      Without knowledge, therefore denied.

6.      Without knowledge, therefore denied.

7.      Without knowledge, therefore denied.

8.      Without knowledge, therefore denied.

9.      Without knowledge, therefore denied.

10.      Denied.

11.      Without knowledge, therefore denied.

12.      Without knowledge, therefore denied.

13.      Without knowledge, therefore denied.

14.      Without knowledge, therefore denied.

15.      Without knowledge, therefore denied.

16.      Denied.

17.      Denied.

18.      Denied.

19.     Admitted that the City is a Florida municipality. The remaining portions of Paragraph 19 sets forth a conclusion of law to which no response is required; otherwise, denied.

## JURISDICTION AND VENUE

20.     Admitted for jurisdictional purposes only; otherwise, denied.

21.     Admitted for jurisdictional purposes only; otherwise, denied.

22.     Admitted for jurisdictional purposes only; otherwise, denied.

## SUPPLEMENTAL FACTS
### I. The 2023 Redistricting Process

23.     Admitted.

24.     Denied.

25.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 25 assert otherwise, those allegations are denied. Otherwise, denied.

26.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 26 assert otherwise, those allegations are denied. Otherwise, denied.

27.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 27 assert otherwise, those allegations are denied. Otherwise, denied.

28.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 28 assert otherwise, those allegations are denied. Otherwise, denied.

29.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 25 assert otherwise, those allegations are denied. Otherwise, denied.

30.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 30 assert otherwise, those allegations are denied. Otherwise, denied.

31.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 31 assert otherwise, those allegations are denied. Otherwise, denied.

32.    Admitted that the Court held a telephone conference on May 11, 2023, otherwise denied.

33.    Admitted.

34.    Admitted that the Plaintiffs submitted two maps—P1 and P2—with a cover letter to the City on the same day the Court enjoined the 2022 Enacted Plan; the maps and the letter speak for themselves; otherwise, denied.

35.    Admitted that Plaintiffs shared supplemental information on P1 and P2's compliance with the Voting Rights Act on June 9; admitted that provided an analysis from Dr. Bryant Moy on June 12; otherwise denied.

36.    Admitted.

37.    Admitted that Plaintiffs shared another map—P3—on June 13, 2023.

38.    Admitted that the Commission noticed a discussion item for redistricting for a meeting to be held at 10 A.M. on June 14, 2023; otherwise denied.

39.    Admitted.

40.     Admitted that Mr. De Grandy publicly presented a draft plan proposal, named "V12"; otherwise, denied.

41.     Denied.

42.     Denied.

43.     Admitted that the City debated V12 and then recessed; otherwise denied.

44.     Admitted that Mr. De Grandy met with certain commissioners privately and drew alternative maps; otherwise denied.

45.     Denied.

46.     Admitted that the Commissioners returned from recess; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 46 assert otherwise, those allegations are denied. Otherwise, denied.

47.     Admitted that some Commissioners proposed maps of their own; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 47 assert otherwise, those allegations are denied. Otherwise, denied.

48.     The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 48 assert otherwise, those allegations are denied. Otherwise, denied.

49.     Admitted that Commissioners King and Diaz de la Portilla directed additional changes during the commission meeting that moved a portion of Overtown from District 1 to District 5 which version was named "D3 Alt. v.2"; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 49 assert otherwise, those allegations are denied. Otherwise, denied.

50.     Admitted that a portion of Overtown that was from District 1 to District 5 in D3 Alt. v.2 was moved back into District 1, which version was named "D3 Alt. v.3"; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 50 assert otherwise, those allegations are denied. Otherwise, denied.

51.     Denied.

52.     Admitted that the Mayor Suarez let Res. 23-271 become law without his signature, and the City filed its Notice of Passage of Redistricting Plan (DE 77) with the Court on June 30, 2023; otherwise denied.

53.     Denied.

54.     Denied.

## II. Racial Considerations Predominated in the Line-Drawing Process

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 48 assert otherwise, those allegations are denied. Otherwise, denied.

61.     Denied.

62.     Denied.

63.     Denied.

### III. The Commission Adopted a Nearly Identical Map with the 2023 Plan

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

### IV. Changes Made on June 14 Walked Back Closer to the Enjoined Plan

70. Denied.

### *A. The District 2/3 Border in the North Grove and Brickell*

71. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 71 assert otherwise, those allegations are denied. Otherwise, denied.

72. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 72 assert otherwise, those allegations are denied. Otherwise, denied.

73. Denied.

74. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 74 assert otherwise, those allegations are denied. Otherwise, denied.

75. Denied.

### B. The District 3/4 Border

76.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 76 assert otherwise, those allegations are denied. Otherwise, denied.

77.     Admitted.

78.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 78 assert otherwise, those allegations are denied. Otherwise, denied.

79.     The public statements of Commissioners and the City Attorney in commission meetings speak for themselves; to the extent that the allegations of paragraph 78 assert otherwise, those allegations are denied. Otherwise, denied.

80.     The public statements of Commissioners and the City Attorney in commission meetings speak for themselves; to the extent that the allegations of paragraph 78 assert otherwise, those allegations are denied. Otherwise, denied.

81.     Denied.

82.     Denied.

83.     Denied.

### C. Morningside

84.     Admitted that V12 proposed moving proposed moving part of Morningside between 55th Terrace and 61st Street out of District 2 and into District 5; the population and racial statistics for that area speak for themselves; to the extent that the allegations of paragraph 84 assert otherwise, those allegations are denied. Otherwise, denied.

85.     Admitted.

86.     The public statements of Commissioner Covo in commission meetings speak for themselves; to the extent that the allegations of paragraph 86 assert otherwise, those allegations are denied. Otherwise, denied.

87.     Admitted that Commissioner King opposed moving part of Morningside into District 5; otherwise denied.

88.     The public statements of Commissioners and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 88 assert otherwise, those allegations are denied. Otherwise, denied.

89.     The public statements of Commissioners and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 89 assert otherwise, those allegations are denied. Otherwise, denied.

90.     Denied.

91.     Admitted.

92.     Admitted.

93.     Admitted that the Commission did not adopt alternative plans that placed all or parts of Morningside in District 5; otherwise denied.

### D. The Commission Defined Overtown Along Racial Lines

94.     Denied.

95.     Admitted.

96.     Admitted.

97.     Without knowledge, and therefore denied.

98.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 98 assert otherwise, those allegations are denied. Otherwise, denied.

99.     The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 99 assert otherwise, those allegations are denied. Otherwise, denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Paragraph 103 sets forth a conclusion of law to which no response is required. Otherwise, denied.

104.    Denied.

105.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 105 assert otherwise, those allegations are denied. Otherwise, denied.

106.    Admitted that no commissioner raised any concern publicly with way Mr. De Grandy described the area of Historic Overtown in District 5; otherwise denied.

107.    Admitted that Commissioner King requested that the area that People's Bar-B-Que be added to District 5; otherwise denied.

108.    Admitted that Commissioner Diaz de la Portilla was supportive of adding People's Bar-B-Que into District 5; otherwise denied.

109.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 109 assert otherwise, those allegations are denied. Otherwise, denied.

110.    Admitted that the block containing People's Bar-B-Que was included in District 5 in the final map; otherwise denied.

111.    The population and racial statistics for the three blocks raised in the paragraph speak for themselves; to the extent that the allegations of paragraph 111 assert otherwise, those allegations are denied. Otherwise, denied.

112.    Denied.

113.    The population and racial statistics for the three blocks raised in the paragraph speak for themselves; to the extent that the allegations of paragraph 113 assert otherwise, those allegations are denied. Otherwise, denied.

114.    Denied.

## V. The Parts of Version 12 the Commission Chose to Accept Were Race-Based, Too
### A. Avoiding "Packing Hispanics"

115.    Denied.

116.    The criticism of P1 and P2 in are contained in the transcripts of commission meetings and speak for themselves; to the extent that the allegations of paragraph 116 assert otherwise, those allegations are denied. Otherwise, denied.

117.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 99 assert otherwise, those allegations are denied. Otherwise, denied.

118.    Denied.

119.    Denied, including the footnote.

120.    Denied.

### B. Adding Back an Area "Where the Hispanic Voters Live" to District 3

121.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 121 assert otherwise, those allegations are denied. Otherwise, denied.

122.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 122 assert otherwise, those allegations are denied. Otherwise, denied.

123.    Admitted that Bay Heights was included in District 3 in the Feb. 22, 2022 Base Plan; otherwise denied.

124.    Admitted that Bay Heights was included in District 2 in the 2022 Enacted Plan draft; otherwise denied.

125.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 125 assert otherwise, those allegations are denied. Otherwise, denied.

126.    Admitted that Bay Heights was included in District 3 in the V12 Plan; otherwise denied.

127.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 127 assert otherwise, those allegations are denied. Otherwise, denied.

128.    Denied.

129.    The public statements of Commissioner Covo in commission meetings speak for themselves; to the extent that the allegations of paragraph 129 assert otherwise, those allegations are denied. Otherwise, denied.

130.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 130 assert otherwise, those allegations are denied. Otherwise, denied.

131.    Denied.

132.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 132 assert otherwise, those allegations are denied. Otherwise, denied.

133.    Admitted that the areas of Natoma and Bay Heights were included in District 3 in the 2023 Enacted Plan; otherwise denied.

## VI. District-by-District, Race Predominated in the 2023 Plan
### A. District 2

134.    Denied.

135.    Denied.

136.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 136 assert otherwise, those allegations are denied. Otherwise, denied.

137.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 137 assert otherwise, those allegations are denied. Otherwise, denied.

138.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 138 assert otherwise, those allegations are denied. Otherwise, denied.

139.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 139 assert otherwise, those allegations are denied. Otherwise, denied.

140.     The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 140 assert otherwise, those allegations are denied. Otherwise, denied.

141.     The parameters of the 2023 Enacted Plan and the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 141 assert otherwise, those allegations are denied. Otherwise, denied.

### B. District 5

142.     Denied.

143.     Denied.

144.     The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 144 assert otherwise, those allegations are denied. Otherwise, denied.

145.     The public statements of Commissioner King in commission meetings speak for themselves; to the extent that the allegations of paragraph 145 assert otherwise, those allegations are denied. Otherwise, denied.

146.     The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 1146 assert otherwise, those allegations are denied. Otherwise, denied.

147.     The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 147 assert otherwise, those allegations are denied. Otherwise, denied.

148.     Admitted that Morningside and Edgewater are in District 2 in the 2023 Enacted Plan; otherwise denied.

149.     Denied.

150.     The parameters of District 5 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 150 assert otherwise, those allegations are denied. Otherwise, denied.

151.    The parameters of District 5 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 151 assert otherwise, those allegations are denied. Otherwise, denied.

### C. Districts 1, 3, and 4

152.    Denied

153.    Denied.

154.    The parameters of Districts 1, 3 and 4 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 154 assert otherwise, those allegations are denied. Otherwise, denied.

155.    The parameters of Districts 1, 3 and 4 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 155 assert otherwise, those allegations are denied. Otherwise, denied.

156.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 156 assert otherwise, those allegations are denied. Otherwise, denied.

157.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 157 assert otherwise, those allegations are denied. Otherwise, denied.

158.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 158 assert otherwise, those allegations are denied. Otherwise, denied.

159.    The parameters of Districts 3 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 159 assert otherwise, those allegations are denied. Otherwise, denied.

## VII. Lack of Narrow Tailoring to Achieve
## a Compelling Interest in Racial Predominance

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Admitted that the BVAP for District 5 in the 2023 Enacted Plan and the 2022 Enacted plan was 50.3%; otherwise denied.

172.    Denied.

173.    Denied.

## CLAIM FOR RELIEF
## Racial Gerrymandering
## in Violation of the Fourteenth Amendment to the U.S. Constitution
## (42 U.S.C. § 1983)

174.    Defendant incorporates its responses to paragraphs 1 through 173.

175.     Paragraph 175 sets forth a conclusion of law to which no response is required.

176.     Paragraph 176 sets forth a conclusion of law to which no response is required.

177.     Denied.

178.     Denied.

179.     Denied.

180.     Denied.

## PRAYER FOR RELIEF

Defendant denies the allegations and demands set forth in the Prayer for Relief and deny that they are liable to Plaintiffs in any manner whatsoever.

## AFFIRMATIVE DEFENSES

Defendant assert the following affirmative defenses to Plaintiffs' claims, and reserve the right to amend or supplement their defenses as additional facts become known during this litigation.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring the claims alleged in this action because they have not suffered any personal injury traceable to the 2023 Enacted Plan. For example, to the extent the 2023 Enacted Plan addressed Plaintiffs district-specific objections to the 2022 Enacted Plan, they no longer have suffered an injury and lack standing.  Likewise and to the extent Plaintiffs no longer seek to vindicate their own alleged harms but perceived harms allegedly suffered by others, they fail to demonstrate their standing to bring such claims.  *See United States v. Hays*, 515 U.S. 737 (1995).

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs also lack standing because their alleged injuries cannot be redressed by this Court. There is no plan (including none of Plaintiffs' four proposed plans) that can or would materially change the racial makeup of the City's districts. Instead, the reality is that the City has a majority Hispanic population, and the racial composition of the City's five districts will remain the same as it has been since 1997: three supermajority Hispanic districts, one VRA required majority African-American district, and one plurality district.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted to the extent that have not alleged and cannot prove that the City placed a significant numbers of voters in any district based on their race. Both the 2022 and 2023 Enacted Plans only made minor changes to districts that did not materially alter the existing racial makeup of any district.

## <u>DEMAND FOR JURY TRIAL</u>

Defendant hereby demands a trial by jury.

Respectfully submitted,

GRAYROBINSON, P.A.

By: */s/George T. Levesque*
GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Florida Bar No. 991562
George T. Levesque
Florida Bar No. 55551
Andy Bardos
Florida Bar No. 822671
301 S. Bronough Street
Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile: (850) 577-3311

Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358
Email: Marlene.Quintana@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887


CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
Telephone: (305) 416-1800
Facsimile: (305) 416-1801
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ George T. Levesque*
Counsel for City of Miami