IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

Plaintiffs respond to the City's Statement of Material Facts (ECF No. 130), as follows:

### I. Background

1. Undisputed.

2. Undisputed.[1]

3. Undisputed.

4. Undisputed.

5. Undisputed.

### II. General Demographics

6. Undisputed.

7. Disputed. The district-level racial demographics of P1, P2, P3, and P4 differ from the City's New Plan ("2023 Plan") in significant ways. Ex. 1, Abott Trial Rep. at 44–45.

### III. Plaintiff Clarice Cooper

8. Undisputed.

---

[1] Plaintiffs assume the City inadvertently omitted the word "same" before "racial demographics" in this paragraph.

1

9. Undisputed.

10. Undisputed.

11. Disputed. Cooper believes that part of Coconut Grove was moved from District 2 and put into Districts 3 and 4 for racial reasons. ECF No. 130-3 (Cooper Dep.) at 33:18–34:7, 36:14–18, 50:20–23, 87:19–88:18; ECF No. 24-37 (Cooper Decl.) ¶ 9.

12. Undisputed.

13. Disputed. Cooper is "worried about the diluting of influence of Black residents" in District 5, and is concerned that Black residents were artificially stripped from District 2 in the 2022 Plan on the basis of their race. Cooper Dep. at 41:3–15; Cooper Decl. ¶ 6.

### IV. Plaintiff Steven Miro

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Disputed. Miro has multiple issues with District 3, including that race predominated in the drawing of it, that the Commission "label[ed] it totally based on race," that Hispanics were packed into the district on the basis of their race, that it split Little Havana to "deliberately [] allocate Hispanic residents into different districts," and that it did not respect natural boundaries. ECF No. 130-4 (Miro Dep.) at 21:15–22:18, 33:9–24, 34:13–19, 36:3–11, 70:6–11, 73:4–12, 74:2–8, 77:22–78:15, 79:18–25; ECF No. 24-39 (Miro Decl.) ¶¶ 5–7.

18. Disputed. Miro has race-based objections to District 3 in both the 2022 Plan and 2023 Plan. Miro Dep. at 21:15–22:18, 33:9–24, 34:13–19, 36:3–11, 70:6–11, 73:4–12, 74:2–8, 77:22–78:15, 79:18–25; Miro Decl. ¶¶ 5–7.

19. Undisputed.

20. Undisputed.

### V.  Plaintiff Jared Johnson

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

### VI.  Plaintiff Alexandra Contreras

29. Undisputed.

30. Undisputed.

31. Disputed. The racial composition of District 4 had nothing to do with Contreras' decision to move there in August 2022. ECF No. 130-6 (Contreras Dep.) at 12:7–20.

32. Disputed. Contreras stated she is "concerned that Hispanic residents like me have been packed into my district on the basis of their race." Contreras Dep. at 61:7–11. The racial composition of District 4 had nothing to do with Contreras' decision to move there. *Id.* at 12:7–20. She acknowledged that District 4's Hispanic voting-age population increased from 89.5% in the 2022 Plan to 90% in the 2023 Plan. *Id.* at 61:15–18, 61:21–24.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Undisputed.

39. Undisputed.

40. Disputed. Contreras explained her opinion that District 4 was atypical in shape. Contreras Dep. at 22:11–18, 37:13–20.

41. Disputed. Contreras objects to the City of Miami using race as a basis to draw its maps (including the 2023 Plan), rather than, for example, respecting neighborhoods and boundaries. Contreras Dep. at 62:7–15. Contreras objects to the atypical shapes of the 2022 Plan's districts (including District 4), which barely changed in the 2023 Plan. *Id.* 15:17–25, 22:11–18.

    VII.   **Plaintiff Yanelis Valdes**

42. Undisputed.

43. Undisputed.

44. Disputed. Valdes' grievance with the 2022 Plan was not only that she was moved into a different district. ECF No. 130-7 (Valdes Dep.) at 18:2–5. Her other grievances with the 2022 Plan included that "it wasn't representative of [] the neighborhood[s] and geographic areas that represented communities and instead [districts] were drawn based on race;" that "the map was drawn to seemingly put Black residents into one district and Hispanic residents into other districts," thereby "split[ting] up . . . communities . . . and neighborhoods," rather than drawing districts along "boundaries that are naturally occurring, but based on people's race." *Id.* at 18:6–25, 19:13–14, 26:13–28:15, 61:3–10; ECF No. 24-41 (Valdes Decl.) ¶¶ 6–8. These grievances were not redressed by the 2023 Plan. *Id.* at 68:12–20.

45. Undisputed.

46. Disputed. Valdes objects that the 2023 Plan is drawn based on people's race, rather than communities of interest and neighborhoods. Valdes Dep. at 68:12–20.

47. Disputed. Valdes testified that, "given [she] already testified that [she] do[es]n't have a problem being represented by a Black commissioner or a Hispanic commissioner," she does not "have a concern with representation," but was "not really sure how to answer that." *Id.* at 67:13–20. Valdes continues to be concerned that the City Commission's maps are "based on people's race and not necessarily communities of interest and neighborhood makeup." *Id.* at 68:16–20.

48. Undisputed.

### VIII. Plaintiff Miami-Dade NAACP

49. Undisputed.

50. Undisputed.

51. Disputed. The Miami-Dade NAACP corporate representative testified that she personally knows that there are branch members who live in Districts 1, 2, 3, and 5. ECF No. 130-8 (Pierre Dep.) at 42:17–43:1, 71:14–73:7, 86:12–89:2.

52. Undisputed.

53. Disputed.[2] The Miami-Dade NAACP's issues with the 2022 Plan included that it unfairly classified Miami residents on the basis of race, and that Black residents in the northern half of the city had been packed into a single district. Pierre Dep. at 43:2–44:1, 47:13–48:20; ECF No. 24-36 (Pierre Decl.) ¶¶ 6–8.

54. Disputed. The Miami-Dade NAACP objects to both the 2022 Plan and 2023 Plan unfairly classifying Miami residents on the basis of race, and packing Black voters into District 5,

---

[2] Plaintiffs do not dispute the second sentence of this paragraph.

among other objections. Pierre Dep. at 43:2–44:1, 47:13–48:20, 29:9–30:19; Pierre Decl. ¶¶ 6–8.[3] During her deposition, Pres. Pierre was asked whether she recognized the maps of the 2022 Plan and 2023 Plan; she replied that she did not. Pierre Dep. at 28:4–8, 31:20–23. Pres. Pierre was then asked whether the Miami-Dade NAACP had an objection to those exhibits; she replied that she did not know. *Id.* at 30:23–31:16, 31:24–32:1.

IX.   **Plaintiff South Dade NAACP**

55. Disputed. Information on where South Dade NAACP members live is available at the national level of the NAACP. ECF No. 130-9 (Donaldson Dep.) at 23:15–18. Donaldson herself personally knows of South Dade NAACP members who live in District 2, and knows of members who lived in District 4 as of early 2023. *Id.* at 24:2–6, 24:19–25:11.

56. Disputed. Information on where South Dade NAACP members live is available at the national level of the NAACP. Donaldson Dep. at 23:15–18.

57. Disputed. The cited testimony discusses GRACE board members, not South Dade NAACP board members. Donaldson Dep. at 80:14–81:5.

58. Undisputed.

59. Disputed. The South Dade NAACP was concerned that the 2022 Plan split the West Grove and Coconut Grove into Districts 2, 3, and 4, and was also concerned that the 2022 Plan unfairly classified Miami residents on the basis of race. *Id.* at 35:12–17, 37:24–38:12; ECF No. 24-35 (Ford Decl.) ¶¶ 6–9.

---

[3] *See also* ECF No. 109 (Supp. Compl.) ¶¶ 55–63, 134–59, 177–80 (Supplemental Complaint filed September 7, 2023 demonstrating objections to the 2023 Plan).

60. Disputed.[4] The South Dade NAACP corporate representative did not express an opinion on whether the capturing of the piece of Coconut Grove with Commissioner Carollo's house had been done for racially motivated reasons. Donaldson Dep. at 39:2–21.

61. Undisputed.

62. Disputed. At her deposition, the South Dade NAACP corporate represented stated that she could not say whether the South Dade NAACP objects to the 2023 Plan, because she had not discussed it with the branch's board. Donaldson Dep. at 47:20–48:11, 54:16–55:16. The South Dade NAACP filed the Supplemental Complaint objecting that the 2023 Plan classifies its members on the basis of race and subordinates traditional redistricting principles like compactness, following major boundaries, and respecting neighborhoods. Supp. Compl. ¶¶ 55–63, 134–59, 177–80.

X.   **Plaintiff GRACE**

63. Undisputed.

64. Disputed. GRACE has both organizational and individual members. ECF No. 130-1 (Robinson Dep.) at 9:15–22. Individual members of GRACE's organizational members are also members of GRACE. *Id.* at 59:5–18.

65. Undisputed.

66. Disputed. GRACE has identified that its members, and constituent organizations' members, reside in Districts 2 and 4. Robinson Dep. at 51:3–17, 52:1–4, 60:20–61:6.

67. Disputed. GRACE's concerns with the Enjoined Plan included that part of the West Grove was being split from District 2, that the opinions of the community had not been taken into

---

[4] Plaintiffs do not dispute that "South Dade NAACP was also concerned with a piece of District 3 that covered Coconut Grove."

7

consideration, that communities of interest and neighborhoods were respected in some parts of the city but not in others, that natural boundaries weren't used, and that the neighborhood divisions were to achieve a particular racial balance of the different districts, rather than to serve neighborhoods. Robinson Dep. at 29:12–30:16; ECF No. 24-33 (Donaldson Decl.) ¶¶ 6–9.

68. Undisputed.

69. Undisputed.

70. Disputed.[5] GRACE alleges in the Supplemental Complaint that the 2023 Plan sent the message to its members who are in a district where they are not the predominant racial group, that their commissioner's job is to represent the predominant group, not them. Supp. Compl. ¶ 16. During his deposition, GRACE's corporate representative replied when asked that he did not know if the statement would apply to GRACE's members. Robinson Dep. at 66:9–15.

71. Disputed. After the enactment of the 2023 Plan, GRACE's initial concerns were addressed. Robinson Dep. 103:8–11, :19–22. GRACE's concerns evolved and GRACE also was concerned about how its members were being treated under the 2023 Plan. *Id.* 103:12–14; *see also* Supp. Compl. ¶¶ 16, 18, 177–180 (evidencing GRACE's ongoing concerns with 2023 Plan). GRACE did not only share the concerns of how other organizations and individuals were being treated. Robinson Dep. 103:12–18.

XI.   **Plaintiff Engage Miami**

72. Undisputed.

---

[5] As written, this paragraph does not assert a fact. Plaintiffs assume the sentence has typos, and should read: "GRACE did not believe that the new Plan sent the message to its members that their commissioner's job is to represent the predominant racial group."

73. Undisputed.

74. Undisputed.

75. Undisputed.

76. Undisputed.

77. Undisputed.

## ADDITIONAL FACTS

78. Plaintiff Cooper is a member of GRACE. ECF No. 130-3 (Cooper Dep.) at 41:16–17.

79. Plaintiff Cooper is a member of one of GRACE's constituent members, the Coconut Grove Village West Homeowners and Tenants Association (HOTA). *Id.* at 80:12–15, 80:24–81:4.

80. Plaintiff Cooper is a resident of District 2 under both the 2022 and 2023 Plans. *Id.* at 12:16–13:1.

81. Plaintiff Engage Miami has members who reside in all five City Commission districts under both the 2022 and 2023 Plans. Pelham Dep. 25:7–12, 27:7–17; Ex. 2 (Engage membership list noting each member's commission district).

82. The South Dade NAACP and Miami-Dade NAACP objected to the City's requests for specific information about its members protected from disclosure by the associational privilege. Ex. 3 (Miami-Dade NAACP's Responses to Def.'s First Request for Production) at 2, 5–6; Ex. 4 (South Dade NAACP's Responses to Def.'s First Request for Production) at 2, 5–6.

83. The South Dade NAACP and Miami-Dade NAACP informed the City that they would submit declarations and/or provide testimony at the appropriate stage of litigation verifying that they have members who reside in the relevant Commission districts. Ex. 3 at 5–6; Ex. 4 at 5–6.

Respectfully submitted this 27th day of November, 2023,

 /s/ *Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
Janine M. Lopez (FBN 1038560)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Gregory P. Luib*
**Dechert LLP**
1900 K Street NW
Washington, DC 20006
(202) 261-3413
gregory.luib@dechert.com

Neil A. Steiner*
Julia Markham-Cameron*
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com
julia.markham-cameron@dechert.com

Christopher J. Merken*
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2380
christopher.merken@dechert.com

*\* Admitted pro hac vice*

*Counsel for Plaintiffs*