IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

## PLAINTIFFS' RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT

To obtain summary judgment dismissing Plaintiffs' claims, the City bears the burden of showing that there is not a single "genuine dispute as to any material fact." Fed. R. Civ. P. 56(c). Unable to attack the merits of Plaintiffs' claims, the City (again) challenges Plaintiffs' standing. The City's arguments (again) fail. The Court should deny the Motion for Summary Judgment (ECF No. 131) (the "Motion" or "Mot.").

### ARGUMENT

**I. Plaintiffs have indisputably suffered an injury-in-fact; at worst, there is a genuine dispute as to that issue.**

The Motion is premised on the City's continued mischaracterization or misunderstanding of Plaintiffs' sole racial gerrymandering claim. Plaintiffs' claim is that the five City Commission districts are racial gerrymanders that violate the Fourteenth Amendment's Equal Protection Clause: that the City drew these districts with race as the predominant factor, and that the City's use of race was not narrowly tailored to a compelling interest.

The constitutionally cognizable harm—the injury-in-fact—in a racial gerrymandering case is the use of race to draw the districts: the fact that Plaintiffs are classified based on their race. *Ala. Legis. Black Caucus v. Alabama* (*ALBC*), 575 U.S. 254, 263 (2015) ("Those harms are personal.

1

They include being personally . . . subjected to a racial classification, as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group.") (cleaned up). "Where a plaintiff resides in a racially gerrymandered district, [] the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action." *United States v. Hays*, 515 U.S. 737, 744–45 (1995) (cleaned up).[1] The City subjected the Individual Plaintiffs and the Organizational Plaintiffs' members to a racial classification. That is how they are injured. That is why they are suing. And that harm satisfies Article III's cognizable harm requirement.

### A. Organizational Plaintiffs

An organization has associational standing to assert racial gerrymandering claims where, as here, the organization's members "would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claims asserted nor the relief requested requires individual[] members' participation in the lawsuit." *ALBC*, 575 U.S. at 269 (cleaned up). There is no serious dispute that the Organizational Plaintiffs meet each of these elements; there is certainly sufficient factual evidence of each element to enable Plaintiffs to proceed to trial. Indeed, the City does not dispute the latter two prongs, instead focusing on whether the Organizational Plaintiffs have members with standing to sue in their own right. "[A] member

---

[1] The City relies extensively on *Hays* to argue against Plaintiffs' standing. Mot. at 2, 6, 12–14, 16. But the *Hays* plaintiffs did not live in the district they challenged as racially gerrymandered. 515 U.S. at 739. The Supreme Court thus held that their complaint was "only a generalized grievance against governmental conduct of which [they] do[] not approve." *Id.* at 745. Here, by contrast, Plaintiffs have shown "they, personally, have been subjected to a racial classification." *Id.* at 739. No more is required.

of an association would have standing to sue in his or her own right when that member resides in the district that he alleges was a product of racial gerrymander." *Id.* (quotations omitted). The evidence confirms that each Organizational Plaintiff has members who do.

**Engage Miami:** The City does not dispute that Engage Miami has members in every district, nor could they. ECF No. 134 (Pls.' SOMF) ¶ 81. Rather, the City argues that Engage had a duty to "verif[y] whether [sic] the race or ethnicities of its members to know whether they are or are not the predominant race in any district." Mot. at 11. The City provides no legal support for that claim, because there is none—all Engage must show to demonstrate standing is that a "member resides in the district that [it] alleges was a product of a racial gerrymander."[2] *ALBC*, 575 U.S. at 269. Engage has done precisely that for all five Commission districts.

**NAACP Branches:** Under the one-plaintiff standing rule, the Court need not look beyond Engage's standing. *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1195 (11th Cir. 2009). But the City's attacks on the standing of other Plaintiffs are likewise meritless. Contrary to the City's assertions, the deposition testimony of the NAACP Branches' corporate

---

[2] This binding precedent is also logical. For example, a Hispanic District 3 resident (like Plaintiff Miro) has been placed in District 3 because of his race. A Black District 3 resident (like Plaintiff Johnson) has also been subject to a racial classification. Both have standing to challenge the racial gerrymandering to which they are subjected. *See, e.g.*, *Cooper v. Harris*, 581 U.S. 285, 296 (2017) (Black residents challenged predominantly Black districts); *Miller v. Johnson*, 515 U.S. 900, 909 (1995) (white residents challenged majority-Black district); *Jacksonville Branch of NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229, 1271 (M.D. Fla. 2022) (Black residents challenged both majority-Black and majority-white districts). Engage need not know the races of each of its members to establish its standing.

3

representatives demonstrate that both have members in the relevant districts (Districts 1, 2, 3, and 5 for the Miami-Dade NAACP; Districts 2 and 4 for the South Dade NAACP). Pls.' SOMF ¶¶ 51, 55. Both NAACP Branches have "put forth specific facts supported by evidence" that they have members residing in the relevant challenged districts. *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018).

To avoid this inescapable conclusion, the City argues that associational standing requires the identification of particular members' *names*. Mot. at 9–10. But courts have held to the contrary. *See, e.g.*, *Fla. State Conf. of NAACP Branches v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (recognizing that the Circuit does not "require[] that the organizational plaintiffs name names" where members face prospective harm); *see also Doe v. Stincer*, 175 F.3d 879, 882, 884 (11th Cir. 1999) (ruling that the Circuit "ha[s] never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought"); *Ohio A. Philip Randolph Inst. v. Householder*, 367 F. Supp. 3d 697, 731 (S.D. Ohio 2019). And here, the NAACP Branches properly objected to the City's intrusive requests for specific information about their members on grounds of associational privilege, and the City never sought to compel further discovery as to the Branch members' specific identities. Pls.' SOMF ¶ 82. The NAACP Branches also explained that they would provide testimony at trial describing the manner in which they verified that specific individual members reside in the relevant challenged districts. *Id.* ¶ 83. Accordingly, both NAACP Branches have "put forth specific facts supported by evidence" that they have members with standing. *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018). No more is required of them.

**GRACE:** The same is true of GRACE. GRACE is an organization made up of both organizations and individuals. Pls.' SOMF ¶ 64. Members of GRACE's constituent organizations

are also members of GRACE. *Id.* GRACE's corporate representative testified that GRACE has members (and its constituent organizations have members) who reside in the relevant challenged districts (Districts 2 and 4 under the 2022 Plan, and District 2 under the 2023 Plan). *Id.* ¶ 66. Moreover, Plaintiff Cooper also testified that she is a member of GRACE, a member of one of GRACE's constituent organizations, and a District 2 resident. *Id.* ¶¶ 78–80. GRACE has made a sufficient showing.[3]

The cases the City cites to the contrary are inapposite. In *National Alliance for the Mentally Ill, St. Johns Inc. v. St. Johns County*, the organization made no showing that its members would be injured by the challenged practice (a decision not to fund a mental health treatment facility) at all, and thus that it could not show "its members would otherwise have standing to sue in their own right." 376 F.3d 1292, 1296 (11th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Similarly, in *Anderson v. City of Alpharetta*, the NAACP failed to show that *any* of its members were injured because of the challenged action (the city's refusal to approve public housing on a particular site), among other defects. 770 F.2d 1575, 1581–82 (11th Cir. 1985) (holding that the NAACP's proffered list of members "does not establish the eligibility of any of the individuals for public housing if it were constructed on that

---

[3] Even if GRACE did not itself have individual members, GRACE would also have standing to bring claims on behalf of the individual members of its constituent organizations. *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 9–10 (1988) (holding that consortium organization has standing to sue on behalf of constituent organizations' members, as long as those constituent organizations would have standing to sue); *Perez v. Abbott*, 267 F. Supp. 3d 750, 791 n.51 (W.D. Tex. 2017), *aff'd in relevant part*, 138 S. Ct. 2305 (2018); *Perez v. Abbott*, 253 F. Supp. 3d 864, 931 n.82 (W.D. Tex. 2017) (collecting cases).

site").

*   *   *

Accordingly, the Organizational Plaintiffs have standing to pursue their racial gerrymandering claims against the City.

### B. Individual Plaintiffs

The Individual Plaintiffs, too, have put forward sufficient evidence to establish injury-in-fact under *Hays*' bright-line rule. None of the City's sideshow questions[4] is relevant or negates Plaintiffs' legal claims of Fourteenth Amendment racial gerrymandering. With respect to Plaintiffs Cooper, Johnson, Valdes, and Miro, the City does not dispute that they live in their respective challenged districts. Nor does the City dispute that Plaintiff Contreras lived in her challenged district under the 2022 Plan when the action was filed, and lived in the district under the 2023 Plan when it was enacted—all she needs to sustain her damages claims. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

These facts are the beginning and end of the standing inquiry under *Hays*: "Where a plaintiff resides in a racially gerrymandered district, [] the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action." 515 U.S. at 744–45 (citation omitted).

---

[4] *E.g.*, whether a plaintiff moves into an already-drawn district or the district is drawn while they live there, whether a plaintiff has an issue with their district's overall demographic makeup, whether a plaintiff has a problem with the particular numbered district they live in, whether a plaintiff objects to their commissioner's race, whether a plaintiff stays in the same district during redistricting or is moved between districts.

## II. Plaintiffs' alleged injuries are redressable.

When Plaintiffs' sole Fourteenth Amendment racial gerrymandering claim is properly considered, *see supra* 1–2, the redressability of Plaintiffs' injuries is obvious. Plaintiffs' injuries will be redressed when they are no longer subject to a racial classification—that is, when they live in districts that are not drawn predominantly based on race, or where the use of race is narrowly tailored to a compelling interest. The Court should reject the City's various attempts to obfuscate this basic principle.

*First*, the City's obsession with the overall racial demographics of each district misses the point. (Indeed, it supports Plaintiffs' contention that the City has always been, and remains, obsessed with the overall racial demographics of each district.) The legal test is not whether an alternative plan has "significantly different demographics" than the challenged plan. Mot. at 15. A properly drawn map could have district-level demographics similar to the unconstitutional districts. As long as the remedial districts are not race-based or otherwise comport with strict scrutiny, and "completely correct[]—rather than perpetuate[]—the defects that rendered the original districts unconstitutional," they could have any range of district-level demographics. ECF No. 94 at 16 (quoting *Covington I*, 283 F. Supp. 3d at 431).

For example, the court in *Jacksonville* struck down a district as intentionally packed with Black voters at 57.4%, then properly ordered a remedy that increased the district's Black population to 84.2%. The court struck down two other districts as having been stripped of Black voters, and the constitutionally valid remedial map barely changed their overall racial composition (from 62.4 to 62.9% white and from 53.4 to 55.9% white). 635 F. Supp. 3d at 1247, 1270; Austin Rep. at 11, *Jacksonville*, No. 3:22-cv-493 (M.D. Fla. July 22, 2022), ECF No. 34-18; Corrected Fairfax Rep. at 135, *Jacksonville*, No. 3:22-cv-493 (M.D. Fla. Nov. 22, 2022), ECF No. 92-1; *see*

*also Bethune-Hill v. Va. State Bd. of Elections*, 368 F. Supp. 3d 872, 883, 885 (E.D. Va. 2019) (ordering racial gerrymandering remedy that "slightly" decreased BVAPs in unconstitutional districts from 55.4 to 52.5%, from 55.2 to 52.3%, and from 57.2 to 54.4%); *compare Perez v. Abbott*, 267 F. Supp. 3d at 791–94 (striking down district as racial gerrymander because lawmakers changed draft plans to reach an unjustified 50% Hispanic target), *with Perez v. Texas*, slip op. at 1–2, No. 5:11-cv-360 (W.D. Tex. May 28, 2019), ECF No. 1631 (ordering remedy that "eliminates the changes that led this Court to find racial gerrymandering" despite "maintain[ing] [the district's] majority [Hispanic] status").

***Second***, the City still refuses to accept that "[w]hether Plaintiffs' proposed maps (which do not form a basis of their claim) could pass constitutional muster has no bearing on whether the Enjoined Plan or Remedial Plan can do the same." ECF No. 132 at 15. "It is not Plaintiffs' proposed maps from the remedial stage of this case that are on trial." *Id.* Whether Plaintiffs' plans "materially change[] the racial makeup of the City's districts" is irrelevant.[5] Mot. at 14.

## CONCLUSION

The Court should deny the City's Motion.

---

[5] That said, the City misstates the demographic distinctions between the 2023 Plan and Plaintiffs' proposals. The City asserts that Plaintiffs' four proposed maps each contain "three supermajority Hispanic districts, one VRA-required Black district, and a plurality district." Mot. 17. But District 2 in P1 is not a "plurality district" "where no [] racial or ethnic group is a majority," ECF No. 130-10 at 84:16–17, but rather a *fourth* majority-Hispanic district, at 57.9% HVAP and 56.3% HCVAP. City's SOMF ¶ 7.

Respectfully submitted this 27th day of November, 2023,

 /s/ *Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
Janine M. Lopez (FBN 1038560)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Gregory P. Luib*
**Dechert LLP**
1900 K Street NW
Washington, DC 20006
(202) 261-3413
gregory.luib@dechert.com

Neil A. Steiner*
Julia Markham-Cameron*
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com
julia.markham-cameron@dechert.com

Christopher J. Merken*
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2380
christopher.merken@dechert.com

*Admitted pro hac vice*

*Counsel for Plaintiffs*