UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS, and STEVEN MIRO,

       Plaintiffs,

v.

CITY OF MIAMI,

       Defendant.
_____/

## DEFENDANT'S REPLY STATEMENT OF MATERIAL FACTS

Pursuant to Southern District of Florida Local Rule 56.1, Defendant, City of Miami (the "City"), hereby files its Reply to Plaintiffs' Statement of Material Facts (DE 134), and state as follows:[1]

## DEFENDANT'S REPLY IN SUPPORT OF ITS STATEMENT OF MATERIAL FACTS

7. **Disputed.** Plaintiff does not point to any "significant" differences between the district level demographics of P1, P2, P3, and P4 as compared to the New Plan. Indeed, like the New Plan, P1, P2, P3, and P4 all have three supermajority Hispanic districts and a Black VRA district in District 5. (DE 130-6 ("Contreras Dep.") 33:21–35:21, 41:2–42:9; 45:10–13); (DE 130-3 ("Cooper Dep.") 65:1–71:8, 106:3–13); (DE 130-6 ("Miro Dep.") 62:5–63:11, 64:14–16).

---

[1] As more fully stated in the Reply, none of these "disputes" rise to the level of creating a genuine issue of material fact.

11.     **Disputed.** Cooper testified that her objections to District 2 are about "trying to keep [Coconut Grove] together "regardless of [] race or where [people] live as part of the Grove." (Cooper Dep. 87:2–15).  Cooper's basis for believing that part of District 2 going to District 4 in the Enjoined Plan was "that was taking away population from West Grove and also throwing it into another district and enhancing that district's ability to get more resources[,]" which has nothing to do with race. (Cooper Dep. 36:14-23). Cooper further testified the City's process for drawing its Plans was "unfair" because it diminished the West Grove's ability to "influence [] anything that was going to happen for any Coconut Grove property owner[] or resident[]" and to "get[] what [it] wanted" in terms of "improvements[,]" which does not relate to race.  (Cooper Dep. 82:13–19, 85:8–86:6). Cooper agreed that the New Plan returned Black residents to District 2.  (Cooper Dep. 89:5–13).

13.     **Disputed.** Cooper's testimony was unequivocal. While she testified being "*worried about the diluting of influence* of Black residents in other parts of the city[,]" which referred to "Black residents in District 5" (Cooper Dep. 41:3-15) (emphasis added), she expressly testified that she did not feel that either the 2022 or the 2023 plan actually diluted the voting power of Black voters. (Cooper 57:21-24).

17.     **Disputed.** Miro specifically testified that, with respect to the Enjoined Plan, his issue with respect to District 3 was that it crossed US-1 into Coconut Grove. (Miro Dep. 21: 9-25).

18.     **Disputed.** Miro's testimony is clear: he believes that there were "[c]ertain demographics of packing" in District 3. (Miro Dep. 38:6-12).  When asked to define what he meant by "certain demographics," Miro testified that "[Commissioner Carollo's] voter base, which is 65-plus living in affordable housing, [] are the ones that he panders to . . . [a]nd therefore it dilutes voices like

2

[Miro's]." (Miro Dep. 38:13–21). That was Miro's "opinion as to how they chose their constituents," which has nothing to do with race. (Miro Dep. 38:22-25).

31. **Disputed.** Plaintiff fails to respond to the undisputed facts in this paragraph. The undisputed fact in this paragraph did not speak to whether the racial composition of District 4 had anything to do with Contreras' decision to move there in August 2022 and, therefore, Plaintiffs fail to respond to the undisputed facts contained in this paragraph. Instead, as Plaintiffs' own record citation in response to this paragraph makes clear, it is undisputed that Contreras testified she did not object to moving into District 4 because Hispanics were the predominant racial group in this district. (Contreras Dep. 12:7-23).

32. **Disputed.** Plaintiff fails to respond to the undisputed facts in this paragraph. The City acknowledged in this paragraph that Contreras "alleged her injury was being 'packed' by the Enjoined Plan" and, therefore, Plaintiffs cannot dispute that point by agreeing with it. This paragraph did not speak to whether the racial composition of District 4 had anything to do with Contreras' decision to move there in August 2022, and Plaintiffs' argument on that point is of no moment. Importantly, Plaintiffs' response does not address (and does not dispute) that Contreras testified that redistricting made District 4 less packed in the Enjoined Plan and the New Plan. (Contreras Dep. 61:19-62:2).

40. **Disputed.** While Contreras described *why* she believes District 4 was atypical in shape, she did not articulate what issue she had with those allegedly atypical shapes. (Contreras Dep. 22:11-23:7). Contreras had an issue with "[t]he Shenandoah area," which is in District 3, but believes that its "up to legal experts of redistricting" what district Shenandoah should be in, and does not have an opinion on Shenandoah because she was not a resident of Shenandoah or District 3. (Contreras Dep. 22:19-23:7). Yet, Contreras "recognize[s] that sometimes redistricting

boundaries can be strange because you need to keep the population equal between the districts[.]" (Contreras Dep. 53:25-54:5).

41.     **Disputed.** Contreras was specifically asked about her issues with the New Plan and, despite testifying to having issues with the way other districts were drawn, she did not have any issues with how District 4 was drawn. (Contreras 54:18-56:21, 59:1-2). Plaintiffs' attempt to claim that "Contreras objects to the City of Miami using race[,]" generally, is not a response to the specific testimony the City cited to in support of this paragraph, and it is therefore undisputed.

44.     **Disputed.** Valdes testified objecting to the Enjoined Plan putting her in the majority Black District 5 because it "could dilute the representation" that she might have in that District since she is not the predominant racial group. (DE 130-7 ("Valdes Dep.") 16:2–24). That grievance was redressed by the New Plan, where Valdes was put back in the predominantly Hispanic District 2. (Valdes Dep. 20:22–21:5, 24:3–12, 59:16–21). Valdes testified that she did not have a problem being in District 2 or being represented by the currently-sitting Hispanic Commissioner. (Valdes Dep. 24:13–17, 60:5–10). Additionally, Valdes has no race-based objection to the New Plan and only takes issue with Commissioner Carrollo's Coconut Grove house being included in District 3. (Valdes Dep. 28:20–30:23, 31:14–17). Given that Valdes (1) is in the predominately Hispanic District 2 under the New Plan; and (2) has no issue being placed in the predominantly Black District 5 under Plaintiffs' Maps or represented by a Black commissioner, she testified that she "do[es]n't think [she] ha[s] an issue" with her representation anymore. (Valdes Dep. 67:9–20, 69:15–19).

46.     **Disputed.** Valdes clarified the testimony to which Plaintiffs cite in response to this paragraph, and confirmed that she could not point to anything relating to her or her district that indicated that she was placed in her district because of her race. (Valdes Dep. 68:24-69:11). Valdes

4

further clarified that she did not have any issue being a "Latina" in a plurality Hispanic district in the New Plan. (Valdes Dep. 69:15-19).

47.     **Disputed.** Plaintiffs' response parrots, rather than disputes, the fact contained in this this paragraph. It is undisputed that Valdes testified she does not have a problem with having been placed in a plurality District 2 under the New Plan, and "do[es]n't think [she] ha[s] an issue" with her representation anymore. (Valdes Dep. 67:9–20, 69:15–19).  With respect to Valdes "continu[ing] to be concerned that the City's Commission's maps are 'based on people's race . . .'" Valdes clarified that testimony and confirmed that she could not point to anything relating to her or her district that indicated that she was placed in her district because of her race. (Valdes Dep. 68:24-69:11).

51.     **Disputed.** While the Miami-Dade NAACP's corporate representative claimed to know members that lived in every District in the City, she refused to identify any during her deposition. (DE 130-8 ("MD NAACP Dep.") 71:21-73:7; 91:5-8). Indeed, Plaintiffs did not dispute this fact in response to paragraph 52.

53.     **Disputed.** Plaintiffs' response is not supported by their citation to the record. The Miami-Dade NAACP's corporate representative testified that District 5 in all the maps is generally the same area. (MD NAACP Dep. 46:8-16).  The Miami-Dade NAACP did not have any specific objection about how either the Enjoined Plan or the New Plan was configured. (MD NAACP Dep. 30:23-32:1).

54.     **Disputed.** Plaintiffs improperly cite to factual allegations in the Supplemental Complaint an attempt to create a dispute of material fact. The Miami-Dade NAACP was specifically asked whether it had "any specific objection to how" the Enjoined Plan and/or the New Plan were configured, and it did not have any. (MD NAACP Dep. 30:23-32:1).

55.     **Disputed.** Plaintiffs' response does not dispute that the South Dade Branch of the NAACP does not keep a list of its members. Plaintiffs' record citation in response to this paragraph only furthers this point: "The information is not available to us. It's only at a national level." (DE 130-9 ("South NAACP Dep.") 23:15-18).   **Undisputed** that South Dade NAACP's corporate representative testified that she knows people in District 2 and "possibly of a couple of people" in District 4. (South NAACP Dep. 24:2-10).

56.     **Disputed.** Plaintiffs' response does not dispute that the South Dade Branch of the NAACP does not keep a roster, and that the only way to verify where members live is if someone knows them personally. Plaintiffs' claim that the information is "available at the national level" is belied by the fact that national level information is not available to South Dade NAACP. (South NAACP Dep. 23:15-18) ("<u>The information is not available to us</u>. It's only at a national level.") (emphasis added).

57.     **Undisputed** that the cited testimony appears to discuss GRACE board members, and not South Dade NAACP**.**  Immaterial to the Motion.

59.     **Disputed.** South Dade NAACP's statement is not in dispute with the material facts in this paragraph.

60.     **Disputed.** South Dade NAACP's statement is not in dispute with the material facts in this paragraph. South Dade NAACP was specifically asked whether it believed that the piece of District 3 in Coconut Grove that captured Commissioner Carrollo's house had been done for racially motivated reasons, and South Dade NAACP testified that it "wouldn't know that" and did not "have an opinion one way or the other." (South NAACP Dep. 39:2-14).

62.     **Disputed.** Plaintiffs' reference to the Supplemental Complaint is not "record material" under Local Rule 56.1(b)(1)(B) and cannot create issues of fact. It is undisputed that South Dade

NAACP could not articulate any objection to the New Plan. (South NAACP Dep. 48:3-11, 54:23-55-23; 82:13-24).

64.     **Disputed.**  GRACE's Vice Chair, Carolyn Donaldson, testified that individuals cannot become members of GRACE. (South NAACP Dep. 82:1-9).  GRACE's corporate representative testified that, in order to become a member of GRACE, an organization would have to fill out an application "and the board of directs [sic] would vote to allow an organization in." (DE 130-1 ("GRACE Dep.") 13:21-14:1). GRACE's corporate representative testified that there are no applications for individuals, and that participation in a meeting is enough for membership as an individual in GRACE. (GRACE Dep. 14:2-20).

66.     **Disputed.** GRACE's statement is not in dispute with the material facts in this paragraph. GRACE's corporate representative was asked whether he knew if GRACE "ha[s] residents in all the district of the city[,]" and GRACE did not know. (GRACE Dep. 63:11-13).  When asked what other districts GRACE members reside in outside of District 2, GRACE did not know. (GRACE Dep. 61:2-6).  GRACE's corporate representative did not know whether GRACE identified which districts its members live in. (GRACE Dep. 61:9-13).

67.     **Disputed**. GRACE's initial concern was keeping the West Grove in District 2. (GRACE Dep. 103:8-11). Regardless, all of GRACE's "core concerns" with respect to the Enjoined Plan were addressed with the passage of the New Plan. (GRACE Dep. 103:12-22) ("Grace's initial concerns were addressed.").

7

70. **Disputed.**[2] Plaintiffs' reference to the Supplemental Complaint is not "record material" under Local Rule 56.1(b)(1)(B), and cannot create issues of fact. **Undisputed** that GRACE's corporate representative testified that he did not know whether GRACE would say that statement applies to its members. (GRACE Dep. 66:9-13).

71. **Disputed.** Plaintiffs' reference to the Supplemental Complaint is not "record material" under Local Rule 56.1(b)(1)(B), and cannot create issues of fact. Nowhere in Plaintiffs' citation to page 103 of the GRACE corporate representative transcript does the testimony stand for the proposition that GRACE's concerns regarding the New Plan were anything other than GRACE's concerns of how other organizations and individuals were being treated, and not GRACE's concerns for itself or its members. When GRACE stated that its concerns had "evolved," its corporate representative was specifically asked whether GRACE "shared concerns of the way other organizations and other individuals were being treated[,]" to which GRACE answered in the affirmative. (GRACE 103:12-18). GRACE's corporate representative was also asked whether it was fair to characterize GRACE's "core concerns [having been] addressed" and GRACE "just shared the concerns of others[,]" to which GRACE answered that its "initial concerns were addressed." (GRACE Dep. 103:19-22).

## DEFENDANT'S RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS

78. **Disputed**. GRACE has a process for organizations to become members of GRACE, but not for individuals. (GRACE Dep. 13:21-14:20); however GRACE's Corporate Representative

---

[2] Paragraph 70 in Defendant's Statement of Facts should read: "GRACE did not believe that the New Plan sent the message to its members that their commissioners job is to represent the predominant racial group."

testified that he did not know if anyone verified whether they had members living in each district. **Undisputed** that Cooper *testified* being a member of GRACE.

79. **Undisputed.**

80. **Undisputed.**

81. **Disputed.** Plaintiffs' reference to Exhibit 2 (Engage's purported membership list noting each member's commission district) is unauthenticated, submitted without testimonial explanation of what it is or what is being presented, is not "record material" under Local Rule 56.1(b)(1)(B), and cannot create issues of fact.  Engage Miami's corporate representative testified that Engage Miami maintains a membership list that includes residential addresses, but Engage Miami does not verify residential addresses after members are on-boarded and fill out a membership form with their address. ((DE 130-10 ("Engage Dep.") 25:4-6, 27:7-17, 27:24-28:8).

82. **Disputed.** Immaterial to the City's Motion. Plaintiffs South Dade NAACP and Miami NAACP objected to the City's request for "[d]ocuments demonstrating that [their] members reside in all five districts of the Enacted Plan," arguing that "specific information about Plaintiff[s'] members . . . is protected from disclosure by the First Amendment absent a compelling need for the information." Plaintiffs South Dade NAACP and Miami NAACP never produced any such information during the course of discovery, including at the depositions of their Corporate Representatives.

83. **Disputed.** Immaterial to the City's Motion. Plaintiffs South Dade NAACP and Miami NAACP stated that they would submit a declaration and/or provide testimony at the appropriate stage of this litigation verifying they have "members who reside in all five districts of the Enacted Plan," as opposed to "in the relevant Commission districts" as Plaintiffs include in their statement in response.  Plaintiffs South Dade NAACP and Miami NAACP refused or were unable to provide

9

any such testimony during their corporate representative depositions. (MD NAACP Dep. 76:16-78:20; 91:5-21); (South NAACP Dep. 16:19-24, 23:15-24, 24:2-21).

Respectfully submitted,

GRAYROBINSON, P.A.

By: *s/ George T. Levesque*
GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Florida Bar No. 991562
George T. Levesque
Florida Bar No. 55551
Andy Bardos
Florida Bar No. 822671
301 S. Bronough Street
Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile: (850) 577-3311

Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358
Email: Marlene.Quintana@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171

Office of the City Attorney<br>
444 S.W. 2nd Avenue<br>
Miami, FL 33130<br>
Telephone: (305) 416-1800<br>
Facsimile: (305) 416-1801<br>
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/* George T. Levesque<br>
Counsel for City of Miami

#52286873 v1

11