UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI,

    Defendant.

_____/

## ORDER

THIS CAUSE came before the Court upon Defendant City of Miami's ("Defendant" or "City") Motion for Final Summary Judgment. ("Mot.") (ECF No. 131). Plaintiffs filed a response,[1] ("Resp.") (ECF No. 135), and Defendant filed a reply, ("Reply") (ECF No.137). The Motion is now ripe for review.

**I.    INTRODUCTION**

After nearly a year of litigation, the entry of a preliminary injunction, a complicated remedial process, and the denial of a motion to dismiss, Defendant raises only one argument in the instant Motion: Plaintiffs do not have standing to pursue their claim. Consistent with its strategy of repeatedly asserting arguments that the Court has already rejected numerous times, Defendant urges the Court to consider for the third time whether Plaintiffs have standing. *See* (ECF No. 132 at 2) ("Like a broken record, Defendant once more raises the same unavailing arguments. Once

---

[1] Plaintiffs in this Action are Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras, Steven Miro (collectively, "Individual Plaintiffs"), and GRACE, Inc., Engage Miami, Inc., South Dade Branch of the NAACP and Miami-Dade Branch of the NAACP (collectively, "Organizational Plaintiffs"). The Court uses the term "Plaintiffs" to refer to the Individual and Organizational Plaintiffs jointly.

more, the Court rejects them."). The third time will not be the charm. Repeating an argument multiple times will not transform a losing legal argument into a winner, no matter how many times Defendant chooses to raise it.

The question of whether Plaintiffs have standing is rather simple, and the Court has already answered in the affirmative. *See* Section II, *infra*. A review of the instant Motion demonstrates that Defendant misunderstands the very basics of what constitutes standing for the purposes of a Fourteenth Amendment gerrymandering claim. For the following reasons, the Court finds that Plaintiffs have standing and denies Defendant's Motion.

## II. BACKGROUND AND PROCEDURAL HISTORY

The Parties are surely familiar with the background of this case, and thus, the Court recites the factual background only insofar as it is relevant to the adjudication of the instant Motion.[2]

On March 24, 2022, the Miami City Commission passed Resolution 22-131 (the "2022 Enacted Plan" or "Enjoined Plan"). ("Am. Compl.") (ECF No. 23 ¶ 5). Four community and civil rights organizations and five individual Miamians subsequently brought suit alleging that the 2022 Enacted Plan was racially gerrymandered in violation of the Fourteenth Amendment. *Id.* ¶ 6. On February 10, 2023, Plaintiffs filed a motion seeking a preliminary injunction to enjoin the City from using the 2022 Enacted Plan in upcoming elections. *See* (ECF No. 26). The Court granted the preliminary injunction motion after undergoing a thorough analysis of the 2022 Enacted Plan and the preliminary injunction factors. *See* (ECF No. 60) (adopting in full the Report and Recommendation at ECF No. 52)).

---

[2] The Court fully described the factual background and procedural history of this Action in its prior order on the motion to dismiss. *See* (ECF No. 132 at 2–11). Because Defendant does not dispute most of Plaintiffs' factual allegations in the instant Motion, the Court does not find that a detailed recitation is necessary here.

Upon granting the preliminary injunction,[3] the Court issued a scheduling order that would result in the implementation of an interim remedial map by August 1, 2023, the date by which Plaintiffs *and* Defendant averred was the latest the Miami-Dade Board of Elections needed an operative map to conduct the upcoming November elections. *See* (ECF No. 69). Defendant passed an interim remedial map, R-23-271 ("Remedial Plan") and filed a notice with the Court on June 30, 2023. *See* (ECF No. 77). Plaintiffs filed objections to the Remedial Plan. *See* (ECF No. 83). After careful review, the Court found that the Remedial Plan perpetuated the unconstitutional aspects of the Enjoined Plan and failed to remedy the racial gerrymandering that was substantially likely to exist therein. *See generally* ("Remedial Order") (ECF No. 94). Because Defendant could not enact a constitutional remedial map by August 1, 2023, and because there was no time for the City Commission to draw a new map or for the Court to order a special master to create an alternative plan, the Court faced the unwelcome burden of crafting a new map for implementation. *See id.* at 40–41. In doing so, the Court found that Plaintiffs' alternative map P4 was a sufficient constitutional remedy to the Enjoined Plan and adopted it as the Court's interim remedial map ("Court's Map"). *See id.* at 41–50.

That same day, on July 31, 2023, Defendant filed an emergency motion to stay the Court's Remedial Order with the Eleventh Circuit. *See* (ECF No. 97). The appeal did not challenge the issuance of the preliminary injunction. The sole question was whether to allow the Court's Map to stay in place for the November election, or alternatively, to stay the Remedial Order and proceed with the Remedial Plan that the Court already found unconstitutional. *See* (ECF No. 132 at 10 n.10). Relying in part on Defendant's misrepresentations about the feasibility of conducting the

---

[3] Defendant initially appealed the Court's order granting the preliminary injunction but voluntarily dismissed it on July 13, 2023. *See* (ECF No. 88).

November elections with the Court's Map, *see* (ECF No. 132 at 8–11), a divided Eleventh Circuit Panel granted a stay solely on *Purcell* grounds. *See Grace et. al v. City of Miami*, No. 23-12472, 2023 WL 528232 (11th Cir. 2023).[4]  Thus, the November elections went forward under the unconstitutional Remedial Plan.

Defendant then filed a motion to dismiss. *See* (ECF No. 117). Therein, Defendant raised a litany of already-rejected arguments. *See generally id.*  For example, Defendant argued that Plaintiffs lacked standing and that the Action was moot. *See id.* at 14–15. Defendant also argued that the Court should disregard the stated intent of legislators to racially gerrymander each City Commission District because the Remedial Plan was, in Defendant's view, not a racial gerrymander but rather a "reflect[ion] [of] the demographic reality" of the City. *Id.* at 11–12. The Court rejected each of Defendant's arguments and found that Plaintiffs sufficiently alleged that each City Commission District was and continues to be racially gerrymandered in violation of the Fourteenth Amendment. *See generally* (ECF No. 132).

Now, Defendant moves for summary judgment on the grounds that multiple Plaintiffs lack standing. Relevant to this Motion, individual Plaintiffs Cooper, Miro, Johnson, and Valdes currently reside in various Miami City Commission Districts.[5] ("D's 56.1") (ECF No. 130 ¶¶ 8, 14, 21, 43). Plaintiff Miami-Dade NAACP's corporate representative asserts that it has members residing in each District. *Id.* ¶ 52 (citing ("MD NAACP Dep.") (ECF No. 130-8)). Plaintiff South

---

[4] *But see Rose v. Raffensperger*, 143 S. Ct. 58 (mem.) (Aug. 19, 2022) (vacating an Eleventh Circuit stay of a district court's injunction because the Eleventh Circuit (1) erroneously applied the *Purcell* principle when respondent made previous representations to the district court that the schedule on which the court proceeded was sufficient to effectuate relief, and (2) failed to analyze the emergency motion under the traditional stay factors pursuant to *Nken v. Holder*, 556 U.S. 418 (2009)).

[5] At the time this lawsuit was filed, Plaintiff Contreras resided in District 4, but has since moved out of Miami. *See* D's 56.1 ¶ 30.

4

Dade NAACP's board members all reside in District 2, and its corporate representative asserts that some members of the organization may reside in District 4. *Id.* ¶¶ 57–58 (citing ("SD NAACP Dep.") (ECF No. 130-9)). Plaintiff GRACE is an organization made up of churches, civic groups, nonprofits, resident homeowners, and small business owners in West Grove, which is part of Miami's City Commission Districts. *Id.* ¶ 63 (citing ("Grace Dep.") (ECF No. 130-1)). Finally, Plaintiff Engage Miami's corporate representative states that the organization has members residing in each District. *Id.* ¶ 76 (citing ("Engage Dep.") (ECF No. 130-10)). Defendant uses these factual assertions to argue that Plaintiffs lack standing. *See generally* Mot.

### III.  LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial

burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.     DISCUSSION

Defendant's sole argument on summary judgment is that Plaintiffs lack standing to bring their racial gerrymandering claim under the Fourteenth Amendment. *See generally* Mot. The Court's analysis proceeds as follows: First, the Court recites the necessary elements of standing as to both the Organizational and Individual Plaintiffs and evaluates whether the Plaintiffs suffered an injury in fact. Finding that Organizational Plaintiff Engage Miami has standing, the Court then analyzes the "one-plaintiff standing rule" and concludes that it need not analyze further whether the other Plaintiffs have standing. Next, the Court rejects Defendant's arguments purporting to dispute whether Plaintiffs suffered an injury in fact. Once the Court disposes of Defendant's arguments, the Court explains why it can redress Plaintiffs' injury.

### A.     **Each Plaintiff has Article III Standing**

As noted above, Defendant's only argument is that Plaintiffs lack standing. *See generally* Mot. In response, Plaintiffs argue that Defendant's Motion "is premised on the City's continued mischaracterization or misunderstanding of Plaintiffs' sole racial gerrymandering claim." Resp. at 1. The Court agrees with Plaintiffs—the instant Motion not only displays a clear

misunderstanding of standing jurisprudence, but also a failure to understand the basic harm that Plaintiffs allege resulted from being sorted on the basis of race.

Article III of the United States Constitution vests the judicial power in the federal courts and limits that power to "Cases" and "Controversies." U.S. Const. art. III, §§ 1–2, *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). A challenge to a plaintiff's standing to assert a claim presents a challenge to the Court's power to entertain the suit, as standing is one of the components of a justiciable case or controversy required for the Court to possess subject matter jurisdiction. *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

Moreover, an organization "has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc.*, 528 U.S. at 181 (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); *see also Ala. Legislative Black Caucus v. Alabama* ("*ALBC*"), 575 U.S. 254, 268–71 (2015) (reversing district court's *sua sponte* finding that statewide political caucus lacked standing in racial gerrymandering case where "common sense" supported an inference that the statewide political caucus had

members in every district based on the testimony of its representative that it had members in every county and the organization's representations regarding the purpose of its founding).

As to the Individual Plaintiffs, Defendant only argues that these Plaintiffs cannot satisfy the injury in fact and redressable harm prongs of the standing test. *See id.* at 11–17. Regarding the Organizational Plaintiffs, Defendant argues that each of these Plaintiffs lack standing because they have failed to demonstrate that one of their members would otherwise have standing to sue in their own right. *See id.* at 6–11. Mirroring the structure of the instant Motion, the Court first addresses the issue of standing as to the Organizational Plaintiffs.

### i.   *Plaintiffs Suffered an Injury in Fact*

The Supreme Court has explained that in the context of racial gerrymandering claims, the harm, or injury in fact, "include being 'personally . . . subjected to [a] racial classification,' as well as being represented by a legislator who believes his 'primary obligation is to represent only the members' of a particular racial group." *ALBC*, 575 U.S. at 263 (internal citations omitted) (alteration in original). A "generalized grievance against allegedly illegal governmental conduct" will not suffice to demonstrate an injury in fact. *United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974); *Ex parte Lévitt*, 302 U.S. 633 (1937) (per curiam)). Nor does a plaintiff have standing where it brings a racial gerrymandering claim "to a state considered as an undifferentiated 'whole.'" *ALBC*, 575 U.S. at 262. But "[w]here a plaintiff resides in a racially gerrymandered district . . . the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action." *Hays*, 515 U.S. at 744–45 (citation omitted). Put simply, a plaintiff satisfies the injury in fact requirement by

demonstrating that she has been subjected to a racial classification in the specific district where she resides.

With this understanding of what constitutes an injury in fact in racial gerrymandering claims, the Court turns to Defendant's argument that Organizational Plaintiffs lack standing. Defendant disputes only the requirement that each organization contains members who would otherwise have standing to sue in their own right. *See* Mot. 6–11. In essence, Defendant's argument is that that none of the Organizational Plaintiffs identified any members who suffered an injury in fact by residing in racially gerrymandered districts, and thus, the Organizational Plaintiffs do not satisfy a necessary prerequisite for the Court to find organizational standing. This argument is factually erroneous and incorrect as a matter of law.

For example, Organizational Plaintiff Engage Miami has members who reside in all five City Commission Districts under both the Enjoined and Remedial Plan. *See* ("P's 56.1") (ECF No. 134 ¶ 81); *see also* ((ECF No. 134-2) (Engage Miami's member address list indicating members residing in all five Districts)). Engage Miami's Corporate representative also explained that she had examined a workbook verifying that the organization had members residing in each City Commission District. *See* Engage Dep. 25:7–12, 27:7–17. Therefore, because the evidence demonstrates that Engage Miami's members reside in each District, and they allege each District has been racially gerrymandered, the members of Engage Miami have sufficiently alleged that they suffer an injury in fact and "therefore ha[ve] standing to challenge the legislature's action."[6]

---

[6] Defendant never actually claims that Engage Miami does not have members residing in each District. *See* Reply at 2. Instead, Defendant moves the goal posts—now saying "there is no *support* for the assertion that Engage Miami has members in any district." *Id.* (emphasis added). This assertion fails to account for the membership list (ECF No. 134-2), the testimony of Engage Miami's Corporate representative Rebecca Pelham (Engage Dep.), and Rebecca Pelham's signed declaration (ECF No. 24-34) which each assert Engage Miami has members residing in each City Commission District.

9

*Hays*, 515 U.S. at 74–45. Engage Miami's members have standing to sue in their own right and Defendant does not challenge the other necessary elements of organizational standing. *See generally* Mot. Thus, Engage Miami has organizational standing to pursue its claim.

### a. The One-Plaintiff Standing Rule Applies

Given that Engage Miami has demonstrated that they have standing, the "one-plaintiff standing rule" provides that the Court need not evaluate the standing of any other plaintiff. In multiple-plaintiff cases, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Once one of the multiple Plaintiffs here has demonstrated standing for the sole claim that they raised, the Court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977); *see also Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find California has standing, we do not consider the standing of other plaintiffs."); *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1197 (N.D. Ala. 2020) (same). This is also true where other plaintiffs are organizations. *Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (2009) ("Because Balzli has standing to raise those claims, we need not decide whether either of the organizational plaintiffs also has standing to do so."). Engage Miami has organizational standing to pursue this claim, and, thus, the Court need not address standing regarding the other Plaintiffs.[7] Defendant does not even attempt to grapple with this concept. *See generally* Mot. Nor could it.

---

[7] For the sake of thoroughness, however, the Court finds that each Plaintiff also has standing. The corporate representatives for Plaintiffs Miami-Dade NAACP, South Dade NAACP, and GRACE each indicated that they have members who reside in various City Commission Districts. *See* P's 56.1 ¶¶ 51, 55, 66 (explaining that the Miami-Dade NAACP corporate representative testified that she knows of branch members who live in Districts 1, 2, 3, and 5; the South Dade NAACP

### b. Defendant Arguments Regarding Injury in Fact Fail

The clear facts of this case mandate a finding that Plaintiffs have standing, but not to be deterred, Defendant raises two arguments urging the Court to hold to the contrary. First, Defendant invokes *Hays* to insinuate that Plaintiffs must show more than that they reside in a racially gerrymandered district to prove an injury in fact, and here, Plaintiffs are only asserting "generalized grievances." *See* Mot. at 6 ("In *Hays*, the Court held that the mere fact that appellees in that case were residents and voters of Louisiana was not sufficient to give them standing to challenge Louisiana's congressional redistricting plan."). Second, Defendant argues that the Organizational Plaintiffs lack standing because they failed to identify the *names* of any specific member who lives in the City Commission Districts. *See id.* at 7–11 (citing *Anderson v. City of Alpharetta*, 770 F.2d 1575 (11th Cir. 1985) (*Nat'l Alliance for the Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Comm'rs of St. John's County*, 376 F.3d 1292 (11th Cir. 2004)). Neither argument is availing—Defendant's invocation of *Hays* does not apply to the facts of this case, and the Eleventh Circuit does not require Organizational Plaintiffs to provide the names of its members for purposes of establishing standing.

To understand the differences between *Hays* and the instant Action, Defendant simply needed to read the first paragraph of the opinion. In *Hays*, the Supreme Court explained:

---

corporate representative testified that she knows of branch members who live in Districts 2 and 4; the GRACE corporate representative testified that its members reside in Districts 2 and 4). For the same reasons as articulated above regarding Engage Miami, these organizations would likewise have standing. So too would individual Plaintiffs Cooper, Miro, Johnson, and Valdes who currently reside in various Miami City Commission Districts. *See ALBC*, 575 U.S. at 262 (holding that an individual has standing when they reside in a district and allege that such district was racially gerrymandered in violation of the Fourteenth Amendment). Plaintiff Contreras also has standing because she lived in District 4 when the Enjoined Plan was enacted. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 ("At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset").

> Appellees Ray Hays, Edward Adams, Susan Shaw Singleton, and Gary Stokley claim that the State of Louisiana's congressional districting plan is [] a 'racial gerrymander,' and that it violates the Fourteenth Amendment. But appellees do not live in the district that is the primary focus of their racial gerrymandering claim, and they have not otherwise demonstrated that they, personally, have been subjected to a racial classification.

515 U.S. at 738–39. For that reason, the Supreme Court held that the individuals lacked standing. *See id*. That scenario is obviously distinguishable from this Action where each Plaintiff resided in the challenged Districts at the time the lawsuit was filed. Defendant's use of *Hays* to imply that Plaintiffs' concern about racial gerrymandering is a "generalized grievance," even when the facts demonstrate Plaintiffs reside in the allegedly gerrymandered Districts, demonstrates a clear misreading of *Hays* and a general indifference about the harm Plaintiffs allege. This argument does not alter the Court's standing analysis.

Defendant's second argument that the Organizational Plaintiffs must identify the names of its individual members is also incorrect. In support of its argument, Defendant asserts that the Eleventh Circuit in *Anderson* and *National Alliance for the Mentally Ill* affirmed a district court's dismissal for lack of standing when the organizational plaintiffs failed to name its members. *See* Mot. at 7–8. To Defendant, it follows that the Organizational Plaintiffs lack standing here because they failed to name specific members who reside in the Miami City Commission Districts. *See id.* at 8–11.

Defendant's reading of each holding is far too narrow, and the cases do not support the proposition for which they are asserted. In *Nat'l Alliance for the Mentally Ill*, the Eleventh Circuit found that the organizational plaintiff failed to demonstrate that any of its members would be injured by the Board of County Commissioners of St. John's County's decision not to fund a mental health residential treatment facility. 376 F.3d at 1296 (explaining that the organization only mentioned two of its members, neither of which suffered an injury, and provided no further

12

evidence that any other member would be injured by the challenged conduct). In *Anderson*, the Eleventh Circuit held that the NAACP lacked standing because no individual, including the organization's members, could show that she was injured due to the City of Alpharetta's refusal to approve public housing in a specific area. 770 F.2d at 1578 ("The action cannot proceed, however, because there is no plaintiff who has sufficiently alleged standing, none that has alleged that he was personally injured by the city's actions whatever its motivation may have been."); *see also id.* at 1582 ("The court finds that the NAACP has failed to aver adequately injury in fact, directly or derivatively to any of its members."). These cases simply do not stand for the proposition that an organizational plaintiff must provide the specific names of its members as prerequisite to establish standing.

Indeed, reading such a requirement into standing jurisprudence would be inconsistent with Eleventh Circuit precedent. *See, e.g.*, *Florida State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) ("When the alleged harm is prospective, we have not required that the organizational plaintiffs name names because every member faces a probability of harm in the near and definite future"); *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999) ( holding "we have never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought and we decline to create such a requirement"). All Plaintiffs must do is "put forth specific facts supported by evidence" that its individual members have standing. *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018). As described above, Plaintiffs have done so.

In sum, Defendant's arguments present nothing more than a halfhearted attempt to convince the Court that Plaintiffs do not have standing. Its arguments fall short factually and as a matter of law. Plaintiffs have standing.

### *ii.     Plaintiffs' Injury Is Redressable*

The Court now turns to Defendant's argument that the Court cannot redress Plaintiffs' injury. Supreme Court precedent dictates that a plaintiff suffers an injury in fact, and thus has standing, when the plaintiff can show that she resides in a racially gerrymandered district. *Hays*, 515 U.S. at 744 (holding that a plaintiff who resides in an allegedly gerrymandered district "has standing to challenge the legislature's action"); *see also* Section IV.A.i., *supra*. Implicit in these holdings is that a court can redress the harm that a plaintiff suffers from the implementation of a racial gerrymander. *Hays*, 515 U.S. at 744 (explaining that "any citizen able to show that he or she, personally has been injured by . . . racial classification has standing," and thus implying that a Court has the power to remedy a racial gerrymander). Indeed, it is obvious that Court can redress the injury Plaintiffs allege, namely, that they were subject to a racial classification in the Enjoined Plan and continue to be under the Remedial Plan. Plaintiffs' injury will be redressed when they are no longer subject to a racial classification. The notion is unequivocally simple. Nevertheless, Defendant raises irrelevant and incorrect arguments about why, in its view, the Court is unable to fashion a remedy to Plaintiffs' claims. *See* Mot. at 14–17. None of Defendant's arguments alter the Court's earlier standing analysis.

Defendant's argument boils down to the following: "Plaintiffs' ability to have standing in this case relied upon them demonstrating that their proposed remedy looked very different than the [Remedial Plan], but that is simply not the case." Mot. at 17. Defendant argues that each of Plaintiffs' proposed plans result in similar racial demographics, and accordingly, any proposed map will result in three majority Hispanic districts, one majority African-American district, and

one plurality district.[8]  *See id.* at 14–17.  Defendant contends that if any potential remedial map would result in similar racial demographics among the Districts, then the Court cannot provide a remedy for the racial gerrymandering of Plaintiffs.  *Id.* at 17.

As an initial matter, and as the Court explained when adjudicating the earlier motion to dismiss, *see* (ECF No. 132 at 22–23), the constitutionality of Plaintiffs' proposed maps from the remedial portion of the case is irrelevant to the adjudication of this Action.  Whether Plaintiffs may receive redress from their racial gerrymandering claim in no way hinges on the constitutionality (or lack thereof) of their non-implemented, proposed remedial plans.  *See id.* at 23.

Defendant's argument about the similarity between the Remedial Map and Plaintiffs' proposed plans is better suited as an argument for the remedial stage of the litigation rather than as an obstacle for the Court to find standing.  But even there, its argument was unavailing.  When implementing the Court's Plan, the Court explained "[b]ecause [the Court's Plan] must retain the legislature's lawful objectives, that [the Court's Plan] is 'fundamentally similar' to the Remedial Plan, to a certain extent, should be expected."  Remedial Order at 49.  As Plaintiffs correctly identify, so long as the potential remedial districts are not-race based, or otherwise satisfy strict scrutiny, "they could have any range of district-level demographics."  Resp. at 7.  Defendant's argument about Plaintiffs' proposed remedial maps do not alter the redress available to Plaintiffs.

And perhaps most importantly, Defendant conveniently omits that the Court has already found that a constitutional remedy exists, thereby demonstrating that Plaintiffs' claim is

---

[8] Defendant also raises the already-rejected argument that in this case, the City Commission was merely aware of racial demographics when designing the Districts and that it was not their intent to racially gerrymander.  *See* Mot. at 16.  This argument ignores volumes of direct evidence that the City Commissioners intended to racially gerrymander the Enjoined Plan and the Remedial Plan.  *See* (ECF No. 60 at 8–18); (Remedial Order at 20–24).  Other cases may exist where a legislature is merely aware of racial demographics when it draws district maps but there is otherwise no evidence of intent to racially gerrymander.  That is not this case.

redressable.  *See generally* Remedial Order.  It is thus disingenuous to claim that Plaintiffs' injury may not be remedied, particularly when the Court has already demonstrated that a constitutional remedial map could be drawn.  It is bewildering that Defendant, in good faith, argues otherwise.

The redress available to each Plaintiff is obvious.  All they request—and all that is required—is that they ultimately reside in Districts that were not intentionally designed with race as the predominant factor.[9]  Fortunately for Plaintiffs, to claim that that such a remedy is impossible, and thus to insinuate that Plaintiffs are indefinitely doomed to live in racially gerrymandered districts, is simply untrue.  The Court is more than capable of fashioning a remedy to address Plaintiffs' claim.

## V.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Final Summary Judgment (ECF No. 131) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this *21st* day of December 2023.

*K. M. Moore*
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

---

[9] Or as to the extent the City Commissions Districts are so drawn, as with the Voting Rights Act protected District 5, that each District satisfy strict scrutiny.