UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24066-KMM

GRACE, INC.; ENGAGE MIAMI, INC.;
SOUTH DADE BRANCH OF THE NAACP;
MIAMI-DADE BRACH OF THE NAACP;
CLARICE COOPER; YANELIS VALDES;
JARED JOHNSON; and ALEXANDER
CONTRERAS, and STEVEN MIRO,

        Plaintiffs,

v.

CITY OF MIAMI,

        Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

Defendant, City of Miami (the "City") answer Plaintiff's Second Amended Complaint (DE 143) as follows:

1.      Denied.

2.      Denied.

3.      Denied.

4.      Denied.

## INTRODUCTION

5.      Admitted that the City, the Miami City Commission passed Resolution 22-131 (the 2022 Enacted Plan) on March 24, 2022, which was intended to redraw the City Commission districts for the next decade; admitted that Mayor Francis X. Suarez declined to veto it; and the 2022 Enacted Plan went into effect; otherwise denied.

6.      Denied.

7.      Paragraph 7 sets forth a conclusion of law to which no response is required. Otherwise, denied.

8.      Paragraph 8 sets forth a conclusion of law to which no response is required. Otherwise, denied.

9.      Denied.

10.     Denied.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Admitted that the City's consultant had a presentation that included a slide titled "Allegations of Racism are False and Inflammatory"; otherwise, denied.

18.     Denied.

19.     Admitted.

20.     Admitted that the City redrew the Commission districts by enacting Res. 23-271 ("2023 Enacted Plan") following the Court's preliminary injunction; otherwise denied.

## PARTIES

21.     Without knowledge, therefore denied.

22.     Without knowledge, therefore denied.

23.     Without knowledge, therefore denied.

24.     Without knowledge, therefore denied.

25.     Without knowledge, therefore denied.

26.     Denied.

27.     Without knowledge, therefore denied.

28.     Without knowledge, therefore denied.

29.     Without knowledge, therefore denied.

30.     Without knowledge, therefore denied.

31.     Without knowledge, therefore denied.

32.     Denied.

33.     Denied.

34.     Denied

35.     Admitted that the City is a Florida municipality. The remaining portions of Paragraph 33 sets forth a conclusion of law to which no response is required; otherwise, denied.

## JURISDICTION AND VENUE

36.     Admitted for jurisdictional purposes only; otherwise, denied.

37.     Admitted for jurisdictional purposes only; otherwise, denied.

38.     Admitted for jurisdictional purposes only; otherwise, denied.

## FACTS
### I. Overview of the City Commission and Its Elections

39.     Paragraph 39 sets forth a conclusion of law to which no response is required; otherwise, denied.

40.     Paragraph 40 sets forth a conclusion of law to which no response is required; otherwise, denied.

41.     Admitted.

3

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted that Miguel Angel Gabela, Damian Pardo, Joe Carollo, Manolo Reyes, and Christine King are the Commissioners for Districts 1, 2, 3, 4, and 5, respectively; that Alex Díaz de la Portilla and Ken Russell were the Commissioners for District 1 and 2, respectively during the 2021–22 redistricting process; and that Alex Diaz de la Portilla and Sabina Covo were the Commissioners for District 1 and 2, respectively during the 2023 redistricting process; otherwise, denied.

47.     Admitted that Commissioners Díaz de la Portilla, Carollo, and Reyes are Hispanic and Cuban American, that Commissioner King is Black and not Hispanic, and that Commissioner Russell is White and Japanese American and not Hispanic; otherwise, denied.

48.     Admitted.

49.     Admitted

50.     Admitted

51.     Admitted

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted.

## II. Miami Redistricting History

56.     Admitted.

4

57.     Admitted that Carollo served as Mayor during 1996 and 1997, and in 1997, he appointed a blue-ribbon panel to recommend a single-member district map for the Commission.

58.     Admitted.

59.     Admitted.

60.     Admitted.

61.     Admitted.

62.     Admitted.

63.     Admitted.

### III. The 2021–22 Redistricting Process

64.     Admitted.

65.     Admitted.

66.     Admitted.

67.     Admitted.

### A. The November 18, 2021 Meeting

68.     Admitted.

69.     Admitted.

70.     Denied.

71.     Admitted.

72.     Admitted.

73.     Admitted that Districts 1, 3, and 4 were majority Hispanic with Hispanic voting-age populations of 91.0, 88.5, and 91.6%, respectively, under the 2013 plan at the time of 2020 Census; otherwise denied.

74.     Admitted District 5 was majority Black, with a Black voting-age population (BVAP) of 52.9%, under the 2013 plan at the time of 2020 Census; otherwise denied.

75.     Admitted District 2 had a non-Hispanic white voting-age population (WVAP) of 34.5% under the 2013 plan at the time of 2020 Census; otherwise denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

### B. The December 9, 2021 Meeting

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

*C. The February 7, 2022 Meeting*

99.     Admitted.

100.    Denied.

101.    Denied.

102.    Admitted the February 7 Draft Plan proposed moving areas of the West Grove from District 2 into District 4; otherwise, denied.

103.    Admitted that the individuals identified in paragraph 106 spoke at the February 7 meeting; otherwise, denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

### D. The February 25, 2022 Meeting

116.    Admitted.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Admitted that Districts 1, 3, and 4 had Hispanic voting-age populations of 84.8,

86.9, and 88.2%, respectively, under the 2013 plan at the time of 2020 Census.

127.    Admitted.

128.    Admitted.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Admitted.

136.    Denied.

137.    Admitted.

### E. The March 11, 2022 Meeting

138.    Admitted.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied.

145.    Admitted that Commissioner Russell proposed moving portions of Districts 3 and 4 back into District 2; otherwise, denied.

146.    Admitted that Commissioner Russell proposed moving portions of District 2 back into District 3; otherwise, denied

147.    Denied.

148.    Admitted that De Grandy spoke about "allegations of racism"; otherwise, denied.

149.    Admitted that De Grandy made the following statement:

> Now, surprisingly, neither the Miami Herald Editorial Board nor any of those alleging that the plan is racist has noted any of these statistics as an issue. Now, some would say that the statistics I've just presented on the record are indicative of more desegregated and diverse living patterns that continue to develop in Miami, which I believe is a good thing. But, as I stated a minute ago, in the four public hearings and the five community meetings you have had, the only allegation of racism results from the proposed movement of 114 Black residents who are currently represented by a commissioner who is not Black to a district that is represented by a commissioner who is not Black.

150.    Admitted that that De Grandy made the following statement:

Now, in the last 30 years, I've been involved in redistricting and reapportionment of congressional, state senate and state house plans as well as school board and municipal plans. In the 1990 redistricting cycle, I successfully sued the Florida Legislature for violation of the Voting Rights Act, in the case of De Grandy versus Wetherell. As a result of that lawsuit, for the first time in a hundred years since Reconstruction, there were three African American members elected to Congress in Florida where for a hundred years, there had been none. I've also successfully litigated in defense of congressional and state legislative plans that complied with the Constitution and the Voting Rights Act. But in light of the statistics I've just put on the record, I would respectfully submit that you do not have to be a redistricting expert to conclude that the allegation of this plan is somehow racist is simply false and inflammatory.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Admitted that Commissioner Russell's proposal was not adopted.

155.    Admitted that Dwight Bullard spoke at the hearing; otherwise, denied.

156.    Denied.

157.    Denied.

158.    Admitted.

### F. The March 24, 2022 Meeting and Enacted Plan Adoption

159.    Admitted that the Commission convened on March 24; otherwise, denied.

160.    Admitted.

161.    Admitted.

162.    Admitted.

163.    Admitted.

164.    Admitted.

165.     Admitted that Commissioner Russell proposed a plan that restored portions of the West Grove to District 2 and moved an area between Alatka Avenue and 13th Streets from District 2 to District 3; otherwise, denied.

166.     Admitted.

167.     Admitted.

168.     Admitted.

169.     Admitted that the individuals identified in paragraph 169 spoke at the March 24 meeting; otherwise, denied.

170.     Admitted.

171.     Admitted.

172.     Admitted

173.     Admitted that Russell advocated for his plan keeping what he identified as Coconut Grove whole in District 2; otherwise, denied.

174.     Admitted.

175.     Admitted.

176.     Admitted.

177.     Admitted.

178.     Admitted.

179.     Admitted.

180.     Admitted that Commissioner Reyes voted against the Base Plan with the Wharf change; to the extent that the allegations of paragraph 180 assert reasons that were different than those publicly expressed by Commissioner Reyes, those allegations are denied. Otherwise, denied.

181.     Admitted that Commissioner Russell voted against the Base Plan with the Wharf change; to the extent that the allegations of paragraph 181 assert reasons that were different than those publicly expressed by Commissioner Russell, those allegations are denied. Otherwise, denied.

182.     Admitted.

183.     Admitted that interested groups and individuals urged Mayor Suarez to veto the 2022 Enacted Plan; to the extent that the allegations of paragraph 183 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

184.     Admitted that Mayor Suarez let the 2022 Enacted Plan become law without his signature; otherwise, denied.

### IV. Racial Considerations Predominated in the Line-Drawing Process

185.     Denied.

186.     Denied.

187.     Denied.

188.     Denied.

189.     Denied.

190.     The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 190 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

191.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 191 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

192.     The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 192 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

193.     Denied.

194.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 194 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

195.     Denied.

196.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 196 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

197.     The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 197 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

198.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 198 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

199.     Denied.

### A. Creating an "Anglo Access District" in District 2

200.     Denied.

201.     The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 201 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

202.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 202 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

203.    Denied.

204.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 204 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

205.    The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 205 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

206.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 206, including the footnote, assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

207.    Denied.

208.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 208 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

209.    The public statements of Commissioners Reyes and Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 209 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

210.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 210 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

211.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 211 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

212.    Denied. The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 212 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

213.    The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 213 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

### B. Maintaining an Arbitrary BVAP Quota for District 5

214.    Denied.

215.    Admitted District 5 had a Black population of 54.4% and a BVAP of 52.9% under the 2013 plan at the time of 2020 Census, was underpopulated and needed to add population; otherwise denied.

216.    Denied.

217.    Denied.

218.    Denied.

219.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 219 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

220.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 220 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

221.    Denied.

222.    Denied.

223.    Admitted District 5 in the February 7 Draft had a Black population of 51.7% and a BVAP of 49.8%; otherwise denied.

224.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 224 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

225.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 225 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

226.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 226 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

227.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 227 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

228.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 228 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

229.    Denied.

230.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 230 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

231.     The public statements of Commissioner King in commission meetings speak for themselves; to the extent that the allegations of paragraph 231 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

232.     Denied.

233.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 233 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

234.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 234 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

235.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 235 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

236.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 236 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

237.     Admitted that areas were moved between Districts 2 and 5; the population statistics for those areas speak for themselves; to the extent that the allegations of paragraph 237 assert otherwise, those allegations are denied. Otherwise, denied.

238.     Admitted that areas were moved between Districts 2 and 5; the population and racial statistics for those areas speak for themselves; to the extent that the allegations of paragraph 241 assert otherwise, those allegations are denied. Otherwise, denied.

239.     Denied.

240.     Denied.

241.     Denied.

242.     Admitted that the ACLU sent a letter to the City; that letter speaks for itself; to the extent that the allegations of paragraph 242 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

243.     Admitted that the ACLU sent a letter to the City; that letter speaks for itself; to the extent that the allegations of paragraph 243 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

244.     The population and racial statistics for District 5 speak for themselves; to the extent that the allegations of paragraph 244 assert otherwise, those allegations are denied. Otherwise, denied.

245.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 245 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

246.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 246 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

247.     Denied.

248.     The public statements of Commissioners Russell and King in commission meetings speak for themselves; to the extent that the allegations of paragraph 248 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

249.     The public discussions of Commissioner King and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 249 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

250.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 250 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

251.     The public statements of Commissioners Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 251 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

252.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 252 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

253.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 253 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

254.     Admitted that Mr. De Grandy returned with Base Plan that moved several unpopulated riverfront blocks from District 1 into District 5; otherwise denied.

255.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 255 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

256.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 256 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

257.     Admitted that the City adopted the Base Plan with the minor Wharf alteration; otherwise, denied.

258.     Denied.

259.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 259 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

260.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 260 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

261.     Admitted.

262.     Denied. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 262 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

263.     Denied.

264.     The public statements of Commissioners Reyes, Russell, and King and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 264 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

265.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 265 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

266.     Admitted that District 5 in the plan enacted in 2022 had a BVAP of 50.3%; otherwise denied.

### C. Packing Hispanic Residents into Districts 1, 3, and 4

267.    Denied.

268.    Denied.

269.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 269 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

270.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 270 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

271.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 271 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

272.    Denied; The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 272 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

273.    Denied.

### 1. District 1/5 Border

274.    Denied.

275.    Admitted.

276.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 276 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

277.   The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 277 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

278.   The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 278 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

279.   The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 279 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

280.   Admitted.

281.   The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 281 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

282.   Denied.

283.   The population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 283 assert otherwise, those allegations are denied. Otherwise, denied.

284.   Admitted that District 1 needed to gain population; otherwise, denied.

285.   The population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 285 assert otherwise, those allegations are denied. Otherwise, denied.

286.   Admitted District 1 in the 2022 Plan had a HVAP of 89.5%; otherwise denied.

*2. District 2/3 Border*

287.     Denied.

288.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 288 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

289.     Admitted that portions of District 2 were moved into District 3, stretching from SW 15th Road in the north to SW 17th Avenue in the south, over to South Miami Avenue, including Bay Heights; otherwise denied.

290.     The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 290 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

291.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 291 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

292.     Admitted that the City commission considered but did not adopt keeping areas identified as Coconut Grove whole; otherwise denied.

293.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 293 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

294.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 297 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

295.     The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 295 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

296.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 296 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

297.     Denied.

298.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 298 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

299.     Denied. The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 299 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

300.     The public discussions of Commissioner Russell and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 300 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

301.     The public discussions of Commissioner Russell and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 301 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

302.     The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 302 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

303.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 303 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

304.    The public statements of Commissioner Russell in commission meetings speak for themselves; to the extent that the allegations of paragraph 306 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

305.    Denied.

306.    Denied.

307.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 307 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

308.    The public discussions of Commissioner Diaz de la Portilla and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 308 mischaracterize those discussions, those allegations are denied. Otherwise, denied.

309.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 309 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

310.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 310 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

311.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 311 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

312.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 312 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

313.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 313 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

314.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 314 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

315.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 315 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

316.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 316 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

317.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 317 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

318.    The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 328 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

319.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 319 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

320.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 320 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

321.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 321 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

322.     The population and racial statistics for District 3 in the Revised Russel Plan speak for themselves; to the extent that the allegations of paragraph 322 assert otherwise, those allegations are denied. Otherwise, denied.

323.     The population and racial statistics for District 3 in the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 323 assert otherwise, those allegations are denied. Otherwise, denied.

*3. District 2/4 Border*

324.     Denied.

325.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 325 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

326.     The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 326 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

327. The population and racial statistics for area bounded by SW 25th Street, SW 27th Avenue, and US 1 speak for themselves; to the extent that the allegations of paragraph 327 assert otherwise, those allegations are denied. Otherwise, denied.

328. Denied.

329. Denied.

330. The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 330 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

331. The public statements of Commissioners Carollo and Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 331 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

332. The public statements of Commissioners Carollo and Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 332 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

333. Denied.

334. The public statements of Commissioner Diaz de la Portilla in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 334 assert otherwise, those allegations are denied. Otherwise, denied.

335. Denied.

336. The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 336 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

337.    The population and racial statistics for District 4 in the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 337 assert otherwise, those allegations are denied. Otherwise, denied.

*4. Internal Borders of Districts 1, 3, and 4*

338.    Denied.

339.    Denied.

340.    The public statements of Commissioners in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 340 assert otherwise, those allegations are denied. Otherwise, denied.

341.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 341 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

342.    The public statements of Commissioner Carollo in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 342 assert otherwise, those allegations are denied. Otherwise, denied.

343.    The public statements of Commissioners Carollo and Reyes in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 343 assert otherwise, those allegations are denied. Otherwise, denied.

344.    The public statements of Commissioner Carollo in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 344 assert otherwise, those allegations are denied. Otherwise, denied.

345.    The public statements of Commissioner Reyes in commission meetings and the population and racial statistics for subject area speak for themselves; to the extent that the allegations of paragraph 345 assert otherwise, those allegations are denied. Otherwise, denied.

346.    Admitted that an area bounded by SW 27th and 32nd Avenues, NW 7th Street, and SW 8th Street was moved from District 4 to District 3; the population and racial statistics for subject area speak for themselves; otherwise denied.

347.    The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 347 assert reasons that were different than those expressed, those allegations are denied. Otherwise, denied.

### V. The 2023 Redistricting Process

348.    Admitted.

349.    Denied.

350.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 350 assert otherwise, those allegations are denied. Otherwise, denied.

351.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 351 assert otherwise, those allegations are denied. Otherwise, denied.

352.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 352 assert otherwise, those allegations are denied. Otherwise, denied.

353. The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 353 assert otherwise, those allegations are denied. Otherwise, denied.

354. The public statements of Commissioner Reyes in commission meetings speak for themselves; to the extent that the allegations of paragraph 354 assert otherwise, those allegations are denied. Otherwise, denied.

355. The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 355 assert otherwise, those allegations are denied. Otherwise, denied.

356. The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 356 assert otherwise, those allegations are denied. Otherwise, denied.

357. Admitted that the Court held a telephone conference on May 11, 2023, otherwise denied.

358. Admitted.

359. Admitted that the Plaintiffs submitted two maps—P1 and P2—with a cover letter to the City on the same day the Court enjoined the 2022 Enacted Plan; the maps and the letter speak for themselves; otherwise, denied.

360. Admitted that Plaintiffs shared supplemental information on P1 and P2's compliance with the Voting Rights Act on June 9; admitted that Plaintiffs provided an analysis from Dr. Bryant Moy on June 12; otherwise denied.

361. Admitted.

362. Admitted that Plaintiffs shared another map—P3—on June 13, 2023.

363.    Admitted that the Commission noticed a discussion item for redistricting for a meeting to be held at 10 A.M. on June 14, 2023; otherwise denied.

364.    Admitted.

365.    Admitted that Mr. De Grandy publicly presented a draft plan proposal, named "V12"; otherwise, denied.

366.    Denied.

367.    Denied.

368.    Admitted that the City debated V12 and then recessed; otherwise denied.

369.    Admitted that Mr. De Grandy met with certain commissioners privately and drew alternative maps; otherwise denied.

370.    Denied.

371.    Admitted that the Commissioners returned from recess; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 371 assert otherwise, those allegations are denied. Otherwise, denied.

372.    Admitted that some Commissioners proposed maps of their own; the public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 372 assert otherwise, those allegations are denied. Otherwise, denied.

373.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 373 assert otherwise, those allegations are denied. Otherwise, denied.

374.    Admitted that Commissioners King and Diaz de la Portilla directed additional changes during the commission meeting that moved a portion of Overtown from District 1 to District 5 which version was named "D3 Alt. v.2"; the public statements of Commissioners in

commission meetings speak for themselves; to the extent that the allegations of paragraph 374 assert otherwise, those allegations are denied. Otherwise, denied.

375.    Admitted.

376.    Denied.

377.    Admitted that the Mayor Suarez let Res. 23-271 become law without his signature, and the City filed its Notice of Passage of Redistricting Plan (DE 77) with the Court on June 30, 2023; otherwise denied.

378.    Denied.

379.    Denied.

### A. Racial Considerations Predominated in the Line-Drawing Process

380.    Denied.

381.    Denied.

382.    Denied.

383.    Denied.

384.    Denied.

385.    The public statements of Commissioners in commission meetings speak for themselves; to the extent that the allegations of paragraph 385 assert otherwise, those allegations are denied. Otherwise, denied.

386.    Denied.

387.    Denied.

388.    Denied.

### B. The Commission Adopted a Nearly Identical Map with the 2023 Plan

389.    Denied.

390.    Denied.

391.    Denied.

392.    Denied.

393.    Denied.

394.    Denied.

**C. Changes Made on June 14 Walked Back Closer to the Enjoined Plan**

395.    Denied.

*1. The District 2/3 Border in the North Grove and Brickell*

396.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 396 assert otherwise, those allegations are denied. Otherwise, denied.

397.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 397 assert otherwise, those allegations are denied. Otherwise, denied.

398.    Denied.

399.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 399 assert otherwise, those allegations are denied. Otherwise, denied.

400.    Denied.

*2. The District 3/4 Border*

401.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 76 assert otherwise, those allegations are denied. Otherwise, denied.

34

402.   Admitted.

403.   The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 403 assert otherwise, those allegations are denied. Otherwise, denied.

404.   The public statements of Commissioners and the City Attorney in commission meetings speak for themselves; to the extent that the allegations of paragraph 404 assert otherwise, those allegations are denied. Otherwise, denied.

405.   The public statements of Commissioners and the City Attorney in commission meetings speak for themselves; to the extent that the allegations of paragraph 405 assert otherwise, those allegations are denied. Otherwise, denied.

406.   Denied.

407.   Denied.

408.   Denied.

### 3. Morningside

409.   Admitted that V12 proposed moving proposed moving part of Morningside between 55th Terrace and 61st Street out of District 2 and into District 5; the population and racial statistics for that area speak for themselves; to the extent that the allegations of paragraph 84 assert otherwise, those allegations are denied. Otherwise, denied.

410.   Admitted.

411.   The public statements of Commissioner Covo in commission meetings speak for themselves; to the extent that the allegations of paragraph 86 assert otherwise, those allegations are denied. Otherwise, denied.

412. Admitted that Commissioner King opposed moving part of Morningside into District 5; otherwise denied.

413. The public statements of Commissioners and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 413 assert otherwise, those allegations are denied. Otherwise, denied.

414. The public statements of Commissioners and Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 414 assert otherwise, those allegations are denied. Otherwise, denied.

415. Denied.

416. Admitted.

417. Admitted.

418. Admitted that the Commission did not adopt alternative plans that placed all or parts of Morningside in District 5; otherwise denied.

419. Denied

### 4. The Commission Defined Overtown Along Racial Lines

420. Denied.

421. Admitted.

422. Without knowledge, and therefore denied.

423. The public statements of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 423 assert otherwise, those allegations are denied. Otherwise, denied.

424.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 424 assert otherwise, those allegations are denied. Otherwise, denied.

425.    Denied.

426.    Denied.

427.    Denied.

428.    Paragraph 428 sets forth a conclusion of law to which no response is required. Otherwise, denied.

429.    Denied.

430.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 430 assert otherwise, those allegations are denied. Otherwise, denied.

431.    Admitted that no commissioner raised any concern publicly with way Mr. De Grandy described the area of Historic Overtown in District 5; otherwise denied.

432.    Admitted that Commissioner King requested that the area that People's Bar-B-Que be added to District 5; otherwise denied.

433.    Admitted that Commissioner Diaz de la Portilla was supportive of adding People's Bar-B-Que into District 5; otherwise denied.

434.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 434 assert otherwise, those allegations are denied. Otherwise, denied.

435.    Admitted that the block containing People's Bar-B-Que was included in District 5 in the final map; otherwise denied.

436.    The population and racial statistics for the three blocks raised in the paragraph speak for themselves; to the extent that the allegations of paragraph 436 assert otherwise, those allegations are denied. Otherwise, denied.

437.    Denied.

438.    The population and racial statistics for the three blocks raised in the paragraph speak for themselves; to the extent that the allegations of paragraph 438 assert otherwise, those allegations are denied. Otherwise, denied.

439.    Denied.

**D. The Parts of Version 12 the Commission Chose to Accept Were Race-Based, Too**
*1. Avoiding "Packing Hispanics"*

440.    Denied.

441.    The criticism of P1 and P2 in are contained in the transcripts of commission meetings and speak for themselves; to the extent that the allegations of paragraph 441 assert otherwise, those allegations are denied. Otherwise, denied.

442.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 442 assert otherwise, those allegations are denied. Otherwise, denied.

443.    Denied.

444.    Denied, including the footnote.

445.    Denied.

*2. Adding Back an Area "Where the Hispanic Voters Live" to District 3*

446.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 446 assert otherwise, those allegations are denied. Otherwise, denied.

447.    The public statements of Commissioner Diaz de la Portilla in commission meetings speak for themselves; to the extent that the allegations of paragraph 447 assert otherwise, those allegations are denied. Otherwise, denied.

448.    Admitted that Bay Heights was included in District 3 in the Feb. 22, 2022 Base Plan; otherwise denied.

449.    Admitted that Bay Heights was included in District 2 in the 2022 Enacted Plan draft; otherwise denied.

450.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 450 assert otherwise, those allegations are denied. Otherwise, denied.

451.    Admitted that Bay Heights was included in District 3 in the V12 Plan; otherwise denied.

452.    The public statements of Commissioner Carollo in commission meetings speak for themselves; to the extent that the allegations of paragraph 452 assert otherwise, those allegations are denied. Otherwise, denied.

453.    Denied.

454.    The public statements of Commissioner Covo in commission meetings speak for themselves; to the extent that the allegations of paragraph 454 assert otherwise, those allegations are denied. Otherwise, denied.

455.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 455 assert otherwise, those allegations are denied. Otherwise, denied.

456.    Denied.

457.    The public statements and presentations of Mr. De Grandy in commission meetings speak for themselves; to the extent that the allegations of paragraph 457 assert otherwise, those allegations are denied. Otherwise, denied.

458.    Admitted that the areas of Natoma and Bay Heights were included in District 3 in the 2023 Enacted Plan; otherwise denied.

### E. District-by-District, Race Predominated in the 2023 Plan
#### 1. District 2

459.    Denied.

460.    Denied.

461.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 461 assert otherwise, those allegations are denied. Otherwise, denied.

462.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 462 assert otherwise, those allegations are denied. Otherwise, denied.

463.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 463 assert otherwise, those allegations are denied. Otherwise, denied.

464.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 464 assert otherwise, those allegations are denied. Otherwise, denied.

465.    The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 465 assert otherwise, those allegations are denied. Otherwise, denied.

466.    The parameters of the 2023 Enacted Plan and the 2022 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 466 assert otherwise, those allegations are denied. Otherwise, denied.

#### 2. District 5

467.    Denied.

468.     Denied.

469.     The public statements of Commissioner King in commission meetings speak for themselves; to the extent that the allegations of paragraph 469 assert otherwise, those allegations are denied. Otherwise, denied.

470.     The parameters of the 2023 Enacted Plan and the public statements of Commissioner King in commission meetings speak for themselves; to the extent that the allegations of paragraph 470 assert otherwise, those allegations are denied. Otherwise, denied.

471.     The parameters of the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 471 assert otherwise, those allegations are denied. Otherwise, denied.

472.     Denied.

473.     Admitted that Morningside and Edgewater are in District 2 in the 2023 Enacted Plan; otherwise denied.

474.     Denied.

475.     The parameters of District 5 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 150 assert otherwise, those allegations are denied. Otherwise, denied.

476.     The parameters of District 5 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 151 assert otherwise, those allegations are denied. Otherwise, denied.

### 3. Districts 1, 3, and 4

477.     Denied

478.     Denied.

479.    The parameters of Districts 1, 3 and 4 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 479 assert otherwise, those allegations are denied. Otherwise, denied.

480.    Denied.

481.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 481 assert otherwise, those allegations are denied. Otherwise, denied.

482.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 482 assert otherwise, those allegations are denied. Otherwise, denied.

483.    The parameters of District 1 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 483 assert otherwise, those allegations are denied. Otherwise, denied.

484.    The parameters of Districts 3 in the 2023 Enacted Plan speak for themselves; to the extent that the allegations of paragraph 484 assert otherwise, those allegations are denied. Otherwise, denied.

### VI. Lack of Narrow Tailoring to Achieve
### a Compelling Interest in Racial Predominance

485.    Denied.

486.    Denied.

487.    Denied.

488.    Denied.

489.    Denied.

490.    Denied.

491.   Denied.

492.   Denied.

493.   Denied.

494.   Denied.

495.   Denied.

496.   Denid

497.   Admitted that the BVAP for District 5 in the 2023 Enacted Plan and the 2022

Enacted plan was 50.3%; otherwise denied.

498.   Denied.

499.   Denied.

## CLAIM FOR RELIEF
### Racial Gerrymandering
### in Violation of the Fourteenth Amendment to the U.S. Constitution
### (42 U.S.C. § 1983)

500.   Defendant incorporates its responses to paragraphs 1 through 499.

501.   Paragraph 501 sets forth a conclusion of law to which no response is required.

502.   Paragraph 502 sets forth a conclusion of law to which no response is required.

503.   Denied.

504.   Denied.

505.   Denied.

506.   Denied.

## PRAYER FOR RELIEF

Defendant denies the allegations and demands set forth in the Prayer for Relief and deny

that they are liable to Plaintiffs in any manner whatsoever.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiffs' claims, and reserve the right to amend or supplement their defenses as additional facts become known during this litigation.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring the claims alleged in this action because they have not suffered any personal injury traceable to the 2023 Enacted Plan. For example, to the extent the 2023 Enacted Plan addressed Plaintiffs district-specific objections to the 2022 Enacted Plan, they no longer have suffered an injury and lack standing.  Likewise and to the extent Plaintiffs no longer seek to vindicate their own alleged harms but perceived harms allegedly suffered by others, they fail to demonstrate their standing to bring such claims.  *See United States v. Hays*, 515 U.S. 737 (1995).

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs also lack standing because their alleged injuries cannot be redressed by this Court. There is no plan (including none of Plaintiffs' four proposed plans) that can or would materially change the racial makeup of the City's districts. Instead, the reality is that the City has a majority Hispanic population, and the racial composition of the City's five districts will remain the same as it has been since 1997: three supermajority Hispanic districts, one VRA required majority African-American district, and one plurality district.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted to the extent that have not alleged and cannot prove that the City placed a significant numbers of voters in any

district based on their race. Both the 2022 and 2023 Enacted Plans only made minor changes to districts that did not materially alter the existing racial makeup of any district.

Respectfully submitted,

GRAYROBINSON, P.A.

By:  *s/ George T. Levesque*
GRAYROBINSON, P.A.
Jason L. Unger, Esquire
Florida Bar No. 991562
Jason.Unger@gray-robinson.com
George T. Levesque
Florida Bar No. 55551
George.Levesque@gray-robinson.com
Andy Bardos
Florida Bar No. 822671
Andy.Bardos@gray-robinson.com
301 S. Bronough Street
Suite 600
Tallahassee, Florida 32301
Telephone: (850) 577-9090
Facsimile: (850) 577-3311

Christopher N. Johnson
Florida Bar No. 69329
Email: Christopher.Johnson@gray-robinson.com
Marlene Quintana, B.C.S.
Florida Bar No. 88358
Email: Marlene.Quintana@gray-robinson.com
Sydney M. Feldman
Florida Bar No. 1017798
Email: Sydney.Feldman@gray.robinson.com
Fabian A. Ruiz
Florida Bar No. 117928
Email: Fabian.Ruiz@gray-robinson.com
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

CITY OF MIAMI
VICTORIA MÉNDEZ, City Attorney
Florida Bar No. 194931
JOHN A. GRECO, Chief Deputy City Attorney
Florida Bar No. 991236
KEVIN R. JONES, Deputy City Attorney
Florida Bar No. 119067
KERRI L. MCNULTY,
Litigation & Appeals Division Chief
Florida Bar No. 16171
ERIC J. EVES
Senior Appellate Counsel
Florida Bar No. 91053
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
Telephone: (305) 416-1800
Facsimile: (305) 416-1801
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ George T. Levesque*
Counsel for City of Miami