# First ACLU-FL Letter

**Letter from ACLU of Florida to City Commission,**
*Re: Legal Requirements in City Commission Redistricting and West Coconut Grove Concerns,*
**Feb. 25, 2022**



February 25, 2022

Miami City Commission
3500 Pan American Drive
Miami, FL 33133

*Copies to:* Mayor Francis X. Suarez, City Clerk Todd B. Hanson, City Attorney Victoria Méndez, Miguel A. De Grandy, Stephen M. Cody

*Via email*

**Re: Legal Requirements in City Commission Redistricting and West Coconut Grove Concerns**

Dear City Commissioners,



4343 West Flagler Street
Suite 400
Miami, FL 33134
www.aclufl.org

**Nicholas Warren**
*Staff Attorney*

nwarren@aclufl.org
(786) 363-1769

**Abdelilah Skhir**
*Policy Strategist*

askhir@aclufl.org
(786) 363-1660

We write to you regarding several aspects of the City Commission's ongoing redistricting process which have concerned us. We hope that we can clarify the City's obligations and opportunities with respect to these issues.

*Firstly*, as you know, the City is bound to comply with two critical legal requirements: Commission districts must comply with Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, which protects racial and language minorities' opportunity to participate in the political process and elect candidates of their choice. The City must also respect the U.S. Constitution's prohibition on racial gerrymandering. As part of that mandate, the Commission is barred from adopting arbitrary numerical demographic targets when fashioning districts.

It has come to our attention that at previous meetings, Commissioners have discussed a target of 50% Black total population or voting-age population (VAP) for District 5. Such a numerical target, divorced from any actual analysis of what share of the population or electorate may be necessary to afford Black voters an opportunity to elect preferred candidates, raises equal protection concerns. Furthermore, overconcentrating Black voters in District 5 above and beyond what is necessary to afford that opportunity to elect preferred candidates may constitute unlawful "packing."

In fact, the total population or voting-age population figures the Commission relies on may not relate to the actual opportunity Black voters may have to elect preferred candidates in Commission elections. Voter registration and actual turnout data for current and proposed District 5 reveal that Black voters make up a substantially *higher* share of registered voters and actual voters than the Census figures indicate. For example: Black voters make up about:

- **57.6%** of registered voters in the existing District 5;
- **55.8%** of actual voters at the last state general election; and
- **62.0%** of actual voters at the most recent state primary election.

- **55.5%** of registered voters in the most recent proposed District 5;
- **53.2%** of actual voters at the last state general election; and
- **61.3%** of actual voters at the most recent state primary election.

In comparison, existing District 5 is about **52.9%** Black by Census voting-age population, and the most recent proposed District 5 would be about **49.8%** Black VAP. We urge you to take the full breadth of available information and data into account when crafting districts, rather than looking merely at the surface-level Census population totals.



*Secondly*, Commission districts must be substantially equal in population, generally plus or minus five percent from the ideal district size. This constitutional requirement allows some discretion for the Commission to balance other competing criteria, such as keeping neighborhoods together and maintaining the cores of existing districts.

We have noticed some discrepancies in the population figures presented to you at previous meetings. For example, Mr. De Grandy's presentation on November 18, 2021 indicated first that the Census counted 442,241 people living in Miami (the correct total), but a later slide presented the populations of the existing five districts, which added up to just 441,890. This initial error was repeated in mathematical calculations throughout the presentation, giving an incorrect picture of the population equality—and inequality—of the five districts.

Moreover, proposed redistricting plans presented by Mr. De Grandy at previous meetings have included precincts that are outside the City of Miami. In particular, several areas in the City of Coral Gables have been included in drafts for District 2. Needless to say, including non-Miami populations in the City Commission's proposed districts gives an inaccurate picture of the population equality of the proposals under consideration. The Commission must take care that it uses the accurate and official Census figures, and does not include population outside the City.

*Finally*, we stand in solidarity with the residents of the West Grove neighborhood, who have expressed their concerns about being moved out of District 2. We note that fixing the first two issues we discuss gives the City an opportunity to accommodate West Grove residents' concerns. Accommodating these concerns would be consistent with the Commission's stated goals of maintaining the core constituencies of existing districts, maintaining traditional communities, and keeping neighborhoods whole. While existing District 2 must shed population to achieve substantial equality, it can do so from its northern

end and from the west side of US 1, permitting the West Grove neighborhood to remain together in District 2.

If we can share any other information that would be helpful, please don't hesitate to contact us.

Sincerely,



Nicholas Warren
Staff Attorney
(786) 363-1769
nwarren@aclufl.org

Abdelilah Skhir
Policy Strategist
(786) 363-1660
askhir@aclufl.org