IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

## JOINT MOTION TO APPROVE CONSENT JUDGMENT AND SETTLEMENT AGREEMENT

Plaintiffs GRACE, Inc., Engage Miami, Inc., South Dade Branch of the NAACP, Miami-Dade Branch of the NAACP, Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras and Steven Miro, and Defendant City of Miami (collectively, the "Parties") jointly move the Court to approve the Settlement Agreement between the Parties and enter a consent judgment enforcing the same. In support thereof, the Parties state as follows:

1. On March 24, 2022, the Miami City Commission adopted Resolution R-22-131 (the "2022 Plan"), redrawing the City Commission districts following the 2020 Census.

2. On December 15, 2022, Plaintiffs filed this Action against the City of Miami, alleging that the 2022 Plan violated the Equal Protection Clause of the Fourteenth Amendment.

3. On May 23, 2023, this Court preliminarily enjoined the City from enforcing the 2022 Plan (ECF 60).

4. On June 14, 2023, the Miami City Commission adopted Resolution R-23-271 (the "2023 Plan"), another plan for the City Commission districts.

5. On July 30, 2023, this Court issued its order on interim remedy (ECF 94), sustaining Plaintiffs' objections to the 2023 Plan and adopting Plaintiffs' P4 plan as this Court's interim

1

remedy pending final judgment.

6. On July 30, 2023, the City appealed this Court's interim remedial order (ECF 96). That appeal remains pending.

7. On September 14, 2023, the ACLU of Florida filed an action (the "State Action") against the City of Miami in the Circuit Court of Florida's Eleventh Judicial Circuit, alleging that the 2023 Plan violated Florida's Government in the Sunshine Law, Chapter 286, Florida Statutes.

8. On January 11, 2024, the Miami City Commission adopted Resolution R-24-1, amending the 2023 Plan by making a small change affecting two districts.

9. On April 10, 2024, following a bench trial, this Court: (1) found all five districts in both the 2022 Plan and the 2023 Plan (including as amended by R-24-1) are unconstitutionally racially gerrymandered in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) permanently enjoined the City of Miami and its officers and agents from calling, conducting, supervising, or certifying any elections under the unconstitutional districts; (3) awarded each Plaintiff nominal damages in the amount of $1.00; and (4) retained jurisdiction to adjudicate the remedial phase of the case. ECF 185.

10. On May 10, 2024, the City appealed this Court's post-trial findings of fact and conclusions of law and interim remedial order (ECF 189). That appeal remains pending.

11. The Parties (and non-party ACLU of Florida, the plaintiff in the State Action) now wish to avoid the cost, risk, and uncertainty associated with further litigation, and have reached a compromise to resolve this matter through the Settlement Agreement attached as **Exhibit 1**.

12. On May 23, 2024, the Miami City Commission directed the City Manager to enter into the Settlement Agreement pursuant to Resolution R-24-0205, attached as **Exhibit 2**.

13. If the Court approves the Settlement Agreement, the Parties request that, in

accordance with Section 7 of the same, this Court enter a consent judgment:

    (1) approving the Agreement;

    (2) ordering (a) the City to implement "P5" as its redistricting plan as provided by Section 3 of the Agreement; (b) that no special election shall be required due to the change in district boundaries caused by the implementation of "P5"; (c) that the City will not redistrict until after the 2030 Census data is released, unless the number of commission districts changes or subject to a subsequent court order; and (d) that no change in district boundaries caused by the implementation of "P5" shall affect the qualifications of any incumbent commissioner under Section 4(c) of the City Charter or Chapter 16 of the City Code that would disqualify such incumbent commissioner during the remainder of the incumbent commissioner's current term to which they were elected;

    (3) ordering the City to place a charter amendment on the November 2025 ballot as provided by Section 4 of the Agreement;

    (4) ordering the City to pay Plaintiffs' damages as provided by Section 5 of the Agreement;

    (5) ordering the City to pay Plaintiffs' attorneys fees and costs as provided by Section 6 of the Agreement, with each party to bear its own attorneys' fees and costs except as expressly provided in that Section; and

    (6) Dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

14. The Parties further request that the Court retain jurisdiction to enforce the provisions of the Settlement Agreement.

## MEMORANDUM OF LAW

### I. Legal Standard

"It is well-settled that judicial policy favors voluntary settlement for resolution of class-action as well as other cases." *Dillard v. City of Foley*, 926 F. Supp. 1053, 1062 (M.D. Ala. 1995) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall v. City of Cocoa*, 117 F.3d 1238, 1240 (11th Cir. 1997). Where a settlement "reaches into the future and has continuing effect," the court must ascertain not just whether "it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence." *Id.* at 1242 (quoting *United States v. City of Miami*, 664 F.2d 435, 440–41 (5th Cir. 1981)). When a decree "also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed." *Id.*

### II. Argument

The Parties have settled this litigation, the related appeals, and the State Action through the attached Settlement Agreement and respectfully request the Court enter a consent judgment embodying the Parties' agreed-upon settlement terms. Among the pertinent terms in the Settlement Agreement, the Parties acknowledge this Court's findings; the City has relinquished its right to appeal this Court's rulings; the City has agreed to use P5 as the restricting map for the 2020 decennial census term; the City has agreed to place a charter amendment on the November 2025 ballot to reform the redistricting process and to prohibit drawing districts with the intent to favor or disfavor a candidate or incumbent; the Parties have agreed that each Plaintiff is entitled to $1.00 in nominal damages; and the Parties have agreed that Plaintiffs are entitled to costs and attorneys' fees of $1,583,031.35, a reasonable amount reflecting the significant expenditure of time and

resources necessary to achieve legal victories through trial. The Parties now ask the Court to enter an order embodying the terms of their agreement, "in the nature of a consent decree." *Jacksonville Branch of NAACP v. City of Jacksonville*, 2023 WL 4277423, at *1 (M.D. Fla. May 30, 2023).

The Parties recognize that their individual best interests, as well as the best interests of the residents of Miami, are served by a resolution of this matter. Resolution eliminates any further cost, risk, and uncertainty associated with future trial court proceedings and associated appellate matters, as well as foreclosing any possible electoral confusion continued litigation may create. Accordingly, the Parties, through settlement authority vested in their counsel, sought to resolve this litigation through the attached Settlement Agreement. *See Scott v. U.S. Dep't of Just.*, 920 F. Supp. 1248, 1252 (M.D. Fla. 1996).

Pursuant to that agreement, the Parties have agreed to terms that resolve the remedial phase of this case, over which the Court undeniably has subject-matter jurisdiction. *North Carolina v. Covington* (*Covington I*), 581 U.S. 486, 488 (2017); *Covington v. North Carolina* (*Covington II*), 283 F. Supp. 3d 410, 424 (M.D.N.C.), *aff'd in relevant part*, 138 S. Ct. 2548 (2018); *United States v. Virginia*, 518 U.S. 515, 547, (1996); *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 239 (4th Cir. 2016). The Parties' agreed-upon settlement terms advance the objectives of the constitutional claims upon which Plaintiffs based their Complaint, and provide a "full and adequate remedy" to the constitutional violations the Court identified after trial. *United States v. Osceola Cnty.*, 474 F. Supp. 2d 1254, 1256 (M.D. Fla. 2006). Moreover, the proposed settlement terms are reasonable, fair, constitutional, lawful, and in accord with public policy. *Stovall*, 117 F.3d at 1242.

The Plaintiffs believe the Parties' agreed map (P5) unifies neighborhoods across the City—including Coconut Grove, Overtown, Allapattah, and Edgewater—which this Court found had been divided to enhance the unjustified racial division of the enacted redistricting plans.

Throughout P5, districts better respect traditional race-neutral redistricting criteria, such as respecting major manmade boundaries. On the whole, districts lose irregular appendages that this Court found were drawn to race-based ends. Districts are generally more compact, with more uniform, regular boundaries. And crucially, there remains a district (District 5) in which Black voters have the ability to elect candidates of their choice, as the Voting Rights Act requires.

The City Commission voted to approve P5 as part of its approval of the settlement.

Additionally, the Parties have agreed that Defendant City of Miami will put to the voters a charter amendment proposing a citizens' committee process to draw and propose maps to the City Commission in future redistricting cycles. The charter amendment would also prohibit redistricting with the intent to favor or disfavor a candidate or incumbent. There is precedent for incorporating proposed charter amendments into remedial decrees such as this. *See, e.g.*, *James v. City of Sarasota*, No. 79-1031-Civ-T-GC, slip op. at 6 (M.D. Fla. Sep. 2, 1983) (ordering city to hold charter referendum on two competing remedial plans in VRA case); *Bellamy v. City of Perry*, No. TCA 83-7125-MMP, slip op. at 3 & App'x 4 (N.D. Fla. Dec. 5, 1983) (ordering amendments to city charter in VRA consent decree).

Further, the proposed settlement terms "tak[e] account of 'what is necessary, what is fair, and what is workable.'" *Covington I*, 581 U.S. at 488 (quoting *New York v. Cathedral Acad.*, 434 U.S. 125, 129 (1977)). The Settlement Agreement "sets forth the mechanism and plan schedule for the [City of Miami] to conduct future elections for the members of the [City Commission] in accordance with the Voting Rights Act and the Fourteenth [] Amendment[] to the Constitution." *Bellamy v. Taylor Cnty. Sch. Bd.*, No. 4:83-cv-7124, slip op. at 3 (N.D. Fla. July 18, 1984) (available at ECF No. 6-1). Namely, Section 3(a) of the Agreement provides that P5 will be implemented beginning with the November 2025 regular municipal election as each commissioner

is elected pursuant to Section 4(b) of the City Charter, and in any special election held after this Agreement's Effective Date with respect to any district in which a special election is held. This ensures a map that all parties agree is constitutionally compliant will go into effect at the next regular municipal election, and in any special election occurring before the next regular election. *Cf. Singleton v. Allen*, 2023 WL 6567895, at *19 (N.D. Ala. Oct. 5, 2023) (ordering remedial map to be implemented in next regular elections); *Perez v. Texas*, No. 5:11-cv-360 (W.D. Tex. May 28, 2019), ECF No. 1631 (ordering racial gerrymandering remedy to be used beginning with 2020 legislative elections); *United States v. Sch. Bd. of Osceola Cnty.*, 2008 WL 11508421, at *2 (M.D. Fla. Apr. 23, 2008) (consent decree ordering staggered implementation of VRA remedy over two election cycles). Section 3(c) provides that the changes in district boundaries due to P5 will not disqualify any incumbent commissioner during the term for which they are elected. *Cf. Bellamy v. Taylor Cnty. Sch. Bd.*, No. 4:83-cv-7124, App'x 3 at 1 (N.D. Fla. July 18, 1984) (available at ECF No. 6-1) (redrawing school board districts and waiving district residency requirements for incumbent school board members); *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 3:22-cv-493, slip op. at 3 (M.D. Fla. Jan. 4, 2023), ECF No. 107 (court "exercis[ing] its equitable power" to waive 183-day residency requirement for candidates "[g]iven the potential for confusion and the need to effectuate the Court-ordered remedy without disruption to the upcoming election"); Fla. Stat. § 1001.36(2) (statute with identical language applicable to school board redistricting). These provisions ensure P5's implementation will be workable, recognizing that "breadth and flexibility are inherent in equitable remedies." *Covington v. North Carolina*, 270 F. Supp. 3d 881, 889 (M.D.N.C. 2017) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Finally, the Parties request that the Court retain jurisdiction over this matter for the limited

purpose of enforcing the provisions of the Settlement Agreement. An express retention of jurisdiction and incorporation of the terms of the Parties' settlement agreement is a proper exercise of a court's ancillary jurisdiction to enforce its orders. *See Doe ex rel. Doe v. Sch. Bd. for Santa Rosa Cnty.*, 711 F. Supp. 2d 1320, 1324 (N.D. Fla. 2020); *Kokkonen v. Guardian Life. Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so."); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002) ("[E]ven absent the entry of a formal consent decree, if the district court either incorporates the terms of a settlement into its final order of dismissal *or* expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement."). A dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) is an appropriate mechanism for the Court to dismiss the action pursuant to the Parties' agreement while also retaining jurisdiction. *Kokkonen*, 511 U.S. at 381; *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1268 (11th Cir. 2021).

**WHEREFORE**, the Parties respectfully request that the Court approve the Settlement Agreement and enter a Consent Judgment:

(1) approving the Settlement Agreement;

(2) ordering (a) the City to implement "P5" as its redistricting plan as provided by Section 3 of the Agreement; (b) that no special election shall be required due to the change in district boundaries caused by the implementation of "P5"; (c) that the City will not redistrict until after the 2030 Census data is released, unless the number of commission districts changes or subject to a subsequent court order; and (d) that no change in district boundaries caused by the implementation of "P5" shall affect the qualifications of any incumbent commissioner under Section 4(c) of the City Charter or Chapter 16 of the

   City Code that would disqualify such incumbent commissioner during the remainder of the incumbent commissioner's current term to which they were elected;

(3) ordering the City to place a charter amendment on the November 2025 ballot as provided by Section 4 of the Agreement;

(4) ordering the City to pay Plaintiffs' damages as provided by Section 5 of the Agreement;

(5) ordering the City to pay Plaintiffs' attorneys fees and costs as provided by Section 6 of the Agreement, with each party to bear its own attorneys' fees and costs except as expressly provided in that Section; and

(6) dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

Respectfully submitted June 10, 2024,

/s/ *Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Neil A. Steiner*
Julia Markham-Cameron*
**Dechert LLP**
Three Bryant Park

/s/ *George T. Levesque*

Jason L. Unger (FBN 991562)
George T. Levesque (FBN 55551)
Andy Bardos (FBN 822671)
**GrayRobinson, P.A.**
301 South Bronough Street, Suite 600
Tallahassee, FL 32301
(850) 577-9090
Jason.Unger@gray-robinson.com
George.Levesque@gray-robinson.com
Andy.Bardos@gray-robinson.com

Christopher N. Johnson (FBN 69329)
Marlene Quintana, B.C.S. (FBN 88358)
Fabian A. Ruiz (FBN 117928)
Jessica D. Santos (FBN 1038776)
**GrayRobinson, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
(305) 416-6880
Christopher.Johnson@gray-robinson.com

1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com
julia.markham-cameron@dechert.com

Christopher J. Merken*
**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2380
christopher.merken@dechert.com

Gregory P. Luib*
**Dechert LLP**
1900 K Street NW
Washington, DC 20006
(202) 261-3413
gregory.luib@dechert.com

*Admitted pro hac vice*

*Counsel for Plaintiffs*

Marlene.Quintana@gray-robinson.com
Fabian.Ruiz@gray-robinson.com
Jessica.Santos@gray-robinson.com

**CITY OF MIAMI**
Victoria Méndez, City Attorney (FBN 194931)
John A. Greco, Chief Deputy City Attorney (FBN 991236)
Kevin R. Jones, Deputy City Attorney (FBN 119067)
Office of the City Attorney
444 S.W. 2nd Avenue
Miami, FL 33130
(305) 416-1800

*Counsel for Defendant*