**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-24066-KMM

GRACE, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI,

    *Defendant*.

_____/

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("Agreement") is entered into by Grove Rights and Community Equity, Inc. ("GRACE"), Engage Miami, Inc., the South Dade Branch of the NAACP, the Miami-Dade Branch of the NAACP, Clarice Cooper, Yanelis Valdes, Jared Johnson, Alexandra Contreras, and Steven Miro (collectively, the "Federal Plaintiffs"); the American Civil Liberties Union of Florida, Inc. (the "ACLU of Florida"); and the City of Miami (each a "Party" and together the "Parties").

## RECITALS

On March 24, 2022, the Miami City Commission adopted Resolution R-22-131 (the "2022 Plan"), redrawing the City Commission districts following the 2020 Census.

On December 15, 2022, the Federal Plaintiffs filed this Action (the "Federal Action") against the City of Miami in the U.S. District Court for the Southern District of Florida (the "Federal Court"), alleging that the 2022 Plan violated the Equal Protection Clause of the Fourteenth Amendment.

On September 14, 2023, the ACLU of Florida filed an Action (the "State Action") against the City of Miami in the Circuit Court of Florida's Eleventh Judicial Circuit (the "State Court"), alleging that the 2023 Plan violated Florida's Government in the Sunshine Law, Chapter 286, Florida Statutes.

On January 11, 2024, the Miami City Commission adopted Resolution R-24-1, amending the 2023 Plan by making a small change affecting two districts.

On April 10, 2024, following a bench trial, the Federal Court: (1) found all five districts in both the 2022 Plan and the 2023 Plan (including as amended by R-24-1) are unconstitutionally racially gerrymandered in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) permanently enjoined the City of Miami and its officers and agents from enforcing the unconstitutional districts; (3) awarded each Federal Plaintiff nominal damages in the amount of $1.00; and (4) retained jurisdiction to adjudicate the remedial phase of the case.

1

The Parties now wish to avoid the cost, risk, and uncertainty associated with further litigation, and seek to compromise and completely resolve both the Federal Action and the State Action.

**AGREEMENTS**

**NOW, THEREFORE**, in consideration of the foregoing, and the following covenants, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Effective Date.** The Effective Date of this Agreement shall be after execution by all parties and the date on which the Agreement is approved by the Federal Court.

2. **City Approval.** This Agreement will be subject to approval ("City Approval") by the City of Miami through the adoption of a resolution authorizing the City Manager to enter into a Settlement Agreement and negotiate and execute any and all necessary documents, in a form acceptable to the City Attorney, pursuant to the City Charter. In the event an appeal is taken of the City Approval, or an independent third-party action is filed challenging this Agreement, the Parties shall cooperate to the fullest extent allowed by law to sustain this Agreement and the transaction contemplated herein.

3. **Redistricting Plan.** The City agrees to employ "P5" as its redistricting plan for the City Commission, effective seven days after the Effective Date of this Agreement. Attached as **Exhibit 1** is a copy of the P5 map.

    a. No special election is required due to the change in district boundaries caused by this Agreement.

    b. Unless the number of commission districts changes or unless it is otherwise ordered by a court of law, the City will not redistrict until after the 2030 Census data is released.

    c. No change in district boundaries caused by this Agreement that would affect the qualifications of any incumbent commissioner under Section 4(c) of the City Charter or Chapter 16 of the City Code will disqualify such incumbent commissioner during the term for which they are elected.

4. **Charter Amendment.** The City agrees to place a charter amendment on the November 2025 ballot, as follows:

**Title:** Proposed Charter Amendment to Establish a Citizens' Redistricting Committee

**Ballot summary:** Amends the Charter to provide that City Commission districts may not be drawn with the intent to favor or disfavor a candidate or incumbent. Establishes a Citizens' Redistricting Committee to draw districts after each census and when required by law. Provides process for the Redistricting Committee to propose redistricting plans to the City Commission for final action. Sets Redistricting Committee members' qualifications, duties, term of office, and process for appointment and removal.

**Amendment Text:** Section 13 of the City Charter, "Redistricting," is created to read:

(a) *Appointment.* There shall be a citizens' redistricting committee, which shall be empaneled in each year following the decennial census and at any other time redistricting is required by law. The city clerk shall develop and publish an application for members of the committee and set deadlines for the submission of applications, appointment of committee members, and development and proposal of plans pursuant to subsection (d). The city commissioners and the mayor shall each appoint one committee member.

(b) *Qualifications.* Each committee member shall be a city resident with an outstanding reputation of integrity, responsibility, and commitment to community service. No person may serve on the committee if they have, within two years from the date of application, held or been a candidate for elected office or been a registered lobbyist with the city. No person may serve on the committee if they or an immediate family member have, within two years from the date of application, served as an employee of the city commission, a city commissioner, or the mayor. For the purposes of this section, "immediate family" means a person's spouse or the parent, child, grandparent, grandchild, or sibling of the person or the person's spouse.

(c) *Tenure, Removal, and Vacancies.* Each committee member's term of office expires the later of (1) one year after the committee adopts a redistricting plan, or (2) when all pending legal challenges to the committee's redistricting plan are resolved. A committee member may be removed for good cause and after proper hearing by a three-fourths vote of either the committee or city commission. Vacancies shall be filled by the remaining committee members.

(d) *Duties*.

(1) The committee shall have the power to draw the city commission districts after each decennial census and at any other time required by law, pursuant to this section. The committee shall be staffed by the city attorney, city clerk, and any redistricting experts selected by the committee.

(2) The committee shall conduct an open and transparent process enabling full public consideration of and comment on the drawing of district lines. The committee shall solicit and accept input from the public as part of the drafting process.

(3) The committee shall propose one or more initial redistricting plans to the city commission. The city commission may (a) reject all initial plans and transmit its objections thereto to the committee, (b) adopt an initial plan without changes, (c) adopt an initial plan with changes, provided the changes do not move more than two percent of the population of any proposed district, or (d) after voting on each initial plan and rejecting them all, adopt its own plan by the vote of at least four city commissioners.

(4) If the city commission fails to adopt a redistricting plan pursuant to paragraph (3), the committee shall propose one or more revised redistricting plans to the city commission. The city commission may (a) accept a revised plan without changes, (b) adopt a revised plan with changes, provided the changes do not move more than two percent of the population of any proposed

district, or (c) after voting on each revised plan and rejecting them all, adopt its own plan by the vote of at least four city commissioners.

(e) *Standards for Districts.* No redistricting plan or district may be drawn with the intent to favor or disfavor a candidate or incumbent. This subsection shall apply to any districts drawn after it is approved by the voters.

5. **Federal Plaintiffs' Damages.** The City shall pay to each Federal Plaintiff the sum of $1.00 in nominal damages. Payment shall be made to each Federal Plaintiff within 60 days of the Federal Court's approval of this Agreement.

6. **Plaintiffs' Attorneys' Fees and Costs.** The City shall pay to Plaintiffs the sum of $1,583,031.35 in compromise and settlement of Plaintiffs' claims for attorneys' fees and costs incurred in the Federal Action and State Action, including all appellate proceedings. Payment shall be made to the American Civil Liberties Union Foundation of Florida, Inc. within 60 days of the Federal Court's approval of this Agreement. The Parties are otherwise responsible for their own attorneys' fees and costs. This settlement of fees and costs resolves all Parties' claims for fees and costs in the Federal Action, the State Action, and all associated appeals.

7. **Entry of Judgment.** The Parties request that the Federal Court enter a Final Judgment: (1) approving this Agreement; (2) ordering the City to implement "P5" as its redistricting plan including the provisions of Section 3 and Subsections 3(a), (b), and (c); (3) ordering the City to place a charter amendment on the November 2025 ballot as provided by Section 4; (4) ordering the City to pay Plaintiffs' damages as provided by Section 5; and (5) ordering the City to pay Plaintiffs' attorneys fees and costs as provided by Section 6.

8. **Dismissal of Federal Appeal.** Within five days of the Federal Court's approval of this Agreement, the City shall notice a Federal Rule of Appellate Procedure 42(b)(1) stipulated dismissal of its appeal in Case Nos. 23-12472 and 24-11550, pending in the U.S. Court of Appeals for the Eleventh Circuit.

9. **Dismissal of State Action.** Within five days of the Federal Court's approval of this Agreement, the ACLU of Florida shall notice a Florida Rule of Civil Procedure 1.420(a)(1)(A) dismissal with prejudice of the State Action, with each party to bear its own fees and costs except as provided by Section 6.

10. **Approval by Federal Court.** The Federal Plaintiffs and the City shall seek Federal Court approval of this Agreement through a joint motion. If the Federal Court does not approve all terms in this Agreement, this Agreement shall terminate and be of no further force or effect, and the Parties will return to their respective positions as they existed immediately prior to the execution of this Agreement.

11. **Mutual Release.** Upon Federal Court approval of this Agreement, each of the Parties, on their own behalf and on behalf of their respective officers, representatives, assigns, predecessors, successors, agents, and attorneys (each a "Releasing Party"), shall release, remise, and discharge the other Party and such Party's present and former officers, agents, representatives, assigns, predecessors, successors, affiliates, and attorneys (each a "Released Party"), from and of any and all claims, demands, actions, causes of action, suits, sums of money, and promises, of

every kind and nature, in law or in equity, whether sounding in tort or otherwise, that were brought in the Litigation and related appellate proceedings. Each of the Releasing Parties shall also release, remise, and discharge each Released Party from and of any and all claims, demands, actions, causes of action, suits, sums of money, and promises, of every kind and nature, in law or in equity, whether sounding in tort or otherwise, whether or not they have been subject to dispute, and whether known or unknown to the Releasing Party, which each Releasing Party had, now has, or may have hereafter against each Released Party by reason of any fact, event, act, matter, cause, or thing whatsoever, arising from, or related to the redistricting in the 2022 Plan, 2023 Plan, and Resolution R-24-1.

12. **Representation of Authority.** The Parties represent and warrant to each other: that they have had the assistance and advice of counsel and are fully aware of and have been fully advised of the terms, conditions and consequences of this Agreement; that an individual who executes this Agreement on behalf of an organizational Party is authorized to sign this Agreement for and bind that Party; that all requisite approvals for authority have been obtained or granted; that the Party owns and has not sold, pledged, hypothecated, assigned, or transferred any of the claims, actions, causes of action, suits, damages, losses, judgments, executions, demands, liabilities, guarantees, obligations, responsibilities, liens, expenses, costs, or attorneys' fees released within this Agreement; and no trustee, assignee, affiliate, or creditor owns or has any interest in these claims or the Litigation.

13. **Counterparts and Facsimile Signatures.** This Agreement and any amendments hereto may be signed in counterparts with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement or the amendment, as applicable. For purposes of this Agreement and any amendment hereto, a facsimile copy of a Party's signature (including a copy transmitted by email in PDF or similar format) or insertion of electronic signature shall be deemed an original and shall be sufficient to bind such Party.

14. **Integration.** Each Party warrants that no promise, inducement, or agreement not expressed in this Agreement has been made in connection with the Agreement. The Agreement constitutes the entire understanding between the Parties with respect to their subject matter and supersede and replace all prior negotiations or proposed agreements, and all prior representations, warranties, statements, promises and understandings, written or oral, between the Parties with respect to the subject matter of the Actions, related appeals, and the Agreements. After City Approval, the Agreement may not be amended, supplemented, or otherwise modified except by a written instrument executed by each of the Parties as described above.

15. **Further Assurances.** The Parties agree to execute such other documents and take such further actions as may be reasonably necessary to carry out the purpose and terms of this Agreement, with each Party paying its own costs and attorney's fees associated therewith. This provision will survive the Court's acceptance of this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year set forth below.

_[signature]_    Date: June 6, 2024
**Grove Rights and Community Equity, Inc.**

By: Reynold Martin, Chair

_[signature]_    Date: June 5, 2024
**Engage Miami, Inc.**

By: Rebecca Pelham, Executive Director


Carolyn Donaldson, Executive Committee Member at-Large    Date: June 4, 2024
**South Dade Branch of the NAACP**

By: _Carolyn Donaldson_


_Daniella Pierre_    Date: **June 5, 2024**
**Miami-Dade Branch of the NAACP**

By: **Daniella Pierre, Branch President**


_[signature]_    Date: JUNE 6, 2024
**Clarice Cooper**


_[signature]_    Date: 6/4/2024
**Yanelis Valdes**


_[signature]_    Date: 06/06/2024
**Jared Johnson**

6

_____  Date: June 5, 2024
Alexandra Contreras

_____  Date: 6.5.24
Steven Miro

_____  Date: 6/4/2024
American Civil Liberties Union of Florida, Inc.

By: Daniel Tilley, Legal Director, ACLU-FL

**CITY OF MIAMI, a Florida Municipal Corporation:**

By: _____  Date: 6/7/24
    Arthur Noriega V, City Manager

**Attest:**

By: _____  Date: 6/7/2024
    Todd B. Hannon, City Clerk

**Approved as to Form and Correctness:**

By: _____  Date: June 7, 2024
    George K. Wysong III  #22-3463
    City Attorney

7

**Approved as to Insurance Requirements:**

By: _____          Date:   June 7, 2024
Ann-Marie Sharpe, Director of
Risk Management

