UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD JAMES, et al.,

            Plaintiffs,

vs.                          Case No. 79-1031-Civ-T-GC

CITY OF SARASOTA, FLORIDA,
et al.,

            Defendants.

_____/

O R D E R

      The defendants in this case, conceding that Sarasota's current plan for city council does not comport with constitutional and statutory voting rights law,[1] agreed to revise the mode of elections in order to comply with the law. The Court subsequently Ordered all parties to confer in an attempt to reach agreement on an election plan. However, the parties were not able to agree on a plan and consequently they have submitted separate plans to the Court.

      The plaintiffs' proposed plan would divide Sarasota into five, single member, council districts. One council district

---

[1]/ Sarasota currently has a five person city council. All members of the council are elected at large by the city's entire populace.

would encompass almost the entire black population of Sarasota and the resulting district would be approximately 82% black and 18% white.  As Sarasota's entire black population would be placed into one district, the other four council districts would be approximately 100% white.  The plaintiffs argue that its plan is necessary in order to ensure minority representation on the city council.

The defendants' plan, like the plaintiffs' plan, would retain the five person city council but would divide the council into three single member residency districts with two other council members being elected at-large by the city's entire population.  Under the defendants' plan, black citizens of Sarasota would comprise approximately 48% of one residency district and the other two residency districts would be 100% white.[2]

The defendants first request that the Court approve the defendants' proposal to submit both their plan and the plaintiffs' plan to a referendum before the voters of Sarasota.  The defen-

---

2/  It is noted that the black population of Sarasota lives almost exclusively in the racially identifiable and physically distinct section of Sarasota called "Newtown".  Thus, although at first appearance, both plans may seem to gerrymander Sarasota's black population into all black or semi-black districts, the geographical unity of the black population is the cause of its inclusion into a single district.

dants would then implement the election plan chosen by the voters. The plaintiffs oppose the defendants' election plan and argue that regardless of how it is approved, i.e., with a referendum or simply by judicial decree, the plan is inadequate to remedy the defendants' past voting rights abuses. The plaintiffs request that the Court institute their plan without referendum.

"Redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." Wise v. Lipscomb, 437 U.S. 535, 539 (1978) (citations omitted). Because reapportionment is more properly a legislative function, greater latitude will be given to reapportionment plans drawn by "legislative" bodies as opposed to judicially imposed plans.[3] Determining if a plan is legislatively

---

3/ Absent special circumstances, judicially imposed election plans should include only single member districts and have no provision for at-large elections. Conor v. Johnson, 431 U.S. 407 (1977). "Multimember districting can contribute to voter confusion, make legislative representatives more remote from their constituents, and tend to submerge electoral minorities and overrepresent electoral majorities . . ." Id. at 415. Thus, if a federal court must redistrict because the local governing body can not, or will not do so, "lacking the political authoritativeness that the legislature can bring to the task," the Court must act 'circumspectly and in a manner free from any taint of arbitrariness or discrimination." Wise v. Lipscomb, 437 U.S. 535, 541 (1978) (citations omitted). Consequently, judicially imposed plans usually do not provide for multimember district elections.

enacted is sometimes problematic.  See Wise v. Lipscomb, supra.
However, in the instant case the defendants propose submitting
their plan and the plaintiffs' plan to a referendum.  The plan
chosen by the majority of voters in Sarasota will be implemented
by the defendants.  Sarasota is a charter municipality as estab-
lished by Article VIII, §2(b) of the Florida Constitution and is
governed by the Florida Municipal Home Rule Powers Act, Fla. Stat.
166.021.  That section provides that "the terms of elected offi-
cers and the manner of their election cannot be changed without
approval by referendum of the electors."  Sarasota's present at-
large election scheme is written into the city's charter.  The
city council formulated its plan without Court direction and the
city proposes to submit its plan and the plaintiffs' plan to a
referendum.  Under these facts the Court concludes that as a mat-
ter of law, whichever plan is adopted by the voters of Sarasota
will be a legislatively enacted plan.[4]  Wise v. Lipscomb, supra;

---

[4]  In light of the defendants' willingness to submit the com-
peting plans to a referendum, the Court sees no reason to
address the defendants' alternative argument that even without
approval by a referendum, its plan is legislatively
enacted.

McMillan v. Escambia County Fla., 688 F.2d 960, 970-71 (11th Cir. 1982).

 The plaintiffs extensively argue that the defendants' election plan, even if legislatively adopted, will not cure the evils of the defendants' past election scheme. However, as both plans will be submitted to Sarasota's electorate, it would be premature for the Court at this time to rule on that issue. The plaintiffs' plan could very well be chosen by the voters of Sarasota and the Court will defer ruling on an issue involving questions of constitutional law until that issue is squarely before it. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347 (1936) (Brandeis, J., dissenting). The Court will note, however, that the plaintiffs are incorrect when they submit that the plan approved by the referendum must "cure" past wrongs incurred because of the defendant's use of their present plan. The only requirement of the referendum approved plan is that it be a constitutionally valid exercise of the legislative power to reapportion voting districts. See Wise v. Lipscomb, supra. This is a much different standard than the one suggested by the plaintiff which would require the Court to make findings of fact regarding the motivation, effect

-5-

and remedy for the defendants' present election scheme.[5]

In conclusion, the Court agrees with the defendants' proposal to submit the two competing plans to a voter referendum. Accordingly, the Court requests the defendants to make preparations to place the election plan issue on the November, 1983 ballot. The defendants should confer with the plaintiffs on the wording of the referendum. Disputes arising from the wording of the referendum or any other issue connected with the election plan referendum should be submitted to the Court.

DONE AND ORDERED in Chambers in Tampa, Florida, this 2nd day of September, 1983.

UNITED STATES DISTRICT JUDGE

---

5/  The Court notes that Sarasota's city council conceded in its March 8, 1983 resolution that the council's at-large election scheme was unlawful. The defendants, therefore, agreed to change the election scheme to comport with the requirements of the law. Because the city voluntarily decided to change its election scheme, the Court has made no factual findings or conclusions of law with regard to the constitutionality of the defendants' present election scheme. The Court will avoid making such findings provided the plan approved in the referendum is constitutional.